# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ADRIANN BORUM, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1723 (RC) |
| | : | | |
| v. | : | Re Document No.: | 43 |
| | : | | |
| BRENTWOOD VILLAGE, LLC, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; GRANTING PLAINTIFFS' MOTION FOR THE APPOINTMENT OF CLASS COUNSEL

## I. INTRODUCTION

Plaintiff Adriann Borum seeks to represent a putative class of residents of her apartment complex, Brookland Manor, whom she alleges are at risk of being displaced should Defendants proceed with their plans to redevelop the complex, or who have already been displaced in anticipation of the redevelopment.[1] The planned redevelopment will eliminate four- and five-bedroom apartments in the complex, and will reduce the number of three-bedroom apartments as well. This policy, Ms. Borum claims, will have a disparate impact on hundreds of residents based on their familial status in violation of the Fair Housing Act ("FHA") and the D.C. Human Rights Act ("DCHRA"). Additionally, Ms. Borum claims that Defendants have made discriminatory

---

[1] One of Ms. Borum's original co-plaintiffs and the second named representative of the putative class, Lorretta Holloman, voluntarily dismissed her claims against Defendants on November 22, 2017. ECF No. 55, 56. Ms. Borum's other co-plaintiff, ONE DC, is a community organization "comprised of members who include tenants of affordable housing properties that are seeking to avoid displacement, preserve affordable housing, ensure fair housing, and further equitable development in D.C." Compl. ¶ 108, ECF No. 2. The Court found that ONE DC has organizational standing to bring suit in its prior Memorandum Opinion. *See Borum v. Brentwood Village, LLC*, 218 F. Supp. 3d 1, 19–20 (D.D.C. 2016).

statements based on familial status in violation of the FHA and the DCHRA. Therefore, she has moved to certify a class of residents whom she believes have been harmed or are at risk of being harmed by the proposed redevelopment and activities surrounding it, and for the appointment of her lawyers as counsel for that class. Pls.' Mem. P. & A. Supp. Mot. Class Cert. & Appointment Class Counsel ("Pls.' Mem."), ECF No. 43-1. For the reasons set forth below, the Court grants in part and denies in part her motion for class certification, and grants her motion for the appointment of class counsel.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Defendants in this action—Brentwood Associates, L.P.; Mid-City Financial Corporation; and Edgewood Management Corporation—plan to redevelop Brookland Manor, an affordable housing complex in the Brentwood neighborhood of Washington, D.C. Brookland Manor currently contains 535 units, which range in size from one- to five-bedroom apartments. *See* Pls.' Mot. Class Cert. & Appointment Class Counsel ("Pls.' Mot."), Ex. 12 at 1–2, ECF No. 43-17. Once Brookland Manor has been transformed into the new Brentwood Village development, the complex will contain 2,235 rental apartments and for-sale homes. *Id.* at 1. While today Brookland Manor contains 75 three-bedroom apartments, 113 four-bedroom apartments, and 21 five-bedroom apartments, once Defendants have completed the redevelopment, Brentwood Village will have zero four- and five-bedroom apartments, and only 64 three-bedroom apartments. *See* Pls.' Mot., Ex. 4 at 5–6, ECF No. 43-9. It is this planned alteration in the composition of the complex that Ms. Borum challenges. As a resident of a four-bedroom apartment, which she occupies with her five children (two minor and three adult), she fears that once the redevelopment takes place, she will be, at best, stuck competing with 117 other

families[2] for 64 three-bedroom units, or at worst, displaced altogether. Pls.' Mem. at 4. Additionally, she fears that even if she were able to procure a three-bedroom apartment, it would be too small for her family. *See* Decl. Adriann Borum ("Borum Decl.") ¶ 8–10, Pls.' Mot., Ex. 2, ECF No. 43-7.

Defendants began the process of seeking approval for this redevelopment in October 2014, when they submitted their application for a First-Stage planned unit development ("PUD") approval. *See* Zoning Case Records, Case No. 14-18, *available at* https://app.dcoz.dc.gov/Content/Search/ViewCaseReport.aspx?case_id=14-18. The application was approved in 2015. *Id.* Defendants filed their application for Second-Stage PUD approval in September 2016, one month after Ms. Borum had filed this action. That application is still pending. *See* Zoning Case Records, Case No. 14-18A, *available at* https://app.dcoz.dc.gov/Content/Search/ViewCaseReport.aspx?case_id=14-18A. Once that application has been approved, Defendants will be able to begin redeveloping the property. *See generally* 11 D.C. Mun. Regs. § 2408.1; *see also* Pls.' Mem. P. & A. Supp. Mot. Prelim. Inj. ("Pls.' Mot. Prelim. Inj."), ECF No. 4; Decl. William Merrifield ¶ 9, ECF No. 4-3.

Along with her complaint, Ms. Borum had filed a motion for a preliminary injunction asking the Court to bar "Defendants from filing their second-stage PUD application with the Zoning Commission." Pls.' Mot. Prelim. Inj. at 15. Since Defendants filed their Second-Stage application before the Court ruled on Ms. Borum's motion for a preliminary injunction, she

---

[2] Ms. Borum's expert, Dr. Andrew Beveridge, defines families in two ways in his declaration: "(a) families including only head of household, co-head of household (when applicable), and minor children; and (b) families including head of household, co-head of household, minor children, and other non-minor family members." Regardless of which definition the Court adopts, there were 118 apartments in Brookland Manor housing minor children and their parents or guardians in January 2017. Decl. Andrew Beveridge ("Beveridge Decl.") at 4, ECF No. 43-6.

amended the relief she sought in her reply brief and asked the Court to "preliminarily enjoin Defendants from displacing families from their homes during the adjudication of these families' fair housing rights in this action." Pls.' Reply at 3, ECF No. 20.

In response, Defendants filed a motion to dismiss on several grounds: lack of exhaustion of administrative remedies; lack of jurisdiction under the *Rooker-Feldman* doctrine; the *Younger* abstention doctrine; ONE DC's lack of standing; and failure to state a claim. *See* Defs.' Mem. in Supp. Mot. Dismiss, ECF No. 16. The Court denied both motions, *see Borum v. Brentwood Village, LLC*, 218 F. Supp. 3d 1 (D.D.C. 2016), and ordered the commencement of "limited discovery for the purpose of exchanging information related to the demographics of Brookland Manor residents as necessary to adjudicate a motion for class certification." Scheduling Order, ECF No. 34.

