# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ADRIANN BORUM, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1723 (RC) |
| | : | | |
| v. | : | Re Documents Nos.: | 72, 74 |
| | : | | |
| BRENTWOOD ASSOCIATES, L.P., *et. al*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### DENYING DEFENDANTS' MOTION TO DECERTIFY THE CLASS AND DENYING DEFENDANTS' MOTION TO STAY DISCOVERY

## I. INTRODUCTION

On February 12, 2018, this Court certified a class of residents of the Brookland Manor apartment complex alleged to be at risk of harm by Defendants' planned redevelopment of the complex, which Plaintiffs argue will have a disparate impact on residents based on their familial status in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, and D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 to 2-1404. Defendants now move for decertification of the class, arguing that new developments have rendered named plaintiff Adriann Borum an inadequate class representative. The Court agrees that, in light of her changed circumstances, Borum can no longer adequately represent the class. However, the Court finds that decertification is an inappropriate remedy when Plaintiffs have the ability to find an adequate substitute class representative for Borum. The Court accordingly denies the motion to decertify the class and orders Plaintiffs to put forward a substitute class representative within 30 days. The Court also denies as moot Defendants' motion to stay or continue discovery.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Initial Dispute and Class Certification[1]

The certified class of plaintiffs in this case are residents of Brookland Manor, an affordable housing complex in the Brentwood neighborhood of Washington, D.C. *See Borum v. Brentwood Village, LLC*, 324 F.R.D. 1, 20 (D.D.C. 2018). Defendants Brentwood Associates, L.P., Mid-City Financial Corporation, and Edgewood Management Corporation have put together a redevelopment plan for the complex that reduces the number of three-bedroom apartments and fully eliminates four- and five-bedroom apartments. *See id.* at 6–7. Plaintiffs are residents of three, four, and five-bedroom apartments at Brookland Manor who are at direct risk of being displaced from a three, four, or five-bedroom apartment as a result of the proposed redevelopment plan. *See id.* at 20. Adriann Borum, the class representative, resides in a four-bedroom apartment at Brookland Manor with her five children, *see id.* at 6, including, *inter alia*, her adult children Donta and Trayvon, *see* Defs.' Mem. Supp. Mot. Decertify Class at 2, ECF No. 72.

Borum and original co-plaintiffs Loretta Holloman and One DC filed suit on August 25, 2016, bringing claims against Defendants for disparate impact discrimination and discriminatory statements in violation of the FHA and the DCHRA. Compl., ECF No. 2. Holloman voluntarily dismissed her claims on November 27, 2017. Order Granting Unopposed Mot. for Voluntary Dismissal, ECF No. 56. After Borum and One DC filed a motion for class certification, the Court granted the motion in part and certified a class of plaintiffs on February 12, 2018. *See*

---

[1] Having already set out the factual background for this case in detail in the February 12, 2018 memorandum opinion, *see Borum v. Brentwood Village, LLC*, 324 F.R.D. 1 (D.D.C. 2018), the Court assumes familiarity with its prior opinion and only briefly goes over facts already discussed.

*Borum*, 324 F.R.D. at 20. In particular, the Court found that Borum was an adequate representative despite Defendants' contention that there was disagreement amongst putative class members regarding whether the development should go forward, and the Court rejected Defendants' argument that Borum's interests conflicted with those of the class. *See id.* at 17–19.

## B. Recent Developments Relating to Borum

On August 10, 2018, Defendants filed a motion to decertify the class. Defs.' Mot. Decertify Class, ECF No. 72. Defendants represent that members of Borum's household have engaged in three instances of criminal activity over the prior ten months, that Borum was issued a notice to vacate her residence at Brookland Manor and will soon be facing eviction, and that as a result she no longer adequately represents the interests of the class. *See* Defs.' Mem. Supp. at 1. Both parties appear to be in agreement as to the facts underlying each alleged instance of criminal activity.

First, Trayvon Borum was arrested for reckless driving, leaving after colliding, and unlawful possession of ammunition on November 26, 2017. *See* Nov. 26, 2017 Police Report, Defs.' Mot. Decertify Class Ex. B, ECF No. 72-3. According to the police report, the incident began when police officers investigated reports of gunshots being fired in the 500-600 block of Edgewood Terrace and a witness identified a maroon car leaving the area at high speed. *See id.* When a police vehicle attempted to stop the car, it crashed into another police cruiser and four men fled the scene. *See id.* Trayvon Borum was subsequently stopped by police and admitted to being the driver of the maroon car. *See id.* In the car's glove compartment, police officers located 28 rounds of ammunition. *See id.* Trayvon Borum pled guilty to leaving after colliding and unlawful possession of unregistered ammunition on January 9, 2018. *See* Jan. 9, 2018

Sentence, Defs.' Mot. Decertify Class Ex. C, ECF No. 72-4; Docket, *United States v. Borum*, 2017 CTF 020138 (D.C. Sup. Ct.).[2]

Second, Trayvon Borum was arrested for possession of a controlled substance and drug paraphernalia on March 20, 2018. *See* March 20, 2018 Police Report, Defs.' Mot. Decertify Class Ex. D, ECF No. 72-5. According to the police report, the police officers who approached a parked vehicle identified, in plain view, three bags containing a "green leafy substance" that was later identified as marijuana, a digital scale, and a box containing clear sandwich bags. *Id.* Two days after corresponding misdemeanor charges were filed in D.C. Superior Court, the charges were dismissed *nolle prosequi* on March 23, 2018. *See* Pls.' Mem. Opp'n Defs.' Mot. Decertify Class at 4, ECF No. 75; Docket, *United States v. Borum*, 2018 CMD 004602 (D.C. Sup. Ct.).

