# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ADRIANN BORUM, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1723 (RC) |
| | : | | |
| v. | : | Re Documents Nos.: | 117, 123, 128 |
| | : | | |
| BRENTWOOD VILLAGE, LLC, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO SUBSTITUTE CLASS REPRESENTATIVE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' CROSS-MOTION TO DECERTIFY CLASS; GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE UNDER SEAL**

## I. INTRODUCTION

In the latest development in this contentious class action, Plaintiffs move to substitute the current class representative, which the Court earlier found inadequate, while Defendants challenge the proposed substitute representative and cross-move for decertification. The Court ultimately agrees with both parties in part, finding that the proposed substitute representative brings claims typical of the class on only some of Plaintiffs' claims. The Court accordingly grants in part and denies in part both motions.

The Court originally certified a class of plaintiffs bringing claims for violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, and D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2-1401 to 2-1404, in February 2018. Plaintiffs, residents of the Brookland Manor apartment complex and community organization One D.C., alleged that the planned redevelopment of the complex by Defendants would have a disparate impact on residents based on their familial status. Plaintiffs also alleged that some of Defendants' statements made in connection with the redevelopment were discriminatory statements under the FHA and DCHRA.

After Defendants moved to decertify the class, the Court found the current class representative inadequate in January 2019 and gave Plaintiffs 30 days to find a suitable substitute. Plaintiffs have now moved to substitute Ms. Marita Moore ("Moore") as representative of the class. Defendants argue—quite forcefully—that the class should be decertified because Moore is not a member of the class, does not bring claims that are typical of the class, and is an inadequate class representative.

The Court finds merit to some of Defendants' arguments, but not enough to warrant denying Moore's substitution as class representative on all claims. It finds that Moore brings typical claims and is an adequate class representative with respect to Plaintiffs' claims of disparate impact discrimination. However, it concludes that Moore does not bring discriminatory statements claims that are typical of the class. Exercising its discretion in structuring the class to best serve the efficient administration of this case, the Court decertifies the class as to the discriminatory statements claims but otherwise grants the motion to substitute.

## II. BACKGROUND

### A. Procedural History

The Court has already set out the facts underlying Plaintiffs' class claims in detail in its prior opinions. *See Borum v. Brentwood Vill., LLC* ("*Borum I*"), 218 F. Supp. 3d 1, 5–8 (D.D.C. 2016); *Borum v. Brentwood Vill., LLC* ("*Borum II*"), 324 F.R.D. 1, 6–7 (D.D.C. 2018); *Borum v. Brentwood Vill., LLC* ("*Borum III*"), 329 F.R.D. 90, 91–93 (D.D.C. 2019). It assumes familiarity with those prior opinions and only briefly summarizes the procedural history leading to the present motions.

Original plaintiffs Adriann Borum, Loretta Holloman, and One D.C. filed this case on August 25, 2016, bringing claims against defendants Brentwood Village, LLC, Mid-City

Financial Corporation, and Edgewood Management Corporation, for disparate impact discrimination and discriminatory statements in violation of the FHA and DCHRA. Compl., ECF No. 2. They alleged that the defendants' proposed redevelopment plan for the Brookland Manor apartment complex, which would reduce the number of three-bedroom apartments and fully eliminate four- and five-bedroom apartments from the redesigned property, would have a disparate impact on families based on their familial status, in violation of the FHA and DCHRA. *Id.* ¶¶ 140–62. And they alleged that the defendants had further violated the FHA and DCHRA by making statements that discriminated against families in connection with the proposed redevelopment. *Id.* ¶¶ 163–78.

After the parties stipulated to the dismissal of the claims against Brentwood Village, LLC, *see* Stipulation of Dismissal, ECF No. 12, and Holloman voluntarily dismissed her claims on November 27, 2017, *see* Order Granting Unopposed Mot. for Voluntary Dismissal, ECF No. 56, the Court certified a class of Brookland Manor plaintiffs on February 12, 2018, *see Borum II*, 324 F.R.D. at 20. The Court certified the class of:

> All individuals who reside at Brookland Manor in a three-, four-, or five-bedroom unit that houses one or more minor child and his or her guardian, and are at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor as a direct result of the proposed redevelopment.

*Id.* In doing so, the Court rejected Defendants' argument that a class that included individuals who do not qualify for familial status under the FHA or DCHRA—here, individuals living in the same unit as minor children but who were not themselves parents or guardians of minor children—was overbroad. *See id.* at 12–13. The Court specifically found that such individuals "ha[d] standing to sue under the FHA," stood to "suffer the same injury-in-fact as the parents and minors contained within the class—displacement due to the Defendants' redevelopment plan," and sought the same relief, "an injunction ordering Defendants to alter

their redevelopment plan." *Id.* at 13. The Court also rejected Defendants' argument that Borum was an inappropriate representative for the class. While Defendants argued that Borum's claims were not typical of the class because, *inter alia*, she "ha[d] 'non-protected individuals' (her adult children) living with her," *id.* at 16, the Court explained that the defenses Defendants claimed applied to Borum also applied to other class members, *id.* at 17. And the Court disagreed that a purported dispute amongst putative class members regarding whether the development should go forward created an unsurmountable conflict of interest for Borum. *See id.* at 17–19.

