# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| ADRIANN BORUM, *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1723 (RC) |
| | : | | |
| v. | : | Re Document No.: | 94, 94-2 |
| | : | | |
| BRENTWOOD VILLAGE, LLC, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SANCTIONS;
GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE UNDER SEAL

## I. INTRODUCTION

On August 25, 2016, One DC, a community organization, joined a class action by residents of the Brookland Manor apartment complex ("Brookland Manor") against Defendants Brentwood Associates, L.P., Mid-City Financial Corporation, and Edgewood Management Corporation, for violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, and D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2–1401 to 2–1404. Plaintiffs alleged that the planned redevelopment of the complex by Defendants was discriminatory and would force certain residents out of their homes. During discovery, Defendants learned that an employee of One DC had deleted relevant electronically stored information ("ESI") after Plaintiffs filed their suit. Defendants now move for sanctions pursuant to the Court's inherent authority and Rule 37(e) of the Federal Rules of Civil Procedure. Defendants request that the Court dismiss One DC from this case, and that it award their fees and costs associated with defending against One DC's claims and conducting discovery against One DC.

For the reasons explained below, the Court grants Defendants' motion for sanctions only in part. The Court finds that an award of some fees and costs is appropriate here under Rule 37(e)(1) to cure the prejudice to Defendants resulting from the spoliation. But because it does not find that One DC acted intentionally to deprive Defendants of the lost ESI, the Court will not grant any claim-dispositive sanction.

## II. BACKGROUND

The Court has already set out the factual background for this case in detail in its prior opinions. *See Borum v. Brentwood Vill., LLC*, No. 16-1723, 2019 WL 2437686, at *1–3 (D.D.C. June 11, 2019); *Borum v. Brentwood Vill., LLC*, 329 F.R.D. 90, 91–93 (D.D.C. 2019); *Borum v. Brentwood Vill., LLC*, 324 F.R.D. 1, 6–7 (D.D.C. 2018); *Borum v. Brentwood Vill., LLC*, 218 F. Supp. 3d 1, 5–8 (D.D.C. 2016). It assumes familiarity with those prior opinions and only briefly summarizes the facts relevant to the present motion.

### A. One DC's Involvement in the Brookland Manor Litigation

Residents of the Brookland Manor apartment complex, joined by community organization One DC, brought this action to challenge Defendants' redevelopment plan for the Brookland Manor property. *See generally* Compl., ECF No. 2. Plaintiffs allege that the redevelopment plan, which would eliminate all four- and five-bedroom apartment units and significantly reduce the number of three-bedroom apartments, would have a disparate impact on families. *See id.* ¶¶ 5, 69–79.

One DC is "comprised of members who include tenants of affordable housing properties that are seeking to avoid displacement, preserve affordable housing, ensure fair housing, and further equitable development in D.C." *Id.* ¶ 108. One DC asserts that Defendants' discriminatory conduct has caused it to "divert scarce organizational resources" towards

addressing the situation at Brookland Manor and "frustrat[ed] its mission of creating and preserving racial and economic equity in D.C." *Id.* ¶ 111. Specifically, One DC alleges that it has diverted its resources to "identifying, investigating, and combating Defendants' discriminatory policies and practices, and to counseling, organizing, and reassuring tenants who have been forcibly moved or have feared imminent displacement under Defendants' proposed redevelopment plan for Brookland Manor." *Id.* ¶ 113. Given that One DC has a "limited operational budget and only two full-time staff members . . . this project . . . diverts both money and human resources from . . . other organizational activities and community initiatives." *Id.* ¶ 112. In all, One DC alleges that, as of July 28, 2016, it had spent 640 staff-hours to "combat Defendants' discriminatory conduct." *Id.* ¶ 121.

Yasmina Mrabet worked as One DC's primary organizer at Brookland Manor from October 2016 until March 2018. *See* Mrabet Dep. 8:10–16, Pls.' Opp'n Defs' Mot. Sanctions ("Pls.' Opp'n") Ex. B, ECF 99-6.[1] As One DC's Right to Housing Organizer, Mrabet "organize[d] tenants throughout the District of Columbia and . . . help[ed] them form strong tenant associations to deal with affordable housing issues." Moulden Dep. 37:17–38:4, Decl. of Lisa Schapira Ex. A, ECF No. 94-3. Mrabet led One DC's activities at Brookland Manor, *see id.* at 38:5–10, and served as "One DC's point person for the Brookland Manor project between 2016 and 2018," *id.* at 184:8–12. During the litigation, she corresponded with several people about Brookland Manor, including residents, volunteers, interns, ANC commissioners, and other One DC members and employees, serving as the main point of contact between Brookland Manor residents and One DC. *See* Mrabet Dep. at 10:24–12:13.