With the materials from that discovery in hand, Ms. Borum has now moved for certification of the following hybrid class under Rules 23(b)(2) and (b)(3):

> All households who reside or have resided at Brookland Manor in a three-, four-, or five-bedroom unit with one or more minor child, and (i) have been displaced from a three-, four-, or five-bedroom unit at Brookland Manor since October 1, 2014 (the date that Defendants proposed their First Stage PUD to the Zoning Commission), or (ii) are at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor.

Pls.' Mot. at 1, ECF No. 43. She also moved for the appointment of her legal team as class counsel. *Id.* at 2. For the reasons set forth below, Ms. Borum's motion for class certification is granted in part and denied in part, and her motion for the appointment of class counsel is granted.

## III. LEGAL STANDARDS

"A district court exercises broad discretion in deciding whether to permit a case to proceed as a class action." *Hartman v. Duffey*, 19 F.3d 1459, 1471 (D.C. Cir. 1994). However,

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, a plaintiff "must affirmatively demonstrate [her] compliance with the Rule—that is, [she] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Wal-Mart*, 564 U.S. at 351. However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

When appropriate, district courts may redefine classes or subclasses sua sponte prior to certification. *See* Rule 23(c)(5); *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106, 1129 n.38 (7th Cir.), *cert. denied sub nom. General Motors Corp. v. Oswald*, 444 U.S. 870 (1979); *Santillan v. Gonzalez*, 388 F. Supp. 2d 1065, 1072 (N.D. Cal. 2005); *Am. Fin. Sys. Inc. v. Harlow*, 65 F.R.D. 94, 107 (D. Md. 1974). Because it is the plaintiff, and not the court, who bears the burden of fashioning appropriate class definitions and demonstrating that the requirements of Rule 23 are met for each, it is left to the court's discretion to choose whether to intervene in this way. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 408 (1980). Subclasses must also satisfy all of Rule 23's requirements in order to be certified. *See D.L. v. District of Columbia*, 713 F.3d 120, 129 (D.C. Cir. 2013); *see also Bynum v. District of Columbia*, 214 F.R.D. 27, 41 (D.D.C. 2003).

# IV. ANALYSIS

Ms. Borum has moved for certification of the following hybrid class under Rules 23(b)(2) and (b)(3):

> All households who reside or have resided at Brookland Manor in a three-, four-, or five-bedroom unit with one or more minor child, and (i) have been displaced from a three-, four-, or five-bedroom unit at Brookland Manor since October 1, 2014 (the date that Defendants proposed their First Stage PUD to the Zoning Commission), or (ii) are at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor.

Pls.' Mot. at 1. For the reasons set forth below, the Court grants certification of the following class under Rule 23(b):

> All individuals who reside at Brookland Manor in a three-, four-, or five-bedroom unit with one or more minor child, and are at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor as a direct result of the proposed redevelopment.

## A. Rule 23(a) Requirements

Rule 23(a) contains four requirements for the certification of any class. It provides that "members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are often referred to as "numerosity," "commonality," "typicality," and "adequacy of representation."

Ms. Borum contends that she has satisfied each of Rule 23(a)'s four prerequisites for her entire proposed class, and Defendants claim that she has satisfied none. As explained below, the

Court finds that Ms. Borum has not satisfied the four prerequisites for the entire class she proposes, and therefore, her entire class cannot be certified. But once her original class definition has been divided into two subclasses, Ms. Borum does satisfy each of the four prerequisites for the subclass of individuals who "are at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor." However, she has not yet satisfied the prerequisites for the subclass of individuals who "have been displaced from a three-, four-, or five-bedroom unit at Brookland Manor since October 1, 2014 (the date that Defendants proposed their First Stage PUD to the Zoning Commission)." And as explained further below, this subdivision is appropriate because it will allow members of the class that the Court is already able to determine satisfies the Rule 23(a) prerequisites to proceed to the next stage of this litigation without undue delay. *See Yaffe v. Powers*, 454 F.2d 1362, 1367 (1st Cir. 1972) ("[U]nless a claim is patently frivolous, [a certifying] court should ask itself: assuming there are important rights at stake, what is the most sensible approach to the class determination issue which can enable the litigation to go forward with maximum effectiveness from the viewpoint of judicial administration?")

### 1. Families displaced between October 1, 2014 and the conclusion of this litigation

Ms. Borum has moved to include in her class those "who have resided at Brookland Manor in a three-, four-, or five- bedroom unit with one of more minor child and . . . have been displaced from [those apartments] since October 1, 2014." Pls.' Mot. at 1. For those individuals she seeks damages for "monetary costs related to moving services or apartment brokerage fees and increased transportation costs to school and work." Compl. ¶ 123. She also seeks an injunction for them, so that they "will have a future opportunity to reside at Brookland Manor or the redevelopment property in a three-, four-, and five-bedroom unit." *Id.* For the other group of individuals in her proposed class, those who "are at risk of being displaced from a three-, four-,

or five-bedroom unit at Brookland Manor," she only seeks an injunction that would eradicate the disparate impact she alleges the redevelopment plan will have on minors and their guardians. Pls.' Reply at 22, ECF No. 52.

"The underlying theme [of class certification] is flexibility; different cases call for different approaches." *Lamphere v. Brown Univ.*, 553 F.2d 714, 719 (1st Cir. 1977). And while the decision whether and how to certify a class is left to the district court, in some instances "failure to limit overbroad cases by the use of appropriate subclasses may be an abuse of discretion." *Marcello v. Regan*, 574 F. Supp. 586, 591–92 (D.R.I. 1983) (citing *Geraghty v. U.S. Parole Comm'n*, 579 F.2d 238, 253 (3d Cir. 1978), *vacated on other grounds*, 445 U.S. 388 (1980)); *see also Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 960–61 (D.C. Cir. 1985) ("the reviewing court may require the district court to consider on the record the possibility of certifying subclasses").