Finally, Donta Borum was arrested for assault on a police officer on July 5, 2018, following an altercation with police on Brookland Manor grounds. *See* July 5, 2018 Police Report at 2, Defs.' Mot. Decertify Class Ex. A, ECF No. 72-2. The charge was also dismissed *nolle prosequi* on August 14, 2018. *See* Docket, *United States v. Borum*, 2018 CMD 010005 (D.C. Sup. Ct.).

On July 29, 2018, Edgewood Management served Borum with a notice to quit and vacate, for violation of the terms of her lease that prohibit engaging in drug-related criminal activity on or near the complex, engaging in criminal activity that threatens the health, safety, or right to peaceful enjoyment of other residents or of persons residing in the immediate vicinity of the complex, and engaging in criminal activity generally. *See* Defs.' Mem. Supp. at 5; Notice to

---

[2] The Court can, and does, take judicial notice of the dockets for the related cases involving Borum and her family members. *See, e.g.*, *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014) ("A court may take judicial notice of facts contained in public records of other proceedings[.]" (citing *Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

Quit and Vacate, Young Decl. Ex. 1, ECF No. 71-1. On August 31, 2018, Edgewood initiated

eviction proceedings against Borum and her family in D.C. Superior Court. *See* Docket,

*Edgewood Mgmt. Corp., et al. v. Borum*, 2018 LTB 020834 (D.C. Sup. Ct.).

After Defendants filed their motion to decertify on August 10, 2018, Defendants also

filed a motion to stay or continue discovery pending the Court's determination of the motion to

decertify on August 24, 2018. *See* Defs.' Mot. Stay Discovery, ECF No. 74. The same day,

Plaintiffs filed their memorandum in opposition to the motion to decertify. *See* Pls.' Mem.

Opp'n. Defendants filed their reply in further support of the motion on August 31, 2018. *See*

Defs.' Reply, ECF No. 77. The motion to decertify is now ripe for review.[3]

## III. LEGAL STANDARD

"After a class is initially certified, Rule 23 expressly grants courts the discretion to revisit

the propriety of continued class certification in later stages of litigation." *DL v. District of*

*Columbia*, 312 F.R.D. 1, 6 (D.D.C. 2015) (citing Fed. R. Civ. P. 23(c)(1)(C)). The D.C. Circuit

has emphasized that "class certification problems are constantly subject to reconsideration as the

facts develop." *Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C. Cir.

1981). And "[a]s the proponent of continued class certification, Plaintiffs [retain] the burden of

establishing that [all] of the requirements for class certification ... are met." *Lightfoot v. District*

*of Columbia,* 246 F.R.D. 326, 332 (D.D.C. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521

U.S. 591, 614 (1997)).

---

[3] On January 2, 2019, Defendants filed a Notice of Supplemental Facts regarding the motion to decertify. *See* Defs.' Notice Supp. Facts, ECF No. 111. In the notice, Defendants represent that additional criminal activity at Borum's apartment was discovered pursuant to a search warrant on December 8, 2018. *See id.* at 2–3. The Court has reviewed the notice and the attached exhibits. Because the facts alleged in the notice do not alter the Court's decision both with respect to whether Borum is an adequate class representative and whether the class should be decertified, the Court does not discuss the notice in its opinion.

# IV. ANALYSIS

Defendants move to decertify the class because the eviction proceedings pending against Borum render her an inadequate class representative. Defendants argue that Borum is likely to be evicted and that she cannot adequately represent the class because she no longer has a long-term stake in the redevelopment of Brookland Manor. *See* Defs.' Mem. Supp. at 10. Plaintiffs retort that any potential conflict is hypothetical, that Borum's eviction is unlikely, and that her interests remain consistent with those of the class. *See* Pls.' Mem. Opp'n at 6–7. Plaintiffs also argue that decertification would be an inappropriate remedy even if Borum was an inadequate class representative. *See id.* at 5–6. In their reply, Defendants point out that the pending eviction proceedings create a disqualifying conflict for Borum regardless of the outcome of those proceedings. *See* Defs.' Reply at 6, 9.

The Court first reviews whether Borum remains an adequate class representative, and then whether decertification is an appropriate remedy. While the Court finds that Borum's interests conflict with the class and render her an inadequate representative, it finds that substitution is the appropriate remedy. Accordingly, the Court denies the motion to decertify the class.

## A. Borum Is Not an Adequate Class Representative

The Court first evaluates whether the eviction suit pending against Borum affects the adequacy of her representation of the class of plaintiffs in this case. Without definitely pronouncing itself as to the likelihood of Borum's eviction, the Court finds that the eviction proceedings sufficiently change Borum's interests to render her an inadequate class representative.