On August 10, 2018, Defendants moved to decertify the class. *See* Defs.' Mem. Supp. First Mot. Decertify Class, ECF No. 72; *Borum III*, 329 F.R.D. at 92. Defendants argued that Borum no longer adequately represented the interests of the class because she had been issued a notice to vacate and would soon be facing eviction. *See Borum III*, 329 F.R.D. at 92–93. And Defendants contended that "decertification '[was] the appropriate step' because 'it [was] unlikely that a substitute w[ould] be found,'" *id.* at 100 (quoting Defs.' Mem. Supp. First Mot. Decertify 14), re-iterating their argument that there was "substantial evidence that many residents . . . disagree[d] with the objectives of th[e] litigation," *id.* at 101 (quoting Defs.' Mem. Supp. First Mot. Decertify 14). On January 7, 2019, the Court denied the motion. *See Borum III*, 329 F.R.D. at 101. While the Court agreed that Borum's situation created a conflict that rendered her an inadequate class representative, it found no reason to decertify the class before giving Plaintiffs the opportunity to substitute another representative. *Id.* at 100–01. The Court again rejected Defendants' argument that there was a conflict amongst the class, noting that they offered no evidence beyond that already rejected in *Borum II*. *Id.* at 101.

**B.  The Proposed Substitute Representative**

Plaintiffs filed their motion to substitute Moore as class representative on February 6, 2019.  *See* Pls.' Mot. Substitute, ECF No. 117.  In a declaration attached to the motion, Moore represents that she has been a resident of Brookland Manor since 1974.  *See* Decl. of Marita Moore ¶ 1, Pls.' Mot. Substitute Ex. A., ECF No. 117-3.  She currently shares a five-bedroom apartment with her two sisters, Evelyn Moore and Melinda Moore; Rajon Edwards, Evelyn Moore's nine-year old grandson; and Chyler Smith, Evelyn Moore's twelve-year old granddaughter.  *Id.* ¶ 2.  Moore also represents in the declaration that her niece Denver Moore, who is nineteen, lived in the apartment until the fall of 2017, continues to live in the apartment during breaks in the school year, and "will return to full-time residence in the apartment" after graduating from college.  *Id.* ¶ 3.

Moore indicates in the declaration that she "know[s] that Mid-City Financial intends to redevelop Brookland Manor Apartments," which will involve tearing down the existing apartments.  *Id.* ¶ 4.  While she acknowledges that Defendants have "told [her] and other tenants that current residents in 'good standing' will be able to live in the new property," *id.* ¶ 5, she also indicates that she has been informed "that there will be no four- or five-bedroom apartments at the redeveloped property," *id.* ¶ 6.  Moore also explains in the declaration why, given her family's current situation, she will not be able to remain a resident of Brookland Manor should the redevelopment proceed as currently planned.  *See id.* ¶¶ 9–12.  She concludes by stating that she "ha[s] become familiar with this case, including the facts that relate to the impact the redevelopment will have on families," and that she has "attended numerous community meetings related to the redevelopment" over the years.  *Id.* ¶ 15.

Moore was deposed on February 22, 2019. *See* Moore Dep., Decl. of John Byron Ex. E, ECF No. 124-5. During her deposition, Moore made a number of statements that potentially or directly contradicted some of the statements she made in her declaration. She acknowledged that she was not sure she had continuously lived at Brookland Manor for the past thirty years. *Id.* at 126:5–128:12. Whereas she had indicated in her declaration that Rajon Edwards was Evelyn Moore's adopted grandson, *see* Moore Decl. ¶ 2, she noted in the deposition that Evelyn Moore only had legal custody of Rajon Edwards. *Id.* at 22:1–12. And she explained that Denver Moore never actually stayed the night in the apartment, and did not appear to have plans to come back to live there after college. *See* Moore Dep. 36:5–19.

Moore provided somewhat confusing statements on a range of other topics at the deposition. While she stated that she had agreed to become class representative "to help those out that need[] four and five bedroom[s] . . . like [her]self," *id.* at 114:17–21, Moore was unsure about the next steps in the litigation, the exact nature of the claims brought, and the size of the class. *E.g. id.* at 115:1–116:15. She initially indicated that she was not worried her family would be displaced as a result of the redevelopment, *see id.* at 81:13–82:1, although she later noted "[i]f I sit up and worry about not having a place to go . . . I will be in worse condition than I am now," *id.* at 140:17–23. She also indicated that she did not remember any defendant "saying that families would not be welcomed at the redeveloped [property]," or "ever sa[ying] anything to [her] that ha[d] caused [her] harm." *Id.* at 89:23 – 90:10. And, although she recalled receiving Defendants' interrogatories, *see id.* at 137:3–6, she did not remember preparing her answers or signing them, *e.g. id.* at 100:5–7; 137:8–10. After Defendants followed up by asking how frequently Moore had met with her attorneys since signing on as class representative a month earlier, she was unable to remember a specific number of times. *See id.* at 119:25–120:3

(four meetings altogether); *id.* at 138:16–139:19 (up to six meetings); *id.* at 156:3–20 (up to six phone conversations in addition to in-person meetings); *id.* at 157:12–16 (potential additional in-person meetings "for other little things, but I can't recall what it was").

### III. LEGAL STANDARD

"After a class is initially certified, Rule 23 expressly grants courts the discretion to revisit the propriety of continued class certification in later stages of litigation." *DL v. District of Columbia*, 312 F.R.D. 1, 6 (D.D.C. 2015) (citing Fed. R. Civ. P. 23(c)(1)(C)). "[A] district court's order . . . granting class status is inherently tentative," *Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 226 (D.C. Cir. 1981) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 n.11 (1978)), and the D.C. Circuit has emphasized that "class certification problems are constantly subject to reconsideration as the facts develop," *id.* "As the proponent of continued class certification, Plaintiffs [retain] the burden of establishing that [all] of the requirements for class certification . . . are met." *Lightfoot v. District of Columbia,* 246 F.R.D. 326, 332 (D.D.C. 2007) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).