---

[1] Because Plaintiffs do not provide page numbers in their submission of Exhibit B, the Court cites to Mrabet's deposition using the ECF page numbers.

### B. Mrabet's Destruction of E-mails Relevant to this Litigation

In March 2018, Mrabet left One DC because of an "internal conflict at the organization." Mrabet Dep. 8:14–20. Before leaving, she deleted all of her e-mails. *See id.* at 13:25–14:2. On March 14, 2018, Claire Cook, the Administrative Organizer at One DC, discovered that Mrabet had deleted her e-mails.[2] *See* Pls.' Opp'n 7; *see also* Decl. of Claire Cook ¶ 8, ECF 99-2. Three business days later, Cook attempted to recover Mrabet's e-mails. *See* Pls.' Opp'n 7; *see also* Cook Decl. ¶ 13. One DC maintained employee e-mail accounts through G Suite, *see* Cook Decl. ¶ 3, which only allowed administrators to restore data that was deleted within the past 25 days, *see* Google Support Page 1, Decl. of Stephen Petkis Ex. C, ECF No. 99-7. Cook was only able to restore a limited set of e-mails from February and March 2018, *see* Cook Decl. ¶ 15, because the 25-day period in which One DC could recover the e-mails had expired, *see* Moulden Dep. 186:3–7.

On May 21, 2018, Defendants requested "[a]ll documents related to communications involving Yasmina Mrabet that relate to the Brookland Manor Apartments, Mid-City, Edgewood, BALP or allegations made in the Complaint." Defs.' First Set of Reqs. for Produc. of Docs. ("Defs.' Reqs. for Produc.") 6, Req. No. 4, Decl. of Lisa Schapira Ex. B, ECF 94-3. In its June 20, 2018 response, One DC agreed to "conduct a reasonable search . . . and produce responsive, non-privileged documents, if any, that involve Ms. Mrabet and relate to Mid-City, Edgewood, or BALP's role in the management and redevelopment of Brookland Manor

---

[2] Mrabet claims that she deleted her e-mails in February 2018. *See* Mrabet Dep. 14:3–7. But according to Cook, Mrabet deleted most of her e-mails on January 26, 2018. *See* Decl. of Claire Cook ¶ 17, ECF No. 99-2. For purposes of this motion, the Court looks past this discrepancy, which does not affect the fact that Mrabet deleted her e-mails prior to her departure, nearly two years after One DC filed its Complaint.

Apartments between January 1, 2014 and the present." Pls.' Resps. and Objs. to Defs.' First Set of Reqs. for Produc. of Docs. ("Pls.' Resps.") 8, Decl. of Lisa Schapira Ex. C, ECF 94-3.

However, in a September 4, 2018 amendment, One DC revealed that Mrabet had deleted her e-mail account and that the account was "unrecoverable," although the set of e-mails One DC would produce to Defendants would likely include the "vast majority" of Mrabet's responsive e-mails given One DC's practice of regularly copying other staff members on e-mails. Pls.' Suppl. Resps. and Objs. to Defs.' Reqs. for Produc. of Docs. ("Pls.' Suppl. Resps.") 5, Decl. of Lisa Schapira Ex. D, ECF 94-3. In response to Defendants' request, One DC produced the 114 responsive, non-privileged documents that Cook had restored, *see* Pls.' Opp'n 7, along with "1,308 responsive e-mails either to, from, or copying" Mrabet, *id.* at 8. Plaintiffs acknowledge that some responsive e-mails were likely lost when Mrabet deleted her e-mails, but represent that "a very substantial number of responsive e-mails were preserved and produced" because of Mrabet's practice of copying other staff members on e-mails. *Id.*

After learning of the deletion, Defendants asked about One DC's recordkeeping practices at the deposition of Dominic Moulden, One DC's designated representative under Fed. R. Civ. P. 30(b)(6). *See generally* Moulden Dep. Moulden explained that One DC might have orally instructed its employees to preserve all documents sometime in the summer or fall of 2016. *See id.* at 179:24–180:13. But two employees, Mrabet included, do not remember receiving an oral litigation hold. *See* Mrabet Dep. 15:21–25; Ndubuizu Dep. 64:25–65:11, Decl. of Lisa Schapira Ex. F, ECF No. 94-3. One DC did not issue a written litigation hold until May 30, 2018. *See* Pls.' Opp'n 5. Nor did it activate a vault system for permanent backup of e-mails until July 2018. *See* Moulden Dep. 183:10–16.