Here, it is appropriate to consider those residents who have already been displaced or will displaced before the conclusion of this litigation as a separate subclass because without this separation, the class Ms. Borum has proposed would be overbroad and ineligible for certification. First, Ms. Borum has moved to include in the class those individuals who have been displaced since October 1, 2014, without specifying whether individuals included in that group need to have been displaced because of the redevelopment in order to be included. Therefore, it is impossible to tell from her proposed definition whether those individuals have any claims in common, as required by Rule 23(a)(2). *See Wal-Mart*, 564 U.S. at 350 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Second, at this point, none of the large apartments on which putative class members rely to house their families have been

eliminated. Therefore, the cause of displacement for any of these putative class members will not be the mere elimination of large apartments, which is the foundational cause of the other class members' claims. *See Hartman v. Duffey*, 19 F.3d 1459, 1472 (D.C. Cir. 1994) ("[T]here is more to a showing of commonality than a demonstration that class plaintiffs suffered discrimination on the basis of membership in a particular group . . . plaintiffs must make a significant showing to permit the court to infer that members of the class suffered from a common policy of discrimination that pervaded all of the [defendant's] challenged [] decisions."). Third, Ms. Borum seeks damages only for displaced individuals, in order to reimburse them for the costs of their displacement. Those individuals will therefore have different interests than current residents, including Ms. Borum, who only seek an injunction that would grant them a greater likelihood of being able to remain on the property. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). Accordingly, the Court denies Ms. Borum's motion to certify the entire class she proposes.

As explained in Section IV.A.2, *infra*, once displaced individuals are removed from the class, current residents who are at risk of displacement do satisfy each of Rule 23(a)'s four prerequisites, including commonality and adequacy of representation. Therefore, in order to allow those class members who do satisfy Rule 23(a)'s prerequisites the opportunity to proceed with the litigation without undue delay, the Court exercises its discretion by separating Ms. Borum's proposed class into two subclasses. It does this even though the subclass of displaced individuals does not meet the requirements of Rule 23(a) by itself, and therefore cannot be certified at this time.

When deciding whether to certify subclasses, district courts must ensure that each subclass satisfies the requirements of Rule 23. *See D.L. v. District of Columbia*, 713 F.3d 120, 129 (D.C. Cir. 2013). Ms. Borum's briefing paid a great deal of attention to residents of Brookland Manor who she worries are at risk of being displaced by the elimination of four- and five-bedroom apartments and the reduction in the number of three-bedroom apartments. However, her briefing paid very little attention to those residents who have purportedly already been displaced by Defendants' redevelopment plans. Indeed, Ms. Borum does not point to a single individual who has been displaced due to the proposed redevelopment since Defendants submitted their First Stage PUD to the Zoning Commission. As such, Ms. Borum has given no indication of how many former residents of Brookland Manor have been displaced, preventing the Court from performing any sort of numerosity analysis for that group. A class representative "must be prepared to prove that there are in fact sufficiently numerous parties" to satisfy Rule 23(a)(1)'s numerosity requirement. *Wal-Mart*, 564 U.S. at 350. Ms. Borum has not done so here. Because Ms. Borum has not met her burden under Rule 23(a)(1), residents who have been displaced cannot be certified as their own subclass.

Ms. Borum would also like to include in her class individuals who are currently at risk of being displaced, and are then displaced during the pendency of this litigation, so that they might recover money damages just like former residents who have already been displaced. Compl. ¶ 123. However, by definition, none of these individuals exist yet. Because these individuals do not yet exist, and indeed may never exist, if, for example, Plaintiffs succeed in securing an injunction that allows the entire class to remain on the property, this subgroup cannot satisfy Rule 23(a)'s numerosity requirement either.

If, however, this group does come into existence following the Court's class certification order, or if Plaintiffs are subsequently able to identify individuals who have already been displaced because of the redevelopment, Ms. Borum may renew her motion for certification of this subclass. But it should be noted that unless Ms. Borum has also been displaced due to the redevelopment plan by then, her injury (a risk of displacement) will not be typical to those putative class members who have at that point already been displaced. Therefore, unless Plaintiffs have added a new named plaintiff whose injury is typical of the proposed subclass, and who will be able to fairly and adequately represent the interests of that class, Ms. Borum's renewed motion for class certification would likely be denied then as well.

### 2. Families still living in three-, four-, or five-bedroom apartments

The remainder of Ms. Borum's proposed class qualifies for certification as a subclass. As explained below, the Court finds that a class of individuals (rather than households) who are living in three-, four-, and five-bedroom apartments that contain minor children and their guardians and are at risk of being displaced solely due to the redevelopment's elimination of four- and five-bedroom apartments and its reduction in the number of three-bedroom apartments satisfy the requirements of Rule 23(a).

#### a. Numerosity

Ms. Borum first contends that she has established that her proposed class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also* Pls.' Mem. at 10. "Typically, a class in excess of 40 members is sufficiently numerous to satisfy this requirement," *Lindsay v. Gov't Emps. Ins. Co.*, 251 F.R.D. 51, 55 (D.D.C. 2008), though "[t]here is no specific threshold that must be surpassed in order to satisfy the numerosity requirement," *Taylor v. D.C. Water & Sewer Auth.*, 241 F.R.D. 33, 37 (D.D.C. 2007).

Based on the most recently available data, Ms. Borum's expert, Dr. Andrew Beveridge, estimates that there were 118 families (totaling 543 people) in three-, four-, and five-bedroom apartments in Brookland Manor in January 2017. Beveridge Decl. ¶ 9.[3] Therefore, Ms. Borum argues that the class she proposes is "so numerous that joinder would be impracticable." Pls.' Mem. at 10. Defendants object to Ms. Borum's claim of numerosity on several grounds, which the Court addresses in turn below.