Under Rule 23(a)(4), Plaintiffs have an ongoing burden of showing that Borum will

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). As the

Supreme Court has explained, "[t]he adequacy inquiry under Rule 23(a)(4) serves to uncover

conflicts of interest between named parties and the class they seek to represent." *Amchem*

*Prods.*, 521 U.S. at 625. Amongst other requirements, the rule "mandates an inquiry into . . . the

willingness and ability of the representative to take an active role in and control the litigation and

to protect the interests of absentees." *Nat'l Ass'n for Mental Health, Inc. v. Califano*, 717 F.2d

1451, 1458 (D.C. Cir. 1983) (quoting *Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 471,

484 (5th Cir. 1982)). Courts have accordingly found inadequate representation when class

members' "interests are antagonistic in fact to, or even 'potentially conflicting' with, the interests

of the ostensibly representative parties[.]" *Phillips v. Klassen*, 502 F.2d 362, 366 (D.C. Cir.

1974) (quoting *Hansberry v. Lee*, 311 U.S. 32, 41–42 (1940)). On the other hand, courts have

also recognized that "[o]nly conflicts that are fundamental to the suit and that go to the heart of

litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." *Keepseagle*

*v. Vilsack*, 102 F. Supp. 3d 205, 216 (D.D.C. 2015) (quoting Newberg on Class Actions § 3:58

(5th ed. 2014)).

Defendants argue that Borum is no longer an adequate class representative because her

interest in defending against the eviction conflicts with the interests of the class, and because her

pending eviction means she no longer has a long-term interest in the redevelopment of

Brookland Manor. *See* Defs.' Mem. Supp. at 13–14, Defs.' Reply at 9. Plaintiffs retort that

Defendants' arguments are based on speculation over the outcome of eviction proceedings, when

Borum's current interests are unchanged and in line with those of the class. Pls.' Mem. Opp'n at

6–9. Plaintiffs separately argue that Borum's eviction is unlikely. *See id.* at 10–11. The Court

first addresses Plaintiffs' argument that any asserted conflict based on the pending eviction proceedings is speculative. Because much of Defendants' arguments rely on their assumption that Borum will be evicted, the Court next reviews the parties' arguments as to the likelihood of Borum's eviction. Finally, the Court reviews the parties' arguments regarding how the potential eviction could affect Borum's interests in this litigation.

### 1. The Eviction Proceedings Create a Present Conflict for Borum

First, the Court briefly discusses, and rejects, Plaintiffs' arguments that the pending eviction proceedings raise an inherently speculative or hypothetical conflict between Borum and the class. "Speculative or hypothetical conflicts will not defeat the adequacy requirement[,]" *Garza v. Hargan*, 304 F. Supp. 3d 145, 158 (D.D.C. 2018). Plaintiffs state in their opposition that the pending eviction proceeding do not create any conflict because "all that Defendants have offered . . . is speculation that at some unknown point in the future, Borum may no longer be a resident of Brookland Manor." Pls.' Opp'n at 8. Plaintiffs essentially argue that there can be no conflict based on the eviction until the conclusion of the pending eviction proceeding. *See id.* (noting that "[t]he status of Ms. Borum's hypothetical future tenancy provides no ground for an order decertifying the class" and that "Defendants' motion is entirely premature").

However, as Defendants argue in their reply, a verdict in the eviction proceedings is not necessary for a conflict to arise between Borum and the class. Plaintiffs are correct that while a clear conflict of interest would arise between Borum and other classmembers after her eviction, such a conflict remains hypothetical until she is actually evicted. However, Defendants point to a separate conflict between Borum and the class, based on how a likely eviction would affect her *current* interests in pursuing this case. If the possibility of eviction alters Borum's interests to the point where they become antagonistic to those of the class, Borum's representation becomes

inadequate regardless of the eventual outcome of the eviction suit. *See Phillips*, 502 F.2d at 366.

For instance, if faced with virtually certain eviction within a year, Borum could be incentivized

to seek a quick end to the case in order to ensure at least some recovery (or preservation of her

tenancy), regardless of the wishes of the class. *Cf. Amchem Prods.*, 521 U.S. at 625–26 (noting

inadequacy of representation when class members with current injuries and need for immediate

payment had interests that conflicted with those of class members with future injuries). As

Defendants point out, Borum has received a notice of eviction and eviction proceedings against

her have already begun. *See* Defs.' Reply at 7–8. Borum's status as a long-term resident of

Brookland Manor is therefore already at risk, creating the possibility of a conflict with other

members of the class. Whether such a conflict sufficiently affects Borum's interests to "go to the

heart of litigation[,]" *Keepseagle*, 102 F. Supp. 3d at 216 (quoting Newberg on Class Actions §

3:58), in part turns on the likelihood of the eviction proceeding being successful. The Court

therefore considers the parties' argument regarding the eviction.