### IV. ANALYSIS

After this Court determined that Borum was an inadequate representative for the class of Brookland Manor residents, Plaintiffs now move to substitute Moore as class representative. Repeating much of the same arguments they made in their opposition to class certification, Defendants oppose the substitution and renew their motion to decertify the class. Before addressing these arguments, the Court must note that, as Plaintiffs point out in their opposition, Defendants' arguments appear aimed more at the merits of this case than at class certification issues. And Defendants' aggressive characterization of this case as a class action run amok, led by class counsel unmoored from the interests of a class that actively desires the redevelopment,

has little basis in the record before the Court and distracts from Defendants' meritorious arguments.

With that being said, the Court addresses in turn Defendants' three arguments for rejecting Moore's substitution as class representative: first, that Moore is not a member of the class; second, that she does not bring claims that are typical of the class; and third, that she is not an adequate representative. The Court briefly reviews Defendants' first argument and concludes that Moore is a member of the class. Next, the Court finds that while Moore brings typical disparate impact discrimination claims, she does not bring typical discriminatory statements claims. Third, the Court finds that Moore is an adequate representative for the class on the disparate impact discrimination claims. And finally, the Court evaluates whether Moore's atypicality on the discriminatory statements claims warrants the decertification of the class on all claims. The Court concludes that it does not, and it accordingly grants both motions in part, decertifying the class as to the discriminatory statements claims but granting the motion for Moore's substitution as class representative on the disparate impact discrimination claims.

## A.  Moore Is a Member of the Class

First, the Court briefly addresses, and rejects, Defendants' argument that Moore is not a member of the class. Defendants contend that Moore is not a member of the class because she is not at risk of displacement from Brookland Manor as a result of the redevelopment. *See* Defs.' Mem. Supp. Second Mot. Decertify ("Defs.' Mem. Supp.") 19–21, ECF No. 123-1. The Court finds that argument meritless.

It is axiomatic that the class representative in a class action must be a member of the class. Here, the Court certified a class of residents who are "at risk of being displaced . . . as a direct result of the proposed redevelopment." *Borum II*, 324 F.R.D. at 20. Defendants contend

that Moore is not a member of the class because she admitted in her deposition that she was not worried about being displaced from, or did not think she was at risk of being displaced from, Brookland Manor as a result of the redevelopment.  Defs.' Mem. Supp. at 19–20 (quoting Moore Dep. at 81:6–82:13).  They further assert that because Moore knows Defendants have committed to "accommodate all current families in good standing" in appropriately sized housing, and she has no reason to doubt that commitment, any decision to leave Brookland Manor will be of Moore's own making rather than a direct result of the redevelopment.  *Id.* at 19–21.

This type of "gotcha" argument based on selected excerpts from Moore's deposition— which Defendants make repeatedly throughout their motion—is not very persuasive when the Court has access to the full transcript of the deposition.  As Plaintiffs point out, Moore later indicated in the deposition that she said she was not worried because "[i]f I sit up and worry about not having a place to go . . . I will be in worse condition than I am now."  Pls.' Mem. Opp'n Second Mot. Decertify 10, ECF No. 127 (quoting Moore Dep. at 140:21–23).  And she also explained in the deposition that she understood the "appropriately sized housing" promised by Defendants to mean four- or five-bedroom apartments when applied to her particular living situation.  Moore Dep. at 141:24–142:8.  She re-iterated at her deposition that she would not be able to stay at Brookland Manor if the redeveloped property does not have four- or five-bedroom apartments.  *Id.* at 142:16–19.  Defendants dispute the reasonableness of her asserted need for a five-bedroom apartment, *see, e.g.*, Defs.' Reply 10–11, ECF No. 130, and they may well be right, but this does not change the fact that Moore is "at risk of being displaced from a three-, four-, or five-bedroom unit at Brookland Manor," *Borum II*, 324 F.R.D. at 20, if the redevelopment does not include four- or five- bedroom apartments.  The Court therefore finds that Moore is a member of the class.

**B. Only Moore's Disparate Impact Discrimination Claims Are Typical of the Class**

Next, Defendants argue that Moore does not bring claims that are typical of the class either on her disparate impact discrimination claims or on her discriminatory statements claims. *See* Defs.' Mem. Supp. 21–30. Under Rule 23(a)(3), Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *Borum II*, 324 F.R.D. at 16 (quoting Fed. R. Civ. P. 23(a)(3)). The typicality requirement allows courts to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." *Id.* (quoting 7A Charles Wright & Arthur Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2017)). Here, Defendants contend that Moore does not bring typical disparate impact discrimination claims because she does not have protected familial status under the FHA and has a unique living situation triggering unique defenses. *See* Defs.' Mem. Supp. 21–28. And Defendants argue that Moore does not bring typical discriminatory statements claims because she lacks standing, and again because she lacks protected familial status under the FHA. *See id.* at 28–30. The Court addresses each argument in turn, and concludes that only Moore's disparate impact discrimination claims are typical of the class.

*1. Moore Brings Typical Disparate Impact Discrimination Claims*

The Court first reviews Defendants' typicality arguments with respect to Moore's disparate impact discrimination claims. Defendants argue that Moore does not bring typical claims because she "lacks the 'familial status' that is protected against discrimination by the [FHA] and [DCHRA]," and will accordingly need to make an additional, "special showing" that she was aggrieved by Defendants' actions, a showing that protected individuals would not have

to make in order to bring the claims. *Id.* at 22–23. Defendants also posit that Moore is subject to unique defenses because "[t]here are [a] number of features of Ms. Moore's particular living circumstances that place her at the very edge of persons potentially affected even by Plaintiffs' theory of the redevelopment." *Id.* at 25. Both arguments essentially repeat points Defendants have already made earlier in this litigation. *See Borum II*, 324 F.R.D. at 12–13 (discussing "aggrieved person" requirement); *id.* at 15–16 (discussing purported unique defenses applicable to Borum). Neither is any more persuasive now.