### C. Procedural History

Plaintiffs filed suit on August 25, 2016. *See generally* Compl. At the outset of litigation, Defendants filed a motion to dismiss on several grounds, one of which included One DC's lack of standing. *See* Defs.' Mem. Supp. Mot. Dismiss, ECF No. 16-1. The Court denied the motion. *See Borum*, 218 F. Supp. 3d at 5. Based on the facts alleged in the complaint, and One DC's allegations that the planned redevelopment frustrated its goals and "diverted its scarce resources away from its central mission," the Court found that One DC had standing because "Defendants' alleged discrimination forced One DC to address an exigency in the community at the expense of its broader social goals." *Id.* at 20.

Defendants have now moved for sanctions, arguing that One DC engaged in spoliation of evidence long after it anticipated this litigation and after the filing of this suit. *See* Defs.' Mot. Sanctions 4 ("Defs.' Mot."), ECF No. 94-2. Defendants assert that the spoliation has barred them from further pursuing their standing defense and request as a remedy that the Court dismiss One DC's claims. One DC filed an opposition, *see* Pls.' Opp'n, and Defendants have filed their reply, *see* Defs.' Reply, ECF No. 102. Thus, the motion is ripe for resolution.

### III. LEGAL STANDARD

#### A. Sanctions Under Rule 37(e)

Rule 37(e) of the Federal Rules of Civil Procedure governs a court's inquiry in deciding whether to impose sanctions for the failure to preserve ESI. Under Rule 37(e), when "[ESI] that should have been preserved in the anticipation of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court may (1) "order measures no greater than necessary to cure the prejudice," or, only upon finding "that the party acted with the intent to deprive another party of the

information's use in the litigation," (2) "presume that the information was unfavorable to the party, instruct the jury that it may or must presume the information was unfavorable to the party, or dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e). The party alleging spoliation bears the burden of proof. *See, e.g., Ball v. George Wash. Univ.*, No. 17-0507, 2018 WL 4637008, at *1 (D.D.C. Sept. 27, 2018).

### B. Sanctions Under The Court's Inherent Powers

"[C]ourts have the inherent power to impose sanctions for abusive litigation practices" when the Federal Rules of Civil Procedure alone do not provide them with "sufficient authority to protect the integrity of the judicial system." *Young v. Off. of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 65 (D.D.C. 2003). "One such inherent power is the authority to impose sanctions for the . . . spoliation of evidence." *CAT3, LLC v. Black Lineage, LLC*, 164 F. Supp. 3d 488, 497 (S.D.N.Y. 2016). Available sanctions include default judgment, fines, and awards of attorneys' fees and expenses, among others. *See Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995). The party seeking sanctions must show that (1) the party that lost the information had a duty to preserve it when it was destroyed; (2) the destruction was accompanied by a culpable state of mind; and (3) the spoliated information was relevant to the claims or defenses of the party that sought the discovery. *See Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018). Courts are "necessarily vested" with this authority to "achieve the orderly and expeditious disposition of cases." *Young*, 217 F.R.D. at 65 (quoting *Chambers,* 501 U.S. at 43). But such authority "must be exercised with restraint and discretion." *Id.* And the court must "properly 'calibrate the scales' to ensure that the gravity of an inherent power sanction corresponds to the misconduct." *Shepherd*, 62 F.3d at 1479.

IV.  ANALYSIS

Defendants move for sanctions pursuant to the Court's inherent powers and Rule 37(e) of the Federal Rules of Civil Procedure, arguing that the loss of ESI has deprived them of evidence relevant to One DC's claims.  Defendants request that the Court dismiss One DC from this case, and that it award their fees and costs associated with defending against One DC's claims and conducting discovery against One DC.  In response, Plaintiffs acknowledge that some relevant evidence was likely lost.  But they contend that any loss of data was contrary to One DC's organizational policy, and that sanctions are not warranted because Defendants have not been prejudiced.  The Court agrees in part with Defendants.  It first addresses the appropriate standard governing its authority to impose sanctions in this case.  Finding that the availability of sanctions should be reviewed under the Federal Rules of Civil Procedure, the Court next discusses whether sanctions are warranted under Rule 37(e) and, if so, whether sanctions are appropriate under Rule 37(e)(1) or 37(e)(2).  Finally, the Court considers the sanctions sought by Defendants and finds that only some are warranted.