### i. Occupancy Standards

Defendants spend a large portion of their opposition brief attacking the analysis of Ms. Borum's expert, Dr. Andrew Beveridge, and his estimation of how many individuals are at risk of being displaced by the redevelopment plan. *See* Defs.' Opp'n Pls.' Mot. Class Cert. ("Defs.' Opp'n") at 9–10, 12–24, ECF No. 45. Dr. Beveridge analyzed two things in his declaration: 1) "[t]he number of family households residing in three-, four- and five-bedroom apartments at Brookland Manor and the family composition of those households," and 2) "[t]he number of family households living at Brookland Manor, their family composition, and the number of bedrooms for those family compositions required by applicable law and regulation." Beveridge Decl. ¶ 3. In determining the appropriate number of bedrooms for these families, Dr. Beveridge used the D.C. Housing Authority's voucher size determination regulations, *id.* ¶ 6, and found that in 2017, when excluding non-parent adults from the equation, 81 families totaling 419 people required apartments with three bedrooms or more, and including non-parent adults, 96 families totaling 486 people did. Beveridge Decl. tbls. 5 & 7. Defendants attack this analysis, arguing that

---

[3] Defendants' expert, Dr. William Clark, agrees that minor children and their guardians resided in 118 of Brookland Manor's 144 three-, four-, and five-bedroom apartments in January 2017. *See* Decl. William Clark ("Clark Decl.") at 4, ECF No. 44-1 (sealed).

Dr. Beveridge used an incorrect standard in determining how many bedrooms each family needed, thereby inflating the number of individuals who may be harmed by the redevelopment. *See* Defs.' Opp'n at 13. Defendants claim that Dr. Beveridge should have used the D.C. Housing Code's general occupancy standard, the DCHRA's occupancy standard, or the FHA's occupancy standard (a statement of policy). *See* Defs.' Opp'n at 14–19.

The question of what size apartment class members require based on their family size will be crucial in determining whether Defendants' redevelopment plan has a disparate impact on residents based on their familial status. However, requiring a determination of which occupancy standards apply to which families at this stage in the litigation amounts to a requirement that each class member prove that they will prevail on the merits of their claim. "The concern of Rule 23(a)(1) . . . is membership in the class, not likelihood of success on the merits." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 77 (D.D.C. 2015) (citing McLaughlin on Class Actions § 4:5 (11th ed. 2014) (a determination under Rule 23(a)(1) "does not entail an assessment of how many putative class members ultimately will have meritorious claims")). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" *D.L. v. District of Columbia*, 713 F.3d 120, 125–26 (D.C. Cir. 2013) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). But determining that numerosity cannot be established because only a handful of class members will eventually prevail on the merits of their claim "puts the cart before the horse." *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 336 (D.D.C. 2007). "[F]or purposes of class certification, the question is how many individuals fall within the class as currently defined." *Id.*

Defendants may be correct that Dr. Beveridge used the wrong standard in determining how many bedrooms each family requires, thereby inflating the number of individuals who will actually be forced to move should the redevelopment proceed unaltered. But such a standard is not relevant to determining how many families are currently living in large apartments who are at risk of displacement because they will not be able to move back into similarly large apartments when the redevelopment is complete, as the class is "currently defined." *Id.* At this point in the proceedings, Ms. Borum has demonstrated that that group, so defined, is sufficiently large to satisfy Rule 23(a)'s numerosity requirement.

### *ii. Non-Parental Adults*

Next, Defendants argue that "[t]he class which plaintiff[] define[s] is overbroad and runs contrary to this Court's admonition because it seeks to include individuals not qualifying for familial status under the FHA and the DCHRA." Defs.' Opp'n at 5. The admonition to which Defendants are referring is the sentence in a footnote in the Court's prior ruling on Plaintiffs' motion for a preliminary injunction, in which the Court noted that "by a plain reading of the statutory text, the FHA protects only minor children living with parents (or similar guardians)." *Borum*, 218 F. Supp. 3d. at 26 n.13 (citing 42 U.S.C. § 3602(k)). It continued that "a group of people cannot talismanically receive protection under the FHA just because one of them happens to be a parent domiciled with a minor child." *Id.* However, while those individuals may not "talismanically" receive protection under the FHA, they do receive protection when they are persons "aggrieved" under the statute, as explained below.

"[I]n order to maintain a class action, each member of the class must have standing to assert her own claims against the defendant." *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012). The FHA provides that it shall be

unlawful to "refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of . . . familial status," 42 U.S.C. § 3604(a), or to "make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on . . . familial status . . . or an intention to make any such preference, limitation, or discrimination." 42 U.S.C. § 3604(c). Familial status is defined as "one or more individuals (who have not attained the age of 18 years) being domiciled with (1) a parent or another person having legal custody of such individual or individuals; or (2) the designee of such parent or other person having such custody, with the written permission of such parent or other person." 42 U.S.C. § 3602(k).

One avenue of recourse for violations of 42 U.S.C. § 3604 is for "aggrieved persons" to "commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613.[4] An "aggrieved person" is defined as anyone who "(1) claims to have been injured by a discriminatory housing practice; or (2) believes that such person will be injured by a discriminatory housing practice that is about to occur." 42 U.S.C. § 3602(i).

The current language of the "familial status" and "aggrieved person" provisions were added to the Fair Housing Act in 1988. "Congress expanded the Fair Housing Act to protect against familial status discrimination in light of an express concern for the plight of single-parent families, young families with children, and poor families." *United States v. Branella*, 972 F.

---

[4] The DCHRA similarly provides that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate." D.C. Code § 2-1403.16.

Supp. 294, 297 (D.N.J. 1997). And "[i]n amending the definition of 'aggrieved person,' Congress intended to extend broad standing principles to those seeking redress under the FHA. The House Judiciary Committee commented that the term 'aggrieved persons' in the 1988 amendments 'adopts as its definition language similar to that contained in . . . existing law, as modified to reaffirm the broad holdings of [the Supreme Court's decisions in *Gladstone* and *Havens Realty*].'" *Gorski v. Troy*, 929 F.2d 1183, 1188 (7th Cir. 1991) (citing H.R. Rep. No. 711, 100th Cong., 2d Sess., *reprinted in* 1988 U.S. Code Cong. & Admin. News 2173, 2184 (1988)). ).