## 2. *Borum's Eviction Is Not Certain*

Much of Defendants' arguments for decertification rely on the assumption that Borum's

eviction from Brookland Manor is inevitable. *See, e.g.*, Defs.' Mem. Supp. at 11 (noting that

Borum "no longer has a personal interest" in the redevelopment of Brookland Manor because she

has an "obligation to vacate the premises"). By contrast, Plaintiffs argue that the eviction notice

against Borum is unlikely to be upheld in court. *See* Pls.' Mem. Opp'n at 10–11. After

reviewing the parties' arguments and D.C. landlord and tenant law, the Court concludes that

while there appears to be a significant risk that Borum will be evicted, the eviction is not as

inevitable as Defendants would have the Court believe.

Defendants argue that the three arrests and one conviction of members of Borum's household are sufficient to evict her because they trigger provisions of Borum's lease that prohibit engaging in certain types of illegal conduct. *See* Defs.' Mem. Supp. at 8–9. Plaintiffs retort that Defendants will "bear the burden of proving that these allegations [of illegal conduct] both occurred and warrant an eviction[,]" when two of the three cases resulting from the arrests were dismissed *nolle prosequi* and the third one involved an incident eight months prior to the notice to vacate and not taking place on Brookland Manor grounds. *See* Pls.' Mem. Opp'n at 10–11. Plaintiffs separately argue that Defendants likely triggered a statutory presumption that the eviction proceedings were initiated in retaliation for Borum participating in the class action. *See id.* at 11 (citing D.C. Code § 42-3505.02(b)). In their reply, Defendants assert that the presumption of retaliation is overcome when, as in this case, the landlord's actions are "'otherwise permitted by law.'" Defs.' Reply at 5 (quoting *Borger Mgmt., Inc. v. Sindram*, 886 A.2d 52, 63 (D.C. 2005)).

On one hand, the criminal conduct allegedly engaged in by Trayvon and Donta Borum provides a strong basis for eviction. As an initial matter, the parties do not dispute that Borum's lease lawfully authorizes eviction when a tenant or member of the tenant's household engages in certain types of criminal activity. Borum's lease prohibits, *inter alia*, "drug related criminal activity engaged in or on or near the premises" and "criminal activity . . . that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents . . . or . . . by persons residing in the immediate vicinity of the premises[,]" Defs.' Mem. Supp. at 5, both provisions that are common in leases under Section 8 of the Fair Housing Act. Plaintiffs similarly do not dispute the conviction or that the two other arrests occurred, and instead argue

that it will be a "significant burden" for Edgewood Management to show that the underlying allegations of criminal conduct warrant eviction.  The Court is unconvinced.

At least two of the three instances of criminality alleged appear well-supported and directly applicable to the anti-criminality provisions of Borum's lease.  First, Trayvon Borum pled guilty to leaving after colliding and unlawfully possessing ammunition on January 2018, following an incident on November 26, 2017 where he crashed his car into a police cruiser and fled the scene.  Plaintiffs argue that the conduct underlying Trayvon Borum's conviction "did not occur on the Brookland Manor property."  Pls.' Opp'n at 11.  But Defendants point out that the car crash occurred at most a block from Brookland Manor grounds. *See* Schapira Decl. ¶ 3, Defs.' Reply Ex. 1, ECF No. 77-1.  Edgewood Management thus has a strong argument that Trayvon Borum engaged in illegal activity that threatens the health, safety, or right to peaceful enjoyment of residents in the immediate vicinity of Brookland Manor.  Second, while the drug-related charges stemming from Trayvon Borum's arrest on Brookland Manor grounds in March 2018 were ultimately dismissed, the police report indicates that the substance found on him tested positive for marijuana.  *See* March 20, 2018 Police Report.  As Defendants point out, a conviction is not required for a court to uphold a notice to vacate based upon criminal activity. *See, e.g.*, *Cook v. Edgewood Mgmt. Corp.*, 825 A.2d 939, 942–44, 950–953 (D.C. 2003) (noting that an eviction action "is not a criminal case where the standard for conviction is extremely high" and affirming eviction of tenant for drug-related criminal activity even absent criminal conviction).  Irrespective of any government decision or policy[4] against pursuing charges for

---

[4] Plaintiffs argue that Edgewood Management will face "a significant burden to meet where criminal prosecutors have already deemed the allegations insufficient to support prosecution."  Pls.' Mem. Opp'n at 10–11.  But as Plaintiffs are undoubtedly aware, a *nolle prosequi* dismissal is not a determination on the merits, nor does it suggest that there is insufficient evidence to support a prosecution.  A *nolle prosequi* is generally understood as "a

simple marijuana possession, the police report credibly supports the allegation that Trayvon Borum engaged in drug-related activity on Brookland Manor grounds, in further violation of Borum's lease. Of course, Edgewood Management will have to prove its case in court and may not prevail, but the documents Defendants provide in support of their motion provide strong support for Edgewood Management's arguments at least as to these two alleged instances of criminal conduct.