First, Moore's lack of protected familial status under the FHA and DCHRA does not affect the typicality of her disparate impact discrimination claims. Under both the FHA and DCHRA, any aggrieved person may bring a suit challenging perceived discrimination covered by the respective acts. *See* 42 U.S.C. § 3613; D.C. Code § 2–1403.16. Defendants recognize that, in certifying the class, the Court thus found that non-parental adults living in the same apartment as minor children had standing to bring the same claims as other members of the class. *See* Defs.' Mem. Supp. 22 (citing *Borum II*, 324 F.R.D. at 12–13). But they argue that the Court only addressed such plaintiffs' standing to sue, which "is entirely different than appointing such persons *as a class representative* to prosecute the claims of persons the statute directly protects from discrimination." *Id.* at 22–23. "After all," Defendants contend, "asserting the rights of third parties against discrimination requires a special showing," *id.* at 23, and the need for Moore to make that showing renders her claims atypical of the class.

Defendants are incorrect. The "aggrieved person" requirement of 42 U.S.C. § 3613 merely "extend[s] broad standing principles to those seeking redress under the FHA." *Borum II*, 324 F.R.D. at 12 (quoting *Gorski v. Troy*, 929 F.2d 1183, 1188 (7th Cir. 1991)); *see also Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91 (1979); *Havens Realty Corp. v. Coleman*,

455 U.S. 363 (1982).[1]   And the Court already found in its decision certifying the class that non-parent adult members of the class "stand to suffer the same injury-in-fact as the parents and minors contained within the class—displacement due to the Defendants' redevelopment plan—and seek the same relief." *Borum II*, 324 F.R.D. at 13 (noting that "courts in other circuits have recognized the broad meaning of 'aggrieved person' in the familial status context, and have allowed other co-residents to challenge policies that discriminate against families").[2]   Nothing more is required for Moore to be an "aggrieved person," and her claims are therefore not atypical simply because of that requirement.

Defendants also argue more generally that Moore's lack of protected status renders her claims atypical because a class of members of a protected group is typically represented by members of the protected group.  *See* Defs.' Mem. Supp. 24–25.  But the class the Court certified is not solely composed of individuals who have protected familial status.  "Defendants' disagreement with the Court's definition of who is included in the certified class does not render Ms. Moore's claims atypical."  Pls.' Mem. Opp'n 13.

Second, Moore's unique living circumstances also do not affect the typicality of her disparate impact discrimination claims.  Echoing the arguments they made against Borum in their opposition to the class certification, Defendants argue here that Moore does not stand to

---

[1] As does the DCHRA's "claiming to be aggrieved" component.  *See, e.g.*, *Molovinsky v. Fair Emp't Council of Greater Wash., Inc.*, 683 A.2d 142, 146 (D.C. 1996).

[2] Defendants contend that Moore "seek[s] an injunction that will not redress h[er] particular injury" because Plaintiffs only seek an injunction that would end the alleged discrimination against individuals with protected familial status.  Defs.' Mem. Supp. 24.  But, as Defendants acknowledge in their briefs, Plaintiffs' requested relief is an injunction to block the current redevelopment.  *See id.* at 1 ("This lawsuit is seeking to stop the redevelopment of Brookland Manor's 80-year-old, crime-ridden apartment complex.").  Such relief would remedy Moore's claimed injury.

suffer the same injury as the rest of the class because her "entitlement to a five-bedroom apartment is very attenuated." Defs.' Mem. Supp. 26. Defendants represent that "Moore's living situation is at the fringe of the debate over the appropriate occupancy standard" because she is only one of five individuals living in a five-bedroom apartment, and because there are disputes over how many people will stay in the apartment in the longer term and what are the motivations of individuals in Moore's household for not wanting to share a room. *Id.* at 26–27.

Defendants "fail to focus on the claims of the class actually certified in this case." Pls.' Mem. Opp'n 13. Moore is not bringing claims relating to her own individual situation; she is bringing claims of *class-wide* disparate impact. As the Court explained in its certification opinion, "[c]lass members need not be identically situated" for such a claim, *Borum II*, 324 F.R.D. at 16, because the claim relates to the impact of the redevelopment on the class as a whole, "the resolution of which will be subject to common proof (i.e. the policy will either have a disparate impact on residents based on their familial status, or it will not), *id.* at 17. It may well be that, on an individual basis, some members of the class will be less impacted by the redevelopment than others, while the class as a whole suffers a disparate impact.[3]

Moreover, Defendants' argument that Moore is not entitled to a five-bedroom apartment given the low number of individuals in her household is the same argument they made against Borum at the certification stage, and likely the same argument they will raise against all class

---

[3] The Court notes that under the occupancy standards advanced by Plaintiffs at the certification stage, and assuming that non-protected individuals are not excluded from occupancy calculations (a merits issue the Court does not address at the certification stage), Moore's household would require at a minimum a three-bedroom apartment, and possibly a four-bedroom apartment should Chyler continue to live in the apartment. *See* Decl. of Andrew A. Beveridge, Ph.D. ¶ 6, Pls.' Mot. Class Cert. Ex. 1, ECF No. 43-6. Given that Plaintiffs challenge the planned elimination of all four-bedroom and five-bedroom apartments, and reduction in the number of three-bedrooms, the Court therefore disagrees that Moore is "at the fringe of the debate over the appropriate occupancy standard." Defs.' Mem. Supp. 26–27.

members at the summary judgment stage. That argument reaches the merits of the case: "[t]he question of what size apartment class members require based on their family size will be crucial in determining whether Defendants' redevelopment plan has a disparate impact." *Id.* at 11. And while Defendants may ultimately be correct about which occupancy standard applies—as they may also be correct that separating individuals not protected by the FHA or DCHRA from protected individuals does not create a disparate impact on families, *see Borum I*, 218 F. Supp. 3d at 26 n.13—the issue is not one for the Court to decide at the certification stage. As the Court noted in *Borum II*, Defendants' invocation of this occupancy argument against Moore makes "clear that [Moore's] claims, and the defenses she will need to address when this case is decided on the merits, will be typical of the class as a whole." 324 F.R.D. at 17.