### A. The Court Reviews Defendants' Motion Under Rule 37(e)

"[Although] a court may use its inherent power to impose sanctions, it should instead rely on the Federal Rules of Civil Procedure if feasible."  *Mahoney v. Yamaha Motor Corp. U.S.A.*, 290 F.R.D. 363, 369 (E.D.N.Y. 2013) (citing *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 623 (S.D.N.Y. 2001)); *see also Allen v. Tribune N.Y. Newspaper Holdings, LLC*, 246 F.R.D. 465, 467 (S.D.N.Y. 2007) (A court may safely rely on its inherent power "only when, 'in the informed discretion of the court, neither [an applicable] statute nor the [Federal] Rules are up to the task.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. at 50)); *CAT3*, 164 F. Supp. 3d at 500 (finding that Rule 37(e) provided basis for relief where each of the threshold requirements of the

rule were met). *But see Steves and Sons*, 327 F.R.D. at 103–11 (applying both inherent authority and Rule 37(e) in spoliation sanctions inquiry).

Here, the loss of electronic evidence stored on e-mails falls squarely within the scope of Rule 37(e), the terms of which specifically address the applicability of sanctions for spoliation of ESI. *See* Fed. R. Civ. P. 37(e). And the rule was clearly drafted with an eye towards providing clarity and uniformity in the application of sanctions in cases involving ESI. The advisory committee noted that the newly amended rule "forecloses [a court's] reliance on [its] inherent authority or state law" to order remedial measures for the loss of ESI. Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. The committee also noted that the amended rule "is designed to provide a uniform standard in federal court for use of the[] serious measures" contemplated by Rule 37(e)(2), and that it explicitly "rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence." *Id.* Accordingly, this Court will apply Rule 37(e).

**B. Sanctions Under Rule 37(e)(1) Are Warranted**

Having determined that Rule 37(e) should apply to Defendants' motion for sanctions, the Court next determines whether sanctions are warranted under the rule and, if so, whether sanctions would be appropriate under Rule 37(e)(1) or 37(e)(2). Rule 37(e) only applies when (1) ESI, (2) should have been preserved in the anticipation or conduct of litigation, (3) the party that should have preserved the ESI failed to take reasonable steps to preserve it, and (4) the ESI is irremediably lost. *See* Fed. R. Civ. P. 37(e). The Court finds that the deleted e-mails constitute ESI, that the ESI should have been preserved, that One DC failed to take reasonable steps to preserve the ESI, and that the ESI is irremediably lost. However, while the Court finds that this loss created some amount of prejudice to Defendants, it does not find that One DC acted

intentionally. The Court therefore concludes that sanctions are only warranted pursuant to Rule 37(e)(1).

### 1. Mrabet's E-mails Were ESI that Should Have Been Preserved

First, the Court addresses whether the deleted e-mails were ESI that should have been preserved. The parties agree that Mrabet's e-mails constitute ESI. The Court thus considers whether and when a duty to preserve arose, and whether Mrabet's e-mails were covered under that duty.

Once a party anticipates litigation, it must preserve potentially relevant evidence that might be useful to an adversary. *See, e.g., Nunnally v. District of Columbia*, 243 F. Supp. 3d 55, 73 (D.D.C. 2017); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 245 (D.D.C. 2016); *Zhi Chen v. District of Columbia*, 839 F. Supp. 2d 7, 12 (D.D.C. 2011). At the very least, the duty begins no later than the date the lawsuit is filed. *See Mahaffey v. Marriott Int'l, Inc.*, 898 F. Supp. 2d 54, 58 (D.D.C. 2012) (noting that the duty exists when litigation is pending or reasonably foreseeable); *see also Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003) ("[T]he duty . . . arose, at the latest . . . when [Plaintiff] filed her . . . charge."); *Steves and Sons*, 327 F.R.D. at 106 (finding that the duty begins, at the latest, after direct, specific threats of litigation).

Here, the Court readily finds that One DC was under a duty to preserve Mrabet's e-mails regarding her work on the Brookland Manor project. Plaintiffs filed their complaint on August 25, 2016, *see* Compl., and One DC's duty to preserve thus began at the latest on that day. Mrabet was the point person and primary contact for the Brookland Manor project. *See* Moulden Dep. at 184:8–12; *see also* Mrabet Dep. at 10:24–12:13. She corresponded with residents, volunteers, interns, ANC commissioners, and other One DC members and employees about the

project. *See id.* Certainly, her e-mails could have helped Defendants assess the work that One DC did at Brookland Manor and the resources that One DC allocated to the project. Importantly, the e-mails might have helped establish whether such resources were diverted from One DC's typical work or whether Mrabet would have conducted the work regardless of Defendants' conduct.