In *Gladstone*, the Court had held that, because Congress intended standing under the FHA "to extend to the full limits of Art. III, the normal prudential rules do not apply[.] [A]s long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed." *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979). For example, white homeowners could challenge two real estate brokerage firms' practice of "steering" black homebuyers and white homebuyers to different neighborhoods based on their race, a violation of the FHA, even when the white homeowners who sued had not been steered to a different neighborhood based on their race, but rather already lived in the neighborhood to which black homebuyers were being steered. *Id* at 111–12. Their standing was based in "the transformation of their neighborhood from an integrated to a predominantly Negro community[,] depriving them of 'the social and professional benefits of living in an integrated society.'" *Id.* The Court was persuaded that the white residents had alleged actual injury caused by the discrimination, including "the loss of social and professional benefits," as well as "economic injury" in the form of the "absolute or relative diminution in value of the individual respondents' homes." *Id.* at 115.

As Ms. Borum points out in her reply, courts in other circuits have recognized the broad meaning of "aggrieved person" in the familial status context, and have allowed other co-residents to challenge policies that discriminate against families, similar to the way that white residents may challenge policies that discriminate based on race, even when those white residents are not the ones being discriminated against, but have still suffered a concrete injury. *See* Pls.' Reply at 18, 18 n.14. Ms. Borum alleges that putative class members in this case, including non-parental adults living in large apartments with minor children and their guardians, are "at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor" by a policy that she hopes to prove has a disparate impact on individuals based on their familial status. If proven, such a risk would be a cognizable injury capable of conferring Article III standing. As such, the Court finds that non-parental adults living with minor children and their guardians in three-, four-, and five-bedroom apartments in Brookland Manor have standing to sue under the FHA. And because they stand to suffer the same injury-in-fact as the parents and minors contained within the class—displacement due to the Defendants' redevelopment plan—and seek the same relief—an injunction ordering Defendants to alter their redevelopment plan in a way that eliminates its disparate impact on families—they are properly counted as members of the class for the purposes of numerosity.

### iii. Residents of Three-Bedroom Apartments

Defendants also argue that Ms. Borum's "inclusi[on] in the headcount of families living in 3BR apartments when the record is uncontradicted that the Redevelopment Plan will include at least 64 3BR apartments" is another "glaring deficienc[y]" in her numerosity analysis. Defs.' Opp'n at 7. Defendants contend that this is a deficiency because fewer than 64 families currently occupy the 75 three-bedroom apartments at Brookland Manor, and therefore are at no risk of

being displaced. *Id.* However, as Ms. Borum points out, that contention will be incorrect if "there are not enough larger apartments in the planned development to house appropriately all the families currently living at Brookland Manor." Pls.' Reply at 5. In that case, "families in three-bedroom apartments are at just as much risk of displacement as those in four- or five-bedroom apartments." *Id.* While some families currently living in three-bedroom apartments will likely be able to stay in such apartments, and therefore will not be harmed by Defendants' actions, others, because they will be competing with families currently residing in four- and five-bedroom apartments, will be unable to move into one of the 64 new three-bedroom apartments. Even though, by Defendants' estimate, there were only 31 families living in three-bedroom apartments in 2017, the number of families that may be displaced from their four- or five-bedroom apartments is far larger than 33. *See* Beveridge Decl. tbl. 1. Thus, when the families displaced by the elimination of the four- and five- bedroom apartments are included in the equation, more than 64 families will be competing for three-bedroom apartments. Therefore, families in three-bedroom apartments also currently suffer a risk of displacement, and are properly included in the class.

### iv. *Families Whose Minor Children Have Now Turned 18*

Defendants next question Ms. Borum's inclusion in her headcount of families whose children were minors on October 1, 2014 (the date the First-Stage PUD application was filed) or on August 26, 2016 (the date the Complaint was filed), but have now turned 18, or will before 2020, when the anticipated next phase of the redevelopment plan proceeds. Defs.' Opp'n at 11. Specifically, Defendants claim that 38% of the families occupying large apartments as of June 2017 will no longer qualify for familial status protection by 2020. *Id.* at 27. Ms. Borum does not respond to the contention that households with children who have since turned 18 and no longer

include any minors should not be counted, but does point to the fact that her expert did in fact calculate the number of families with minor children occupying large apartments with data from January 2017. *See* Pls.' Reply at 10. Ms. Borum explains that she could not calculate the number of households more precisely because documents containing Brookland Manor residents' birthdays were not released to her, and therefore her expert was not able to calculate the number of apartments containing minor children in June 2017, or thereafter. *Id.* at 10 n.8.

Plaintiffs must have live claims at the time of class certification. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975). Individuals living in apartments that no longer have minor children no longer fit within the class definition of people residing in large apartments with minor children and their guardians who are at risk of displacement. Therefore, individuals in households that no longer contain minor children cannot be counted as class members going forward. However, Defendants have not argued that excluding the residents of households that recently housed minor children, but no longer do, from the class member count decreases the number of putative class members to a number below forty residents. *See Barnes v. District of Columbia*, 242 F.R.D. 113, 121 (D.D.C. 2007) (citing *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) (numerosity presumed at forty class members). Additionally, the number of households that aged out of the class definition between January 2017 and the certification of this class is likely small, and according to Defendants' expert, likely fewer than 45. *See* Clark Decl. at 6. As such, with a count of 118 apartments housing 543 people as recently as last year, the Court finds that Ms. Borum has established numerosity, even excluding those households, which are likely few in number, that no longer contain minor children.

*v. Impracticability of Joinder*

In order to satisfy Rule 23(a)(1)'s numerosity requirement, a class must be so numerous that joinder would be impracticable. Defendants have argued that joinder in this case would not be impracticable because class members will be easily identifiable and all live in the same apartment complex. *See* Defs.' Opp'n at 43–44. In support of this argument, Defendants cite to numerous cases in which courts held that joinder was practicable where class members lived near each other and could be easily reached. However, Defendants' argument regarding the practicability of joinder for the most part relies on the contention that the plaintiff class is too small, when properly calculated, for joinder to be impracticable. As explained above, the plaintiff class contains hundreds of individuals—far more than the minimum of forty that creates a presumption of the impracticability of joinder. *Lightfoot v. District of Columbia*, 246 F.R.D. 326, 335 (D.D.C. 2007) ("Courts in this District have generally found that the numerosity requirement is satisfied and that joinder is impracticable where a proposed class has at least forty members.") (citing *Bynum v. District of Columbia*, 214 F.R.D. 27, 32 (D.D.C. 2003)).