On the other hand, the Court also finds some merit in Plaintiffs' contention that the eviction could be barred as retaliatory. Under D.C. law, there is a presumption of retaliation when a housing provider takes action against a tenant less than six months after, *inter alia*, the tenant either "[m]ade an effort to secure or enforce any of the tenant's rights under the tenant's lease or contract with the housing provider[,]" or "[b]rought legal action against the housing provider." D.C. Code § 42-3505.02(b)(5), (6). Plaintiffs argue that Defendants' institution of eviction proceedings against Borum, the class representative in this case, triggers the presumption of retaliation. *See* Pls.' Mem. Opp'n at 11. Defendants retort that under D.C. law, "the presumption of retaliation is overcome where a landlord takes an action 'otherwise permitted by law[,]'" Defs.' Reply at 5 (quoting *Borger Mgmt, Inc. v. Sindram*, 886 A.2d 52, 63 (D.C. 2005)), and as a result that any presumption "is rebutted in circumstances such as those presented here" when the eviction is "irrefutably permitted by law[,]" *id.* at 4. Defendants are

---

formal entry of record by the prosecuting attorney by which he or she declares that he or she is unwilling to prosecute the case." 21 Am. Jur. 2d Crim. Law § 685 (citations omitted). This decision can be motivated by any of a number of reasons, and, as in this case, those reasons are typically not elaborated on by the prosecutor at the time of dismissal. And given the policy considerations at play in the prosecution of low-level federal marijuana possession offenses in Washington, D.C.—when possession of small amounts of marijuana is not illegal under D.C. law, *see* D.C. Code § 48-904.01—the Court is unconvinced by the argument that the *nolle prosequi* dismissal represents a prosecutorial determination that the possession allegations were insufficient to support prosecution.

incorrect because what matters is the landlord's purpose in initiating eviction proceedings, rather than whether the stated rationale for initiating eviction is lawful.

In *Borger Mgmt.*, the D.C. Court of Appeals evaluated the preclusive effect of an administrative judge's decision that, *inter alia*, had dismissed a tenant's retaliation claim against his landlord. *See* 886 A.2d at 59. The court explained that the administrative judge had appropriately determined the presumption of retaliation to be defeated when the landlord had taken an action "otherwise permitted by law[,]" as required under the D.C. Code. *Id.* at 61 (citing D.C. Code § 42-3505.02(b)). However, the court did not find that simply pointing to a permissible reason for the alleged retaliatory act was sufficient to show that it was "otherwise permitted by law." In fact, the Court of Appeals specifically rejected that argument in another retaliatory eviction case, noting that "once the tenant is eligible for the benefit of the statutory presumption, the landlord bears the burden of proving a non-retaliatory *purpose* behind the eviction." *Youssef v. United Mgmt. Co.*, 683 A.2d 152, 155 (D.C. 1996) (emphasis added). In reversing the lower court's eviction order, the Court of Appeals noted in *Youssef* that "while it may be that [the landlord] had a basis in the lease to evict the tenants," the tenants would benefit from the presumption of retaliation until the landlord provided "clear and convincing evidence" that the eviction was not motivated by a retaliatory purpose. *Id.*

Here, the parties dispute Edgewood Management's ulterior motives in their briefs and supporting documents. Defendants point to a declaration by the Senior Community Manager of Brookland Manor, who, *inter alia*, states both that she was not aware of the January 2018 conviction and March 2018 arrest until July 2018, and that it is common practice for Edgewood Management to issue a notice of eviction to tenants who engage in criminal activity. *See* Young Decl. ¶¶ 3–4, 6, Defs.' Sealed Mot. for Leave to File Doc. Under Seal, ECF No. 71-1. Plaintiffs

challenge the timeline for issuance of the notice of eviction in their opposition, *see* Pls.' Mem. Opp'n at 11, and the Court fully expects that Borum will similarly challenge Edgewood Management's version of events in the eviction proceedings. At this stage, the Court can only gather, assuming the presumption of retaliation applies,[5] that the defense is not frivolous.

Ultimately, while there appear to be valid grounds for Borum's eviction, Edgewood Management will have to contend both with the evidentiary burden to prove the alleged criminal acts underlying Trayvon and Donta Borum's arrests and conviction, and more importantly with a potential retaliatory eviction defense that would require it to show, by clear and convincing evidence, that it initiated the eviction action with a legitimate purpose. The outcome of the eviction proceedings is thus less than certain.

### 3. *Borum's Current Interests Render her an Inadequate Class Representative*

Finally, having reviewed the parties' arguments regarding the likelihood of Borum's eviction, the Court examines whether the risk of eviction sufficiently alters Borum's interests to cause a fundamental conflict with other class members. While this is a close question, and the conflict asserted in this case is quite different from the types of conflicts usually at issue in sustained adequacy challenges, the Court nonetheless finds that the risk of eviction renders Borum inadequate as a class representative. The Court first reviews the argument that the eviction proceedings have shifted Borum's recovery incentives in this litigation, before examining Defendants' argument that the unique eviction defense Borum is subject to renders her an inadequate representative.

---

[5] Defendants do not argue that the presumption should not apply, so the Court does not address the issue.