## 2. *Moore Does Not Bring Typical Discriminatory Statements Claims*

Next, the Court evaluates whether Moore brings discriminatory statements claims that are typical of the class. Defendants argue, *inter alia*, that Moore lacks standing to bring her claims because she has not suffered a cognizable injury. Defs.' Mem. Supp. 28–29. The Court agrees.

Under the familiar framework for establishing constitutional standing, a plaintiff "must show (1) [she] has suffered a 'concrete and particularized' injury (2) that is 'fairly traceable to the challenged action of the defendant' and (3) that is 'likely' to be 'redressed by a favorable decision,' i.e., a decision granting the plaintiff the relief [she] seeks." *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 376–77 (D.C. Cir. 2017) (quoting *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017)). And to meet the "injury in fact" requirement, a plaintiff must establish that "she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

Although "intangible injuries can . . . be concrete[,]" this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

In evaluating discriminatory advertisement under § 3604(c) of the FHA, multiple courts have expressed doubt that the injury component of standing could be established simply by virtue of the plaintiff reading the advertisement, without at least the allegation of some more discrete injury. *See McDermott v. N.Y. Metro LLC*, 664 F. Supp. 2d 294, 305 (S.D.N.Y. 2009) (listing cases; noting that "a person who reads a discriminatory advertisement has standing to sue only if they allege some form of personal injury, including psychic injury or substantial insult or distress"); ; *Wilson v. Glenwood Intermountain Props., Inc.,* 98 F.3d 590, 596 (10th Cir. 1996) ("[W]e conclude that mere receipt by plaintiffs of the discriminatory advertisements in this case could cause only the kind of 'abstract stigmatic injury' . . . insufficient to establish standing" (quoting *Allen v. Wright*, 468 U.S. 737, 755 (1984)). *Contra Saunders v. General Servs. Corp.*, 659 F. Supp. 1042, 1053 (E.D. Va. 1987) (noting that standing could be established merely by plaintiff reading discriminatory advertisement). The D.C. Circuit, in the context of a discriminatory advertising claim, noted more generally that it "question[ed] whether Congress intended [3604(c)] to confer a legal right on all individuals to be free from indignation and distress." *Spann v. Colonial Vill., Inc.*, 899 F.2d 24, 29 n.2 (D.C. Cir. 1990).

Here, the proposed amended complaint contains extremely sparse allegations as to what injury Moore suffered as a result of Defendants' alleged discriminatory statements. It indicates that "Defendants injured . . . Moore" by making statements violating § 3604(c), Proposed Am. Compl. ¶¶ 168, 176, Pls.' Mot. Substitute Ex. C, ECF No. 117-5, and that as a result Moore "suffered violations of [her] civil rights," *id.* ¶¶ 169, 177. The first allegation is simply a

conclusory legal statement that does not indicate what injury Moore suffered. And as to the second, because Moore does not have protected status under the FHA (or DCHRA), the Court cannot see how *her* civil rights were violated, as opposed to the rights of protected individuals. To the extent Plaintiffs would argue that Moore's awareness of the alleged discriminatory statements was in itself sufficient to create the required injury to establish standing, the Court disagrees. As discussed by courts in multiple circuits in the context of discriminatory advertisement, recognizing such an abstract injury, particularly when the plaintiff is not a member of the protected class, would impermissibly expand the scope of standing.

While litigating the motion to substitute, Plaintiffs have not offered any other evidence to show that Moore was injured by Defendants' alleged discriminatory statements. Plaintiffs' motion focuses entirely on Moore's suitability to represent the class on their first claim. *See generally* Pls.' Mem. Supp. Mot. Substitute, ECF No. 117-1. Moore does not mention the Defendants' alleged discriminatory statements anywhere in her declaration. *See generally* Moore Decl. And while the Court agrees with Plaintiffs that the statements Moore made on the issue at her deposition do not amount to much, *see* Pls.' Opp'n 15 n.5,[4] the opposition does not otherwise respond to Defendants' argument that Moore has not suffered an injury in fact—or provide a supplemental declaration by Moore discussing the statements. *See generally id.* The Court is therefore left with no indication that Moore has actually suffered an injury stemming from Defendants' alleged discriminatory statements. It finds that Moore lacks standing to bring

---

[4] Defendants make much of the fact that Moore admitted she did not remember any defendant "saying that families would not be welcomed at the redeveloped [property]," or "ever sa[ying] anything to [her] that ha[d] caused [her] harm." Moore Dep. 89:23 – 90:10. But Defendants are not alleged to have specifically stated that "families would not be welcomed" at the redeveloped Brookland Manor. *See* Proposed Am. Compl. ¶¶ 59–62. Nor are any of the defendants alleged to have orally made discriminatory statements directed at Moore. *See id.* Moore's failure to recall such statements is therefore not, in itself, dispositive.

her discriminatory statements claims, and that she fails the typicality (and adequacy) requirement to represent the class on those claims.