## 2. One DC Failed to Take Reasonable Steps to Preserve Mrabet's E-mails

Next, the Court addresses whether One DC took reasonable steps to preserve Mrabet's e-mails. In doing so, it considers whether One DC adhered to the expected norms that govern record preservation during litigation. The Court concludes that One DC completely failed to comply with those expected norms.

A party "must . . . put in place a 'litigation hold' to ensure the preservation of relevant documents" when it "reasonably anticipates litigation." *Nunnally*, 243 F. Supp. 3d at 73 (quoting *Zubulake*, 220 F.R.D. at 218). Failure to do so can result in spoliation of evidence, which is defined as "the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.* (citation omitted). A litigation hold typically takes the form of a written hold. *See, e.g.*, *Landmark Legal Found. v. Envtl. Prot. Agency*, 82 F. Supp. 3d 211, 214 (D.D.C. 2015); *United States ex rel. Barko v. Halliburton Co.*, 74 F. Supp. 3d 183, 190–91 (D.D.C. 2014). And, as discussed above, a party at the very least reasonably anticipates litigation when the lawsuit is filed. *See, e.g.*, *Mahaffey*, 898 F. Supp. 2d at 58.

One DC issued a written litigation hold on May 30, 2018, *see* Pls.' Opp'n 5, and activated a vault system for permanent backup to archive data and prevent individual employees from permanently deleting files in July 2018, *see* Moulden Dep. 183:10–16; *see also* Cook Decl. ¶ 23.

Prior to that date, employees could delete company e-mails, *see* Moulden Dep. at 183:17–20, with only a limited 25-day recovery window, *see* Cook Decl. ¶ 14. One DC also claims to have issued an oral litigation hold during a staff meeting at the outset of litigation. *See* Pls.' Opp'n 5–6. But although one employee recalls this encounter, *see* Moulden Dep. 180:25–181:3, two employees who worked with Brookland Manor residents do not recall being told to preserve their correspondence, *see* Mrabet Dep. 15:21–25; *see also* Ndubuizu Dep. 64:25–65:11.

Even if the Court were to assume that One DC issued an oral litigation hold at the outset of litigation, it is well recognized that an oral litigation hold is insufficient to reasonably protect against the spoliation of evidence. *See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc.*, 282 F.R.D. 346, 357 (S.D.N.Y. 2012) (finding "a degree of culpability sufficient to permit the imposition of sanctions" where company failed to issue written litigation hold after it contemplated litigation); *see also Acorn v. Cty. of Nassau*, No. 05-2301, 2009 WL 605859 (E.D.N.Y. Mar. 9, 2009) (finding that party acted with gross negligence where it imposed a "verbal" litigation hold rather than a "formal" one). Here, One DC implemented a backup system and issued a written litigation hold only *after* two employees deleted their e-mails. *See* Cook Decl. ¶ 18, 23; *see also* Pls.' Opp'n 5. For almost two years after the litigation began, the entirety of One DC's efforts to protect against the loss of evidence consisted of, at most, an oral warning that "might have been mentioned at a staff meeting." Moulden Dep. 180:3–10. Not only were One DC's preservation efforts, or lack thereof, unreasonable, they were also completely incongruous to the expected norms that govern a party's duty to preserve evidence during litigation. The Court thus concludes that One DC did not take reasonable steps to preserve Mrabet's e-mails.

### 3. Mrabet's E-mails Are Irremediably Lost

Finally, the Court reviews whether the ESI at issue was irremediably lost. Rule 37(e) is only applicable when lost ESI is irretrievable from another source, including other custodians. *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("Because [ESI] often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."); *see also Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.,* No. 14-1064, 2017 WL 1214424, at *2–3 (D.D.C. Mar. 30, 2017). Here, Mrabet's e-mails are irremediably lost because they cannot be restored or replaced through additional discovery. The e-mails could only be recovered from one source, and One DC has already attempted, and failed, to fully recover them. *See* Cook Decl. ¶ 15. In addition, while One DC argues that it has identified alternate copies and produced a substantial number of Mrabet's deleted e-mails, the organization acknowledges that at least some responsive e-mails were likely irremediably lost, presumably because Mrabet did not copy another employee on every single e-mail she sent while working at One DC. *See* Pls.' Opp'n 8–9. Because One DC was unable to fully recover Mrabet's e-mails, no amount of discovery will confirm the extent to which information was lost. The Court thus finds that One DC irremediably lost ESI that should have been preserved.