As explained in *Coleman ex rel. Bunn*, apart from the number of class members, "additional factors that courts consider in assessing the practicability of joinder include: (1) judicial economy arising from avoidance of a multiplicity of actions; (2) geographic dispersion of class members; (3) size of individual claims; (4) financial resources of class members; and (5) the ability of claimants to institute individual suits." *Coleman ex rel. Bunn v. District of Columbia*, 306 F.R.D. 68, 80 (D.D.C. 2015) (internal quotation marks omitted) (citing Newberg on Class Actions § 3:12 (5th ed. 2014)).

This case involves two claims—disparate impact and discriminatory statements—which can both be addressed through an injunction. As such, adjudicating each class members' claims

together will save resources for both the parties and the Court. And while the class members in

this case are not dispersed—indeed, they are about as geographically concentrated as class

members can be—and can be easily identified, many of them lack the resources to bring a

complex civil rights suit on their own. In some cases in which class members are geographically

compact and not too numerous, joinder may not be impracticable. *See Frazier v. Consol. Rail*

*Corp.*, 851 F.2d 1447, 1456 (D.C. Cir. 1988) (finding that district court's decision not to certify a

class of 28 individuals who all lived "within a reasonable distance of the district court" was

soundly within its discretion). But in a case such as this, with hundreds of class members, where

many class members are low income, and many are minor children, the Court finds that to

proceed through joinder rather than class action would not only overly burden putative class

members, but also very likely waste judicial resources. As such, the Court finds that Ms. Borum

has demonstrated that the putative class is "so numerous that joinder of all members is

impracticable." Fed. R. Civ. P. 23(a)(1).

### b. Commonality

Ms. Borum also contends that she satisfies Rule 23(a)'s commonality requirement

because she is challenging a single policy or practice that has a disparate impact on Brookland

Manor residents based on their familial status. Pls.' Mem. at 11–14. Commonality requires a

finding that there are "questions of law or fact common to the class," Fed. R. Civ. R. 23(a)(2). In

other words, such claims "must depend upon a common contention . . . that is capable of

classwide resolution—which means that the determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*

*v. Dukes*, 564 U.S. 338, 350 (2011). Ms. Borum argues that since the lawsuit in this case is

premised on the single policy of eliminating four- and five-bedroom apartments and reducing the

number of three-bedroom apartments, the question of Defendants' liability based on disparate impact analysis is conducive to class adjudication.

Defendants respond that Ms. Borum has not demonstrated that all of the putative class members "suffer[ed] the same injury." Defs.' Opp'n at 38 (quoting *Wal-Mart*, 564 U.S. at 349). They continue that "District of Columbia precedent establishes that the alleged policy or practice must affect all members of the class in the same way to establish commonality, and plaintiff, at a minimum, must offer evidence that the class members have in common the elements of those claims." *Id.* (citing *Parker v. Bank of Am., N.A.*, 99 F. Supp. 3d 69, 80 (D.D.C. 2015)). Defendants contend that Ms. Borum has not demonstrated that all members of the putative class will be affected by the policy in the same way because the type of injury sustained by each plaintiff will be "a product of numerous factual inquiries such as how many individuals within a particular apartment enjoy familial status protection[;] which subsidy program, if any, applies to the specific family[;] what occupancy standard applies to the family[;] what size apartment is dictated by application or the correct occupancy standard[;] whether alternative apartment configuration, such as adjoining units, represent an effective measure to avert injury[;] and whether any particularized defenses (as are applicable to Plaintiff Holloman)[5] apply." *Id.* at 38–39.

<hr />

[5] Defendants claim that prior to her move from Brookland Manor and dismissal of her claims, Ms. Holloman was "in default of her lease due to non-payment of rent 28 times during her tenancy," and had been "sent a Notice of Proposed Termination of Tenancy on June 6, 2017." Defs.' Opp'n at 30 n.27. They also claim that she was "in default of her lease (should her Declaration be believed) because she [wa]s housing an alleged daughter who has not been declared in her lease and in her certifications to the landlord." *Id.* "Accordingly," they claim, "there are a myriad of potentially dispositive additional issues applicable to Plaintiff Holloman but not common to the class which make her an inadequate class representative and may cause her to not be a tenant when this Court reaches the merits of this controversy." *Id.* The Court need not address these issues, as Ms. Holloman is no longer a tenant and has withdrawn from this lawsuit. ECF No. 55, 56.

"As is now well recognized, the class action commonality criteria are, in general, more easily met when a disparate impact rather than a disparate treatment theory underlies a class claim." *Garcia v. Johanns*, 444 F.3d 625, 632 (D.C. Cir. 2006) (quoting *Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 274 n.10 (4th Cir. 1980)). While some of the issues Defendants raise may be relevant to determining whether the redevelopment does have a disparate impact on residents based on their familial status, they would serve as components in the overall calculation of whether the policy has a disparate impact. That does not change the fact that, if Ms. Borum's claim of disparate impact is proven, all class members will have suffered the same injury (the risk of being displaced). *See Wal-Mart*, 564 U.S. at 349–350 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" (quoting *Falcon*, 457 U.S. at 157)). Class members need not be identically situated. "[F]or purposes of Rule 23(a)(2) even a single a common question will do." *Id.* at 359 (internal quotation marks and citations omitted). Here, the question of whether this redevelopment will have a disparate impact based on familial status is one such common question. As such, Ms. Borum has satisfied Rule 23(a)(2)'s commonality requirement.

### c. Typicality

Ms. Borum next contends that her claims are typical of all class members' claims, because she "assert[s] rights under both the FHA and DCHRA based on the systematic actions of the Defendants." Pls.' Mem. at 15. Defendants claim that Ms. Borum's claim is not typical because she has yet to suffer any displacement and is not at risk of being displaced until at least late 2020. Defs.' Opp'n at 36–37. Additionally, Defendants argue that Ms. Borum's claim is not typical of the class's because she has "non-protected individuals" (her adult children) living with her, and the protected individuals in her apartment (Ms. Borum and her two minor children)

could be properly placed within a two-bedroom apartment, of which there will be plenty in the redeveloped Brentwood Village. *Id.* at 37.