First, Defendants argue that the likelihood of future eviction incentivizes Borum to seek relief that would maximize her own interests rather than the interests of the class, *see* Defs.' Mem. Supp. at 12–14; Defs' Reply at 9–10. Setting aside the fact that Defendants' arguments are premised on the incorrect assumption that Borum's eviction is essentially certain, as discussed above, [6] the Court finds the argument unpersuasive. As Defendants note, courts have recognized that a proposed class representative is inadequate when the proposed representative is incentivized to seek a different type of relief from other class members. *See* Defs.' Mem. Supp. at 12–13; *AmChem Prods.*, 521 U.S. at 626; *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 187–89 (3d Cir. 2012); *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa. 2015); *In re Navy Chaplaincy*, 306 F.R.D. 33, 54–55 (D.D.C. 2014). However, the conflicts at issue in those cases arose in circumstances distinct from those at issue here.

Conflicts based on recovery incentives typically pit plaintiffs with an immediate injury and an interest in seeking immediate relief against other plaintiffs with an interest in delayed compensation. *See, e.g.*, *AmChem Prods.*, 521 U.S. at 626. In *AmChem Prods.*, the Supreme Court upheld the decertification of a class of plaintiffs injured by asbestos exposure because the named plaintiffs were presently injured but some of the class members, while at risk of

---

[6] In both their motion and reply, Defendants make a number of conclusory assertions regarding Borum's allegedly changed interests. Defendants posit that Borum "will not be living with the consequences of [her] decisions" and thus "does not have the same interests at stake as someone who will be living in the redeveloped property." Defs.' Mem. Supp. at 11. They contend that, as a "non-tenant," Borum "simply does not share the same interests as the rest of the class." Defs.' Reply at 6–7. And they conclude that Borum therefore has changed incentives in terms of the ultimate outcome she seeks in the litigation—"[a]t the very most, . . . she will be a detached bystander pressing a policy goal regarding how Brookland Manor should be redeveloped." Defs.' Mem. Supp. at 13. But as discussed above, at least based on the parties' arguments and on the record here, Borum's eviction is *not* "only a question of time[.]" *Id.* at 12.

developing future injuries, were not presently injured. *See id.* at 626–28. The Court explained

that the interests of presently injured plaintiffs in obtaining immediate payments fundamentally

conflicted with the interests of those plaintiffs at risk of future injury, who would benefit from

the availability of "an ample, inflation-protected fund for the future." *Id.* at 626. In *Dewey*, the

Third Circuit similarly rejected a proposed class of injured plaintiffs who would have recovered

from a single, shared fund, when two groups of plaintiffs within the class received different

benefits and one group had priority access to the fund. *See* 681 F.3d at 187. In *In re Nat'l*

*Football League*, a proposed class of retired NFL players alleging concussion-related injuries

was composed of both currently injured individuals and individuals at risk of future injury. *See*

307 F.R.D. at 376. To avoid a conflict between the two groups, the class was divided into two

subclasses, each with its own representative and counsel. *See id.* And in *Navy Chaplaincy*, the

named plaintiffs were deemed inadequate in part because their strategy to seek "wide-ranging

institutional reform" through declaratory and injunctive relief significantly lengthened the case,

and in doing so "repeatedly subordinated the proposed class members' interests in prompt

adjudication[.]" 306 F.R.D. at 54. By contrast, in this case there is no separation within the class

as to relief sought.

Nonetheless, Defendants posit that "the central premise of *Amchem* remains relevant

here: plaintiffs with divergent interests on the critical goals of the litigation are inadequate."

Defs.' Reply at 9. Defendants argue that because she is at risk of eviction and "will not have to

live with the consequences of any policy decisions resulting from this matter[,]" Borum "now

has incentives to maximize her own interests at the expense of the class." Defs.' Mem. Supp. at

13. Defendants appear to believe this incentive would push Borum, as a "detached bystander[,]"

to seek her policy goals at all costs, regardless of class interests. *See id.* While Defendants offer

only vague assertions regarding the conflict between Borum's policy objectives and the objectives of the class, the Court can deduce how Defendants believe such a conflict could arise: as in *Navy Chaplaincy*, where class representatives inadequately focused on their policy objectives to the detriment of the potentially viable monetary claims of other class members, *see* 306 F.R.D. at 54, Borum could focus all her efforts on obtaining declaratory and injunctive relief at the expense of compensatory damages, which she is less likely to receive than other residents. But the Court is not persuaded that this potential conflict currently rises above the "speculative or hypothetical," *Garza*, 304 F. Supp. 3d at 158, especially given that Defendants provide no new evidence[7] to suggest that class members might seek a different form of relief from Borum.

Conversely, the Court sees another potential conflict regarding Borum's recovery incentives. The courts in *Amchem Prods.*, *Dewey*, and *In re Nat'l Football League* dealt with differences in incentives as to the timing of recovery amongst class members. While not directly comparable, here the pending eviction proceedings against Borum create a similar time constraint with respect to her recovery: while she may ultimately defeat the eviction, there is a non-negligible chance that she will no longer be a part of the class within a relatively short time frame. Because of the risk of eviction, Borum is thus incentivized to obtain relief in this litigation as soon as possible, in order to ensure at least some recovery. This incentive could alter her position in any settlement negotiations with Defendants, and push her to seek a resolution that guarantees at least some recovery for her, at the expense of a better resolution in the future for the class. But as with the policy objectives-based conflict above, the Court is not