### C. Moore is an Adequate Representative for the Class's Disparate Impact Claims

Having determined that Moore brings typical disparate impact discrimination claims, the Court reviews whether she is an adequate representative of the class on those claims. Defendants make a multitude of arguments for why Moore is inadequate: they repeat their argument that Moore does not bring typical claims, contend that she does not have sufficient knowledge of and control over the litigation, that she lacks the credibility necessary to represent the class, and finally argue that proposed class counsel—plaintiffs' counsel throughout this litigation—has a conflict that would impact its representation of the class. *See* Defs.' Mem. Supp. 30–37. At the onset, typicality is not an obstacle to Moore's representation of the class because the Court has found that she brings typical claims. The Court addresses Defendants' other arguments in turn. While Moore's apparently limited knowledge of the litigation and the inconsistencies in her statements give the Court some pause, the Court ultimately finds that she meets the low standard for adequacy there. Finding Defendants' other arguments meritless, the Court concludes that Moore is an adequate representative for the class as to the disparate impact discrimination claims.

### 1. Moore Has Sufficient Familiarity With the Litigation to Act as Class Representative

The Court first addresses whether Moore has shown the requisite knowledge and control over the litigation to be an adequate representative of the class. "[T]he adequacy of representation prong requires that the class representative[] have a commitment to, knowledge of, and interest in the litigation, although they need not have expert knowledge of all aspects of the case." *Harris v. Koenig*, 271 F.R.D. 383, 391 (D.D.C. 2010). This requirement creates a low

bar: "[o]nly a 'total lack of interest and unfamiliarity with [the] suit would be sufficient grounds to deny plaintiffs' motion [to certify the class].'" *Id.* (alteration in original) (quoting *In re Newbridge Networks Sec. Litig.*, 926 F. Supp. 1163, 1177 (D.D.C. 1996)); *see also* Newberg on Class Actions § 3:67 ("While a lack of knowledge about the facts or legal theories of a particular case will usually not bar a finding that the proposed representative can adequately represent the class, courts are more troubled if the proposed representative lacks any understanding of [her] role in class litigation.").[5] And "[p]articularly in complex cases, 'the qualifications of class counsel are generally more important in determining adequacy than those of the class representatives.'" *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 135 (D.D.C. 2017) (quoting *Harris*, 271 F.R.D. at 392); *see also Thorpe v. District of Columbia*, 303 F.R.D. 120, 151 (D.D.C. 2014) ("[G]iven the circumstances of the named plaintiffs, it is unrealistic to expect that they understand the legal intricacies of class actions, which remain a mystery to many in the legal profession.").

Here, Defendants argue that Moore has not shown the requisite knowledge of and control over the litigation because "she does not know what the claims are . . . and . . . . how the class she seeks to represent is defined," Defs.' Mem. Supp. 32, she "has no idea what the next steps are . . . or what types of experts have been retained," *id.*, and she "has not even assisted in key filings that require her participation as a party," *id.* at 33. The Court disagrees. While Moore's deposition does highlight her relative lack of knowledge about the case, and her statements there

---

[5] Defendants take issue with Plaintiffs' invocation of this standard in their reply. *See* Defs.' Reply 14. They argue that "[c]lass counsel's argument is an existential threat to the integrity of the class action device," and designed to further a "runaway class action, driven by a downtown law firm and an anti-development activist organization." *Id.* Setting aside the fact that Defendants' counsel is itself a "downtown law firm," Plaintiffs' argument relies on a legal standard generally accepted in the class action context, that Defendants do not otherwise meaningfully challenge with contrary case law.

at times conflicted with the declaration filed in support of the motion to substitute, the Court does not find these issues sufficient to render her inadequate.

With respect to Moore's knowledge of the case, she indicated in her declaration that she "ha[d] become familiar with this case, including the facts that relate to the impact the redevelopment will have on families," Moore Decl. ¶ 15, and stated at the deposition that she understood her responsibilities as class plaintiff to be "help[ing] those out that need[] four and five bedroom just like [her]self," Moore Dep. 114:20–21. She also stated at the deposition that she understood the class to be "people . . . fighting to keep their families together, so they wanted [sic] to split them apart." *Id.* at 115:6–7. However, Moore did not know how the class was defined, what the next steps in the litigation were, how many people were in the class, or what experts Plaintiffs may have retained to speak on the class's behalf. *See id.* at 116:9–117:15. Defendants argue that this shows Moore "does . . . [not] have any knowledge of the objectives of this litigation." Defs.' Reply 15.[6] The Court disagrees. While it is true that Moore appears to have limited knowledge about the legal claims at issue and the litigation process, the deposition indicates that she knows about the core issue central to the claims: displacement of families currently living in three-, four-, and five-bedroom apartments at Brookland Manor as a result of the redevelopment. The Court cannot conclude that Moore has a "total lack of interest and unfamiliarity with [the] suit." *Harris*, 271 F.R.D. at 391 (alteration in original) (quoting *Newbridge*, 926 F. Supp. at 1177).

---

[6] Defendants also argue in their reply that Moore "knows nothing about the redevelopment other than what she was told at a community meeting two to three years ago." Defs.' Reply 16 (citing Moore Dep. 75:21–76:24). But Moore testified at the deposition that she frequently attends resident association meetings where the redevelopment is discussed. *See* Moore Dep. 109:13–112:8; *see also* Moore Decl. ¶ 15 (noting that Moore "attended numerous community meetings related to the redevelopment" over the years).