### 4. Only Sanctions Under Rule 37(e)(1) Are Warranted

Having determined that the threshold requirements of Rule 37(e) are satisfied, the Court evaluates whether (e)(1) or (e)(2) applies. Each subsection carries different requirements and available sanctions. Under Rule 37(e)(1), the Court may impose proportional sanctions upon the finding of prejudice. Under Rule 37(e)(2), the Court may impose more severe sanctions upon finding that the party that lost the information acted with the intent to deprive another party of

the information's use in the litigation.  The Court finds that sanctions are warranted under Rule 37(e)(1) but not 37(e)(2).

### a. Defendants Have Suffered Prejudice from One DC's Failure to Preserve ESI

The Court first analyzes whether Defendants are entitled to sanctions under Rule 37(e)(1), and finds that they are.  Sanctions under Rule 37(e)(1) are only warranted if Defendants suffered prejudice from the loss of Mrabet's e-mails.  *See* Fed. R. Civ. P. 37(e)(1).  "An evaluation of prejudice from the loss of [ESI] necessarily includes an evaluation of the [ESI's] importance in the litigation."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  Prejudice "range[s] along a continuum from an inability to prove claims or defenses to little or no impact on the presentation of proof."  *Steves and Sons*, 327 F.R.D. at 110 (alteration in original) (quoting *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 532 (D. Md. 2010)).  Ultimately, "[t]he rule leaves judges with discretion to determine how best to assess prejudice in particular cases."  Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.  "To show prejudice resulting from the spoliation, 'a party must only come forward with plausible, concrete suggestions as to what [the destroyed] evidence might have been.'"  *Moody v. CSX Transp., Inc.*, 271 F. Supp. 3d 410, 430 (W.D.N.Y. 2017) (alteration in original) (quoting *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, No. 15-2121, 2017 WL 1155743, at *1 (D.P.R. Mar. 27, 2017)).

Defendants argue that they have been prejudiced by One DC's spoliation because they are "forever barred from testing the allegations in [One DC's] complaint."  Defs.' Mot. 13.  According to Defendants, the deleted e-mails would have revealed "how [Mrabet] was spending her time, and whether her efforts . . . were directed towards organizing for and supporting this lawsuit."  *Id.*  Defendants argue that the e-mails might have conclusively shown "whether One

14

DC [has Article III standing] in this case." *Id.* And Defendants also argue that they have been prejudiced by One DC's spoliation because they have spent "additional resources to attempt to resolve" this critical factual dispute. *Id.* (citing *Moody*, 271 F. Supp. 3d at 430).

The Court agrees with Defendants only in part. Based on the record and arguments before it, the Court does not agree that Defendants are altogether barred from testing One DC's standing allegations simply because Mrabet deleted her e-mails. Although "only a limited number of [Mrabet's] e-mails from February and March 2018 were restored," Pls.' Opp'n 7, One DC produced these responsive documents, *see id.*, along with "1,308 responsive e-mails either to, from, or copying" Mrabet, given her practice of copying other staff members on e-mails, *id.* at 8–9.[3] After filing their motion, Defendants also deposed Mrabet, which gave them the opportunity to inquire about the nature of her work for One DC at Brookland Manor, and any changes in her activities and responsibilities that might have occurred because of the redevelopment. *See generally* Mrabet Dep. And Defendants obtained discovery of a wide range of other documents from One DC, including timesheets detailing each employee's work at Brookland Manor, handwritten journals, payroll documents, etc., *see* Pls.' Opp'n 10, as well as deposed other employees of One DC, *see* Moulden Dep.; Ndubuizu Dep., giving Defendants another opportunity to gather facts relevant to their standing argument.

Nonetheless, the Court readily finds that the e-mail deletion created at least *some* prejudice for Defendants' ability to defend the claims in this suit. Not only have Defendants spent additional time, money, and resources deposing One DC employees, they have also lost

---

[3] Of note, Defendants have not submitted to the Court any examples of Mrabet e-mails obtained from other One DC employees, Brookland Manor staff or residents, or anyone else, calling into question the assertion that Mrabet's practice was to copy other One DC staff members on e-mails.

potentially valuable information regarding One DC's standing in the case. Given that Defendants have obtained some, but not all relevant evidence regarding One DC's involvement in this lawsuit and asserted injury, the Court concludes that One DC's loss of ESI has prejudiced Defendants, but not to the extent that Defendants allege.