Rule 23(a)(3) requires a plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Generally, "[t]he commonality and typicality requirements . . . tend to merge." *Wal-Mart*, 564 U.S. at 349 n.5. "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 158 n.13. Typicality, however, derives its independent legal significance from its ability to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2017).

Here, Defendants have not demonstrated that Ms. Borum's claims differ significantly from those of other class members who are still residing at Brookland Manor. The claims that she brings, and the claims that the class as a whole will bring, are claims of disparate impact and discriminatory statements under state and federal law, the resolution of which will be subject to common proof (i.e. the policy will either have a disparate impact on residents based on their familial status, or it will not). And, if Defendants' argumentation regarding the numerosity and commonality prongs of Rule 23(a) are any indication, the defenses that Defendants claim apply to Ms. Borum will also be the defenses they use to defend against the claims of other class members. Therefore, it is clear that Ms. Borum's claims, and the defenses she will need to

address when this case is decided on the merits, will be typical of the class as a whole. As such, she meets the requirements of Rule 23(a)(3).

### d. *Adequacy of Representation*

Last, Ms. Borum contends that she and her attorneys "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see* Pls.' Mem. at 16–17. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. at 157–158, n.13). It "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Nat'l Ass'n for Mental Health, Inc. v. Califano*, 717 F.2d 1451, 1458 (D.C. Cir. 1983) (citing *Horton v. Goose Creek Indep. Sch. Dist.*, 677 F.2d 471, 488 (5th Cir. 1982)).

Defendants claim that Ms. Borum has not met the adequacy requirement for several reasons. First, they claim that Ms. Borum has a conflict of interest with a substantial number of putative class members because there is a "significant disagreement within the class" about whether the redevelopment should go forward as currently planned. Defs.' Opp'n at 32. In support of this contention, Defendants submitted declarations from thirty putative class members expressing "support of the Redevelopment Plan" and "disapproval of the instant litigation." *Id.* at 33. Defendants also submitted a letter supporting the redevelopment plan signed by tenants of large apartments, as well as individual letters of support. *Id.* at 33–34.

However, none of these declarations or letters make clear that the signatories or authors knew that the redevelopment would not contain apartments as large as the ones they are currently

living in, or that that is why Ms. Borum and DC ONE have sued.[6] Instead, the declarations vaguely mention that the signatories support the redevelopment and oppose the litigation. *See* Attach. to Ex. 5 to Decl. William Casano, ECF No. 47-4. These vague statements are consistent with the natural sentiment that the signatories oppose litigation that will prevent them from receiving a new apartment in a newly redeveloped neighborhood, not that they are opposed to receiving a new apartment in a newly redeveloped neighborhood that also contains large apartments. The declarations simply do not indicate a conflict between the signatories' desires and the actual relief sought by Ms. Borum. However, even if it were indisputably true that these putative class members supported the redevelopment and elimination of large apartments, and therefore opposed litigation attempting to secure a number of large apartments, these putative class members' positions would not necessarily doom the certification of this class.

Defendants cite to several cases to support their contention that courts should not certify classes when some of the putative class members support the position of the defendant rather than the plaintiff. *See* Defs.' Opp'n at 35–36. However, in each of the cases cited, the interests of the named plaintiffs were deemed to be in actual conflict with those of the dissenting class members. For example, in *Shulman v. Ritzenberg*, forty-seven of fifty-three class members submitted affidavits explaining, among other things, that "that they d[id] not believe plaintiff's conduct [wa]s consistent with the best interests of the joint ventures of which they [we]re

---

[6] Ms. Borum has also raised other issues with these declarations, highlighting that "there are serious questions about whether the declarants were provided accurate, unbiased information when asked to sign declarations." Pls.' Reply at 19. She claims that some declarants now believe that the lawsuit and the declarations were "inaccurately described to them," and that "[o]ne declarant even stated that she did not ever sign a declaration at all and had never seen the declaration until presented to her by Plaintiffs' counsel." *Id.* at 19–20. While the Court is troubled by these accusations, it need not determine the reliability of these declarations at this time, as the declarations do not demonstrate a direct conflict between Ms. Borum and the declarants.

members." 47 F.R.D. 202, 207 (D.D.C. 1969). In *Schy v. Susquehanna Corp.*, 80.8% of stockholders approved of the action, the issuance of preferred stock for use in effectuating a merger, that plaintiff was challenging. 419 F.2d 1112, 1116–17 (7th Cir. 1970). And in *Spano v. Boeing Co.*, the court found that adequacy of representation had not been proven when the proposed class was defined so broadly that it included individuals who would actually be harmed by the relief plaintiffs sought. 633 F.3d 574, 587 (7th Cir. 2011). *Mayfield v. Dalton* was unique among the cases cited by Defendants, as it approved of a district court's decision to deny class certification on adequacy grounds without proof of conflict when there *may* have been "people among the broad class proposed [] who did not oppose the [challenged policy], and who, in fact, approved of it and wished the policies fully enforced." 109 F.3d 1423, 1427 (9th Cir. 1997).

In response, Ms. Borum cites to examples where courts found that disagreement among class members did not defeat a plaintiff's claim of adequacy where the disapproving class members' interests were adequately represented by the defendants. *See* Pls.' Reply at 21–22. The Court need not decide which philosophy should prevail, as in this case there does not appear to be any substantial conflict between Ms. Borum's interests and the interests of other putative class members, even the ones who submitted declarations supporting the redevelopment. As Ms. Borum explains, she did not file suit in order to permanently impede the redevelopment of Brookland Manor, but rather to ensure that she and other residents would not be displaced by the redevelopment in a way that discriminated against them based on their familial status. *See* Pls.' Reply at 19 n.16. As such, the only class members whose interests conflict with Ms. Borum's would be those currently residing in large apartments who wish for those large apartments to be eliminated during the redevelopment. Since there is no evidence that any such resident exists, the

Court finds that there is no substantial conflict between Ms. Borum's interests and those of the putative class.