---

[7] Defendants briefly reassert the argument made at the certification stage that there is "substantial evidence that many residents . . . disagree with the objectives of this litigation[.]" Defs.' Mem. Supp. at 14. But as discussed in the Court's opinion certifying the class, the "evidence" put forward by Defendants does not support that conclusion. *See Borum*, 324 F.R.D. at 17.

entirely convinced that this potential conflict, alone, is sufficiently tangible to prevent Borum from adequately representing the class. Unlike in cases involving different types of injury, where there is a clear demarcation between plaintiffs with current injuries and plaintiffs with a future risk of injury, here it is unclear whether the eviction will ultimately succeed, and therefore just how much the time constraint posed by the eviction proceeding truly affects Borum's incentives. Because it finds Defendants' second argument regarding Borum's changed incentives persuasive, the Court does not discuss the issue further.

Defendants next argue in their reply that because Borum is now the subject of a pending eviction action, she is the subject of a unique defense that warrants her disqualification as a class representative. *See* Defs.' Reply at 6, 9–10. Defendants argue 1) that the pending eviction could incentivize Borum to focus the proceedings in this Court away from issues common to the class and towards her individual eviction defense, *id.* at 9, and 2) that defending against the eviction more generally changes Borum's "'incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim[,]'" *id.* at 6 (quoting *In re Schering Plough Corp. Litig.*, 509 F.3d 585, 602 (3d Cir. 2009)).

First, Defendants explain that "[w]here 'unique defenses could conceivably become the focus of the entire litigation and divert much of [the class representative's] attention from the suit as a whole, the remaining members of the class could be severely disadvantaged.'" *Id.* at 9 (citing *Zenith Labs, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976)). Defendants conclude that Borum's "unique interest in defending against eviction could conceivably become her sole focus in this litigation," thus rendering her an atypical plaintiff and an inadequate representative. *Id.*

The Court is unconvinced that the potential eviction incentivizes Borum to change her strategy in this litigation. Defendants are correct that courts typically reject as inadequate proposed class representatives who are the subject of unique defenses because the proposed representatives would have to direct at least some of their litigation efforts to defeating those defenses, disadvantaging the members of the class not subject to them. *See, e.g.*, *Zenith Labs*, 530 F.2d at 512; *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164–65 (7th Cir. 1974); *Fleck v. Cablevision VII, Inc.*, 763 F. Supp. 622, 626–27 (D.D.C. 1991); *Weber v. Turner*, 92 F.R.D. 749, 751 (D.D.C. 1981). However, these cases typically involve circumstances where the proposed class representative faces unique defenses directly linked to the claims asserted in the class action, rather than the circumstances here where Borum is faced with separate legal proceedings that could operate to deny recovery, in a sort of indirect defense to the claims in the class action. In *Zenith Labs*, the proposed representative was subject to a *res judicata* defense on the claims he purported to represent the class on. *See Zenith Labs*, 530 F.2d at 512. Similarly in *Weber*, the proposed class representative in an employment discrimination case had a "highly unusual" employment history and the defendant disputed her status as a "professional employee[,]" when she purported to represent a class of women professional employees at the CIA. *See Weber*, 92 F.R.D. at 751. The district court explained that "an individual plaintiff should not be allowed to represent a class where the litigation will concentrate on issues unique to the named plaintiff." *Id.* (citing *Koos*, 496 F.2d 1162). As the Seventh Circuit explained in *Koos*, the rationale behind denying certification in these cases is that by certifying a class with a plaintiff subject to unique defenses, "much of the [plaintiff's] effort would . . . necessarily be[] devoted to [its] own problems[,] . . . [which] may well . . . result[] in less attention to the issue which would be controlling for the rest of the class." 496 F.2d at 1165.

But here, Borum is not subject to unique defenses that could become the focus of this litigation. She brings FHA and DCHRA claims similar to those of other class members, and Defendants do not argue that any defense applies on her claims that does not apply to other class members' claims. Rather, she is separately sued in an eviction action in D.C. Superior Court that may ultimately operate to preclude recovery in this case. This eviction "defense" will be litigated in a separate proceeding, where Borum is represented by separate counsel. *See* Docket, *United States v. Borum*, 2018 LTB 20834 (D.C. Sup. Ct.) (noting Borum's representation by attorneys from Neighborhood Legal Services). There is therefore no risk that defending against eviction could become Borum's "sole focus in this litigation[.]" Defs.' Reply at 9.

On the other hand, a second, closely-related argument alluded to by Defendants bears closer scrutiny. Defendants point to *In re Schering*, where the Third Circuit explained that a plaintiff potentially barred from recovery through a unique defense "may have different incentives in terms of how much time, energy, and money she is willing to spend pursuing the claim." 589 F.3d at 602; *see also Mwantembe v. T.D. Bank, N.A.*, 268 F.R.D. 548, 559 (E.D. Pa. 2010) (similarly noting that "if the named class members are subject to unique defenses, they may have little, if any, incentive to spend the time, energy and money pursuing the claim"); *In re Bell S. Corp. ERISA Litig.*, No. 1:02-CV-2440-JOF, 2005 WL 8154294, at *9 (N.D. Ga. Sept. 30, 2005) (finding that named plaintiffs subject to unique defenses "cannot bring claims on behalf of the class with the same vigor and interest as someone [not subject to a unique defense]").