Nor does Moore's inability to recall participating in the drafting of responses to Defendants' interrogatories warrant finding her inadequate for lack of control over the litigation. Defendants note that Moore "recalled signing" the answers to their interrogatories, but because she "did not recall participating in the preparation of [the] answers," they contend that she must not have participated at all in the drafting of the responses. Defs.' Mem. Supp. 33. Based on the deposition, the Court does not agree. Moore's admission that she could not recall preparing her answers to Defendants' interrogatories is troubling. But, taking into account Moore's other statements and her difficulties recalling other events throughout the deposition, the Court cannot infer from it that Moore simply did not participate in the drafting of the answers, rather than simply failed to remember her participation. As Defendants acknowledge, Moore recalled signing the answers to the interrogatories. And she recalled being told about Defendants "ha[ving] questions that they wanted [her] to answer." Moore Dep. 137:3–7. Although with some difficulty, Moore also recalled meeting and talking to her attorneys on multiple occasions during the period following her nomination as proposed substitute class representative. *See* Moore Dep. 119:25–120:3, 138:16–139:19, 156:3–20, 157:12–16. Given that Moore is legally blind, it is plausible to infer that these conversations resulted in the preparation of the interrogatories on her behalf even if Moore did not recognize that they were for that purpose. Without more, the Court cannot find that her failure to recall working on the answers to interrogatories was due to her ceding control of the litigation to her attorneys.

## 2. *Moore Is Sufficiently Credible to Act as Class Representative*

Defendants next argue that Moore lacks the requisite credibility to act as class representative, based on inconsistencies between her declaration and the statements she made at her deposition, and on her allegedly admitting to submitting false information on federal

government forms.  *See* Defs.' Mem. Supp. 34–36.  The Court is unconvinced.  Courts typically decline certification on credibility issues "only in 'flagrant cases, where the putative class representatives . . . are so lacking in credibility that they are likely to harm their case.'"  *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 210–11 (D.D.C. 2018) (quoting *Howard*, 322 F.R.D. at 135).  This is not such a case.

First, several of the inconsistencies Defendants point to between Moore's sworn declaration and her deposition testimony are immaterial.  Moore stated that she had lived at Brookland Manor since 1972 in her declaration, *see* Moore Decl. ¶ 1, whereas she indicated at the deposition that she had lived in Waldorf, Maryland at some point in the past and could not remember if she had lived in Waldorf at any point in the past 30 years, *see* Moore Dep. 126:5–128:12.  Moore also stated in her declaration that Rajon Edwards was her sister Evelyn's grandson and that her sister had adopted him.  *See* Moore Decl. ¶ 2.  But she explained at the deposition that Evelyn only had legal custody of Rajon.  Moore Dep. 22:10–12.  And Evelyn was not related to Rajon by blood; she had raised his mother Keyana Edwards and was now raising him.  *See* Moore Dep. 19:25–22:12.  Both inconsistencies relate to narrow details, neither of which reaches a "core issue[] in the case," Defs.' Reply 17 n.1, or "casts doubt on the credibility and integrity of Ms. Moore,"  Defs.' Mem. Supp. 35.

More troubling is the inconsistency between Moore's statement in her declaration that her niece Denver Moore resided in her apartment during school breaks and planned to return to live in the apartment after graduation, *see* Moore Decl. ¶ 3, and her testimony at the deposition that Denver never stayed the night in the apartment, nor did she appear to have plans to come back to live there after graduating from college, *see* Moore Dep. 36:5–19.  Defendants are correct that this inconsistency comes closer to the central legal issue in this case because it impacts how

many people actually live in Moore's apartment. *See* Defs.' Reply 17. That being said, Denver

Moore is nineteen, *see* Moore Decl. ¶ 3, and does not have protected familial status under the

FHA or DCHRA. And, as discussed above, Moore still brings typical claims even with only four

other individuals living in the apartment. *See supra* Part IV.B.1. Unlike the cases cited by

Defendants, the inaccuracy therefore does not actually reach a "core issue[]." Defs.' Reply 17

n.1; *see CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 727–28 (7th Cir. 2011)

(finding lack of credibility sufficient to warrant inadequacy when it "raise[d] a substantial

question" regarding a consent defense); *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir.

1998) ("The fact that Savino offered differing accounts about the letters that form the very basis

for his lawsuit surely would create serious concerns as to his credibility at . . . trial."); *cf. Shiring

v. Tier Techs., Inc.*, 244 F.R.D. 307, 316–17 (E.D. Va. 2007) (finding that plaintiff's

inadvertence or indifference to certification requirements under Private Securities Litigation

Reform Act's certification requirements, together with failure to comply with his company's

insider trading policy, showed he lacked "the requisite standards of honesty and integrity

required of a fiduciary for the putative class").

More generally, as with Defendants' arguments regarding Moore's responses to their

interrogatories, the Court finds no indication of bad faith on Plaintiffs' or Moore's part. The

transcript reflects that Moore appeared concerned with providing truthful answers to Defendants'

questions. While any inaccuracies in her declaration might reflect poorly on the preparation of

Plaintiffs' motion to substitute—as does Plaintiffs' failure to submit an amended declaration

clarifying Moore's statements—the Court does not believe that the discrepancies between the

declaration and deposition testimony render Moore "so lacking in credibility" that she is "likely

to harm [her] case." *Garnett*, 301 F. Supp. 3d at 210–11 (quoting *Howard*, 322 F.R.D. at 135);

*see also CE Design*, 637 F.3d at 728 (noting that "[f]or an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims").