### b. One DC Did Not Act with the Intent to Deprive Defendants of ESI

Next, the Court reviews whether sanctions would be warranted under Rule 37(e)(2), which reserves the harshest discovery sanctions for cases in which the court can find that "the [spoliating] party acted with intent to deprive another party of the [ESI's] use in the litigation." Fed. R. Civ. P. 37(e)(2). If such a finding is made, no separate showing of prejudice is required because "the finding of intent . . . can support . . . an inference that the opposing party was prejudiced by the loss of information." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "This intent standard is 'stringent' and 'does not parallel other discovery standards.'" *Moody*, 271 F. Supp. 3d at 431 (quoting *Jenkins v. Woody*, No. 3:15cv355, 2017 WL 362475, at *17 (E.D. Va. Jan. 21, 2017)); *see also Knight v. Boehringer Ingelheim Pharms., Inc.*, 323 F. Supp. 3d 837, 845 (S.D.W. Va. 2018).

As an initial matter, Defendants mistakenly argue that "the clear and convincing evidence of O[ne] DC's gross negligence provides the culpable state of mind required for the sanction of dismissal." Defs.' Mot. 10. On the contrary, "[Rule 37(e)(2)] rejects cases such as *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99 (2d Cir. 2002), that authorize the giving of [(e)(2) sanctions] on a finding of negligence or gross negligence." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Although the Court does conclude that One DC was negligent in preserving Mrabet's e-mails, negligence itself does not support a finding of intent. *See id.*; *see also Applebaum v. Target Corp.*, 831 F.3d 740, 745 (6th Cir. 2016)

16

("A showing of negligence or even gross negligence will not do the trick [for sanctions under Rule 37(e)(2)]."); *Williford v. Carnival Corp.*, No. 17-21992, 2019 WL 2269155, at *12 (S.D. Fla. May 28, 2019) ("[The spoliating party] may have been reckless in not taking adequate steps to preserve the [ESI], and it may have even been grossly negligent. But that does not equate to an intent to deprive."); *Ungar v. City of New York*, 329 F.R.D. 8, 14 (E.D.N.Y. 2018) (finding that "mere negligence" no longer authorizes sanctions under Rule 37(e)(2)); *Rhoda v. Rhoda*, No. 14-6740, 2017 WL 4712419, at *2 (S.D.N.Y. Oct. 3, 2017) (finding that litigants seeking sanctions under Rule 37(e)(2) "have the burden of proving 'intent to deprive,' rather than ordinary or gross negligence").

Defendants also argue that the Court may infer an intent to deprive from One DC's actions in this matter. *See* Defs.' Mot. 11. For support, Defendants cite to *GN Netcom, Inc. v. Plantronics, Inc.*, No. 12-1318, 2016 WL 3792833, at *7 (D. Del. July 12, 2016), where "the court found bad faith when a company employee, in violation of company policy, intentionally deleted e-mails that should have been preserved." Defs.' Mot. 11. But in that case, the Court specifically noted that the employee had deleted e-mails, and had instructed others to do the same, "for purposes of protecting the business," not for "personal reasons." *GN Netcom*, 2016 WL 3792833, at *7. Here, Mrabet testified that she had used her One DC e-mail for personal communications, that she did not want One DC to access those communications, that she realized it was "too time-consuming" to delete personal communications one-by-one, and that she ultimately decided to "just delete the whole thing." Mrabet Dep. at 14:11–23. Unlike the employee in *GN Netcom*, Mrabet deleted her e-mails for personal reasons, and there is no evidence of intent to protect One DC. In fact, Mrabet deleted her e-mails amid an unrelated internal dispute concerning another One DC employee. *See* Mrabet Dep. 14:11–23, 8:19–9:5.

17

Defendants also cite to *O'Berry v. Turner*, No. 15-00064, 2016 WL 1700403, at *4 (M.D. Ga. Apr. 27, 2016), where the court found that "irresponsible and shiftless" behavior constituted intent to deprive. Defs.' Mot. 11. But unlike in *O'Berry*, where an employee printed, and eventually lost, a single paper copy of information that it should have preserved and that the employee lost track of, *see O'Berry* 2016 WL 1700403, at *4, here, One DC at least had some data restoration features in place for deleted e-mails, albeit with an unreasonably short recovery period, *see* Cook Decl. ¶ 14. And One DC promptly disclosed the loss of ESI, unlike the party in *O'Berry*, *see id.* Although the Court agrees that One DC exercised significantly inadequate record-keeping practices, this alone does not satisfy the stringent standard of Rule 37(e)(2).[4] And while Defendants cite to *Brown Jordan Int'l v. Carmicle*, No. 14-60629, 2016 WL 815827 (S.D. Fla. Mar. 2, 2016), for the proposition that "a court inferred the requisite intent when a terminated employee intentionally damaged his company-owned laptop immediately following his termination," Defs.' Mot. 11, that case involved a lawsuit between the company and the former employee, not an entirely unrelated lawsuit between the company and a third-party.