Defendants also argue that Ms. Borum cannot serve as an adequate representative of the class when she "lack[s] any real and immediate injury or threat of injury." Defs.' Opp'n at 28. This purported lack of a threat of injury is due to her household containing several non-parental adults whom Defendants argue are not entitled to protection under the FHA or DCHRA. *Id.* at 28–29. By excluding the non-covered adults, Defendants argue that covered members of Ms. Borum's family would be able to fit into an apartment with two bedrooms or fewer, of which there will be plenty in the redeveloped complex. *Id.* In support of this contention, Defendants cite to *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, an employment discrimination case in which the Supreme Court held that plaintiffs who had already been determined to lack the necessary qualifications for the employment at issue could not have suffered any injury as a result of the employer's alleged discriminatory practices, and therefore could not adequately represent a class of plaintiffs challenging the discriminatory policy. 431 U.S. 395, 403 (1977); Defs.' Opp'n at 31–32. However, in that case, it had already been determined after a trial on the merits, which was held prior to the debate over class certification, that the plaintiffs had not been harmed by the challenged policy. *See Rodriguez v. E. Tex. Motor Freight, Inc.*, No. SA-71-CA-302, 1973 WL 200, at *1 (W.D. Tex. Mar. 22, 1973). As such, no question of fact remained as to whether they were appropriately members of the class being considered.

Here, Ms. Borum has alleged injuries under the FHA and DCHRA, both past (discriminatory statements) and future (displacement that disparately impacts families). These allegations are sufficient to make her an adequate representative. Whether she and the putative class may succeed on the merits of their disparate impact and discriminatory statement claims are

questions to be determined on summary judgment or at trial, but not at the class certification stage. For now, Ms. Borum has alleged the same type of injury to herself as she alleges will be suffered by other members of the putative class. As such, she is an adequate representative to bring these claims on behalf of the class. And because, as explained above, she has met each requirement of Rule 23(a), the Court next turns to the question of whether she has satisfied the requirements of Rules 23(b)(2).[7] *See Comcast Corp. v. Behrend*, 569 U.S 27, 33 (2013) ("[A] party must not only be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." (internal citations and quotation marks omitted)),

## B. Rule 23(b)(2)

Defendants argue that Ms. Borum has not demonstrated that her class meets the requirements of Rule 23(b)(2), a type of class action that may be maintained when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see* Defs.' Opp'n at 39. "By virtue of its requirement that the plaintiffs seek to redress a common injury . . . Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive." *Lemon v. Int'l Union of Operating Eng'rs', Local No. 139, AFL–CIO*, 216 F.3d 577, 580 (7th Cir. 2000). "The key to the (b)(2) class is 'the

---

[7] Ms. Borum also moved for class certification under Rule 23(b)(3) in order to obtain damages for class members who have already been displaced or are displaced during the pendency of this litigation. However, as explained above, the Court treats these putative class members as a distinct subclass and denies certification of this subclass because it does not meet the requirements of Rule 23(a). As such, the Court need not determine whether those groups meet the requirements of Rule 23(b)(3).

indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "As a corollary to this principle, certification is generally inappropriate in actions raising significant individual liability or defense issues," *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 329 (D.D.C. 2011), or "when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Wal-Mart*, 564 U.S. at 360. But "cases in the civil rights field are illustrative of the types of class actions suitable for certification under (b)(2)." *Taylor v. Dist. of Columbia Water & Sewer Auth.*, 241 F.R.D. 33, 47 (D.D.C. 2007) (internal citation and quotation marks omitted).

Defendants assert that Rule 23(b)(2)'s requirements have not been met because, in their opinion, not all class members are similarly situated. For example, Defendants argue that, occupants of three-bedroom apartments will not be impacted by the redevelopment in the same way as residents of four- and five-bedroom apartments, nor will occupants of apartments that contain multiple small families be impacted in the same way as apartments that contain one large one. Defs.' Opp'n at 39. Because these various class members are not identically situated, Defendants claim that "it cannot be concluded that any single injunction or declaratory judgment would provide relief to each member of the class." *Id.*

However, as Ms. Borum explains in her motion for class certification, she is seeking an injunction that would do two things: require "Defendants to modify their redevelopment plan in a manner so as to eradicate disparate impact," Pls.' Reply at 22, and preclude "Defendants from making further statements that discriminate against families." Pls.' Mem. at 19. Ms. Borum is

not requesting any particular remedy as to any particular family. Because Ms. Borum has

challenged a single policy and a single set of statements, whose harm, should liability be found,

could be remedied by court orders applicable to all class members, she has demonstrated that this

suit satisfies the requirements of Rule 23(b)(2).

### C.  Class Counsel

Ms. Borum also moves, unopposed, for the appointment for her legal team as class

counsel. *See* Pls.' Mem. at 24–25. Rule 23(g) provides that a court must appoint

> adequate class counsel to represent the class after considering: (1)
> the work counsel has done in identifying or investigating potential
> claims in this action, (2) counsel's experience in handling class
> actions, other complex litigation, and claims of the type asserted in
> the action, (3) counsel's knowledge of the applicable law, and (4)
> the resources counsel will commit to representing the class.

*Johnson v. District of Columbia*, 248 F.R.D. 46, 58 (D.D.C. 2008) (internal quotation marks and

citation omitted). Ms. Borum's legal team, comprised of multiple attorneys with experience in

complex civil and civil rights litigation, meets all of these requirements. *See* Decl. Maureen F.

Browne, ECF No. 43-3; Decl. Matthew Handley, ECF No. 43-4. As such, the Court grants Ms.

Borum's motion to appoint her current legal team as class counsel.


### V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Class Certification (ECF No. 43) is

**GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' Motion for Appointment of

Class Counsel (ECF No. 43) is **GRANTED**.  The following class is hereby **CERTIFIED** under

Rule 23(b)(2):

All individuals who reside at Brookland Manor in a three-, four-, or five-bedroom unit that houses one or more minor child and his or her guardian, and are at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor as a direct result of the proposed redevelopment.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  February 12, 2018                                        RUDOLPH CONTRERAS
                                                                United States District Judge