The Court finds the reasoning of *In re Schering* applicable here. Unlike in most situations involving unique defenses, the potential eviction affecting Borum will have little impact on the issues litigated in this case. But the eviction action is still likely to significantly

occupy Borum's time and energy, diverting at least some resources away from this litigation. And more importantly, the central rationale behind the argument recognized in *In re Schering* and *In re Bell S. Corp.* is that the potentially valid unique defenses a named class plaintiff is subject to incentivizes that plaintiff against pursuing her claims as vigorously as she could, given the obstacles to recovery. Here, Borum is facing the potential loss of her home, so the eviction action is likely to be a significant focus of her attention as it unfolds. And an eviction would exclude her from the class and bar recovery entirely. As in *Mwantembe*, she currently has "little . . .incentive to spend . . . time, energy and money pursuing th[is] claim[,]" 268 F.R.D. at 559, when more pressing legal proceedings with significant consequences, including barring her recovery in this action, are ongoing in parallel. At the very least, Borum "cannot bring claims on behalf of the class with the same vigor and interest" as a Brookland Manor resident who is not currently facing eviction. *In re Bell*, 2005 WL 8154294, at *9. Moreover, given the litigation leverage Defendants hold over her that is unique to her but not other class members, Borum could be incentivized to seek a settlement that preserves her tenancy at the expense of the other class members' interests. She is accordingly not an adequate class representative.

### B. Decertification Is Not an Appropriate Remedy

The Court next considers whether Borum's inadequacy as a class representative warrants decertification. Defendants contend that decertification "is the appropriate step" because "it is unlikely that a substitute will be found." Defs.' Mem. Supp. at 14. Plaintiffs reply that class decertification is not an appropriate remedy when, as here, the class representative is found to be inadequate after certification but no additional circumstances warranting decertification exist. *See* Pls.' Mem. Opp'n at 5–6. The Court agrees.

The Supreme Court has explained that upon certification of a class, "the class of unnamed persons described in the certification acquire[s] a legal status separate from the interest asserted by [the representative]." *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). While this Circuit has not authoritatively spoken on the issue, multiple circuit courts have correspondingly held that, following disqualification of a class representative, the next step is to provide for substitution rather than decertification. *See, e.g.*, *Walters v. Edgar*, 163 F.3d 430, 432 (7th Cir. 1998) (noting that "the proper course" when an event occurring after certification disqualifies the named plaintiff is substitution); *Carpenter v. Stephen F. Austin State Univ.*, 706 F.2d 608, 617–18 (5th Cir. 1983) (explaining that when a class representative is disqualified as inadequate, "the appropriate step is appointment of new representatives from the existing class, not decertification"); *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982) (noting that a district court "need not decertify whenever it later appears that the named plaintiffs were . . . inappropriate class representatives").

Here, Defendants make several arguments for going beyond substitution and for decertifying the class. None are persuasive. First, Defendants argue that inadequacy of a class representative "regularly results in decertification." Defs.' Reply at 10. But the cases Defendants cite in support of this proposition are easily distinguishable as involving circumstances very different from the inadequacy issue in this case. *See Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 630–31 (3d Cir. 1996) (providing for decertification based on fundamental conflict of interest between two subgroups of class members rather than between a single class representative and rest of the class); *Key v. Gillette Co.*, 782 F.2d 5, 7 (1st Cir. 1986) (providing for decertification because of inadequate representation by class counsel rather than

by class representative).[8]  Second, Defendants argue that, given the "substantial evidence that many residents . . . disagree with the objectives of this litigation . . . [,] it is unlikely that a substitute will be found."  Defs.' Mem. Supp. at 14.  Because Defendants offer no evidence beyond that presented in their opposition to the motion for certification, and rejected by the Court in its opinion granting the motion, *see Borum*, 324 F.R.D. at 17, the Court agrees that this is "nothing more than a thinly-veiled attempt to revisit this Court's prior certification decision[.]"  Pls.' Mem. Opp'n. at 6.  Finally, Defendants argue that "[c]lasses are decertified where class counsel has made no effort to find a replacement representative."  Defs.' Reply at 10.  But of course here, the Court is only just now finding that the current class representative is inadequate, so Plaintiffs have not yet had the opportunity to seek a replacement.  Defendants' argument is premature, and the Court rejects it as well.  Instead, the Court will provide a reasonable period of time for Plaintiffs to seek a replacement representative.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Decertify the Class is **DENIED**.  Plaintiffs shall have thirty (30) days to find a replacement representative for Adriann Borum, who the Court finds is not an adequate representative for the class.  Defendants' Motion to Stay Discovery is **DENIED** as moot.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  January 7, 2019                                    RUDOLPH CONTRERAS
                                                            United States District Judge

---

[8] Defendants also cite to *Mayfield v. Meese*, 704 F. Supp. 254, 258 (D.D.C. 1988).  But the section of the opinion Defendants point to involves the District Court's decision not to expand a class rather than to decertify the class.  *See id.*  The opinion is inapposite to the argument Defendants make here.