Next, Defendants contend that "there is evidence that suggests that Ms. Moore and her sisters provided false information on Tenant Income Certifications required under the HUD Section 8." Defs.' Mem. Supp. 35. They go further in their reply, arguing that Moore "conceded" that she was not listed on the rental application for the apartment she lives in at Brookland Manor until 2012 "so that [her] government benefits would not be counted as household income, thereby increasing the rent that would need to be paid." Defs.' Reply 18. But Moore's deposition simply does not bear this out. Defendants' counsel asked why Moore's name was not on the lease of her Brookland Manor apartment until 2012. *See* Moore Dep. 128:13–18. After Moore answered that her sister must not have put her on the lease, Defendants' counsel asked whether this was "so [Moore's] benefits didn't have to be counted in the calculation of rent." *Id.* at 128:23–25. Moore stated that she did not know. *See id.* at 129:1–11. After repeating that she did not know in response to counsel's renewed questions on the issue, Moore eventually stated: "It could have been. I don't know." *Id.* at 133:23–24. This is far from the concession of fraudulent conduct Defendants represent was made. And it is also far from the conduct at issue in the case Defendants cite in support of their argument, where the individual empowered to act on the proposed representative's behalf in the lawsuit had prior *convictions* for filing false federal income tax returns. *See Pope v. Harvard Banschares, Inc.*, 240 F.R.D. 383, 390 (D.D.C. 2006). The Court agrees with Plaintiffs that "Defendants . . . seek to impute fraud

to Ms. Moore and her family based on . . . speculation." Pls.' Mem. Supp. at 21. Because

Defendants' arguments do not suggest that Moore is entirely lacking in credibility, the Court

declines to find her inadequate on that basis.

*3.* Class Counsel Does Not Have a Disqualifying Conflict

Finally, the Court briefly touches on Defendants' last argument as to inadequacy, that

class counsel has a conflict that renders it inadequate because Borum, the prior representative,

has different incentives from the rest of the class, and Plaintiffs' counsel continues to represent

her as a class member. *See* Defs.' Mem. Supp. 36–37 (citing *Borum III*, 329 F.R.D. at 100).

Defendants cite no law to support that argument. Nor can they. If a single class member's

differing incentives could create a conflict disqualifying class counsel from representing the rest

of the class, no class would ever be found to be adequate. Plaintiffs' counsel are obligated to

"fairly and adequately represent the interests of the *class*," Fed. R. Civ. P. 23(g)(4), not to ensure

that the interests of each individual class member be satisfied. The Court finds that this

"conflict" is not sufficient grounds to render class counsel inadequate.

**D. The Court Decertifies the Class Only as to the Discriminatory Statements Claims**

Having found that Moore is an atypical and inadequate representative on some, but not

all, of Plaintiffs' claims, the Court must now determine what the appropriate course of action is

with regards to the continued certification of the class. Defendants appear to argue that because

Moore is atypical and inadequate on half of the class's claims, the class must be decertified on all

claims. *See* Defs.' Reply 11–12.[7] The Court disagrees. Because it retains broad discretion in

---

[7] Defendants also repeat the argument made at the certification stage and in their first motion to decertify that the majority of the class does not support this litigation. *See* Defs.' Mem. Supp. 38–39. But beyond unsupported assertions regarding Plaintiffs' counsel's efforts to find a substitute representative, *e.g. id.* at 38 ("Lawyers went door-to-door on the hunt for

shaping the class, the Court instead will decertify the class as to the discriminatory statements claims and grant the motion to substitute Moore as class representative on the disparate impact claims.

As discussed above, "a district court's order . . . granting class status is inherently tentative." *Reynolds*, 702 F.2d at 226 (quoting *Coopers & Lybrand*, 437 U.S. at 469 n.11). Because "class certification problems are constantly subject to reconsideration as the facts develop," *id.*, "Rule 23 expressly grants courts the discretion to revisit the propriety of continued class certification in later stages of litigation," *DL*, 312 F.R.D. at 6 (citing Fed. R. Civ. P. 23(c)(1)(C)). In parallel, Rule 23 also affords courts broad discretion in structuring the class, including the discretion to certify a class only on some of a plaintiff's claims. *See Borum II*, 324 F.R.D. at 7–8; *Fox v. Prudent Res. Trust*, 69 F.R.D. 74, 77 (E.D. Pa. 1975) ("The court has power to dismiss the suit as a class action, maintain it as to only some of the counts of the complaint, or create subclasses as to one or more counts of the complaint.") (citing Fed. R. Civ. P. 23(c)(4)); *see also, e.g.*, *Kaplan v. Pomerantz*, 131 F.R.D. 118, 127 (N.D. Ill. 1990) (certifying class on two out of three counts because proposed class representative was atypical as to third count).

Here, the Court agrees with Defendants that, in light of Plaintiffs' failure to propose a suitable substitute class representative within a reasonable time, decertification is an appropriate remedy. *See* Defs.' Mem. Supp. 37; *Borum III*, 329 F.R.D. at 100–01 (discussing cases and noting that the Court would give Plaintiffs a reasonable time to put forward a substitute representative before considering decertification). But the Court does not believe that

---

someone, anyone, who could step in and continue to carry Class Counsel's torch."), Defendants do not substantiate those allegations.

decertification of the class on all claims is warranted, because Moore remains a typical and adequate representative with respect to disparate impact discrimination claims. The Court accordingly decertifies the class on Plaintiffs' two discriminatory statements claims, but grants Plaintiffs' motion to substitute Moore as class representative on the two disparate impact discrimination claims.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to substitute class representative (ECF No. 117) is **GRANTED IN PART AND DENIED IN PART**. Defendants' cross-motion to decertify the class (ECF No. 123) is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' motion for leave to file documents under seal (ECF No. 128) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 11, 2019                                  RUDOLPH CONTRERAS
                                                       United States District Judge