Defendants have established the gross negligence of One DC. But they have not pointed to anything beyond that. Without more, the Court is unwilling to infer intent from the record before it. Because the Court finds that One DC did not act with the requisite intent, it concludes that sanctions under Rule 37(e)(2) are not appropriate here.

---

[4] Defendants also cite to a multitude of other cases, all of which involve clearly intentional conduct distinguishable from the present case. *See, e.g.*, *Klipsch Grp, Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 625 (2d Cir. 2018) (employees manually deleted thousands of files and e-mails, used data-wiping software shortly before forensic examination, and updated operating systems during litigation period, which cleared out data regarding their program usage); *Beaven v. U.S. Dept. of Justice*, 622 F.3d 540, 554 (6th Cir. 2010) (Defendants destroyed folder of evidence that they knew would be needed as direct evidence to pursue claims).

### C. Monetary Sanctions Are Warranted Under Rule 37(e)(1)

Under Rule 37(e)(1), once a finding of prejudice is made, the court has broad discretion to impose sanctions but may order measures no greater than necessary to cure the prejudice. The remedy should fit the wrong to be redressed. Having determined that some sanction is appropriate in this case, the Court must now decide whether the specific sanctions sought by Defendants are warranted. The Court concludes that while some monetary sanctions are appropriate, outright dismissal of One DC from this case is not.

First, the Court finds that dismissal is inappropriate here. Contrary to Defendants' position that "the sanction of dismissal based on . . . prejudice is appropriate," Defs.' Reply 13, the sanctions available following a finding of intent under Rule 37(e)(2) are not available under Rule 37(e)(1), *see, e.g.*, *Moody*, 271 F. Supp. 3d at 431 ("Rule 37(e)(2) . . . reserves the harshest discovery sanctions . . . only for cases in which the court can 'fin[d] that the [spoliating] party acted with . . . intent.'" (alteration in original) (quoting *Jenkins*, 2017 WL 362475, at *17)); *CAT3*, 164 F. Supp. 3d at 501 (noting that intent is the "prerequisite for assessing sanctions" under Rule 37(e)(2)); *Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-9363, 2018 WL 1512055 (S.D.N.Y. Mar 12, 2018), at *7 (finding that sanctions enumerated under Rule 37(e)(2) are "not available" absent a showing of intent to deprive). Accordingly, this Court will not dismiss One DC's claims.[5]

---

[5] Even if the Court found that One DC acted with the requisite intent, it would not necessarily have to adopt any of the measures listed under 37(e)(2). *See* Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment ("The remedy should fit the wrong, and the severe measures authorized by [Rule 37(e)(2)] should not be used when the information lost was relatively unimportant or lesser measures such as those specified in subdivision (e)(1) would be sufficient to redress the loss."); *see also Moody*, 271 F. Supp. 3d at 432 (noting that "courts must be wary of issuing case-dispositive sanctions; such sanctions should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions" (internal quotation marks, alteration, and citation omitted)).

As explained above, upon finding prejudice to another party from the loss of ESI, the court may order measures "no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). In ordering these measures, "[m]uch is entrusted to the court's discretion." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Here, the prejudice to Defendants primarily consists of the additional time and efforts it incurred in obtaining information relevant to its standing defense, and litigating the spoliation issue. The Court concludes that this prejudice may be cured by monetary sanctions. *See Karsch v. Blink Health Ltd.*, No. 17-3880, 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) ("[I]f the . . . prejudice to the movant 'lies in the extra time and expense [it incurred] . . . [in] obtain[ing] relevant discovery from third parties, monetary sanctions may be a sufficient cure."). In the exercise of its discretion, the Court will therefore direct One DC to reimburse Defendants for the reasonable attorneys' fees and costs Defendants incurred in (a) preparing for and conducting the portions of the depositions of One DC's corporate representative and Yasmina Mrabet relevant to the spoliation issues, and (b) litigating the instant motion for sanctions.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for sanctions (ECF No. 94-2) is **GRANTED IN PART AND DENIED IN PART**. Defendants' motion for leave to file under seal (ECF No. 94) is **GRANTED**. Sanctions pursuant to Rule 37(e)(1) of the Federal Rules of Civil Procedure shall be imposed on Plaintiff One DC. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: July 18, 2019  RUDOLPH CONTRERAS
United States District Judge