UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ADRIANN BORUM,**<br>1318 SARATOGA AVENUE, APARTMENT 6,<br>NORTHEAST, WASHINGTON, D.C. 20018<br><br>**MARITA MOORE,**<br>1291 BRENTWOOD ROAD, APARTMENT 4,<br>NORTHEAST, WASHINGTON, D.C. 20018<br><br>*Individually and on Behalf of All Others*<br>*Similarly Situated*,<br><br>AND<br><br>**ORGANIZING NEIGHBORHOOD EQUITY IN**<br>**SHAW AND THE DISTRICT OF COLUMBIA,**<br>A NOT-FOR-PROFIT<br>614 S. STREET, NORTHWEST,<br>WASHINGTON, D.C. 20001<br><br>*Plaintiffs,*<br><br>v.<br><br>**BRENTWOOD ASSOCIATES, L.P.,**<br>7200 WISCONSIN AVENUE, SUITE 903,<br>BETHESDA, MARYLAND 20814<br><br>**EDGEWOOD MANAGEMENT CORPORATION,**<br>20316 SENECA MEADOWS PARKWAY,<br>GERMANTOWN, MARYLAND 20876<br><br>**MID-CITY FINANCIAL CORPORATION,**<br>20316 SENECA MEADOWS PARKWAY,<br>GERMANTOWN, MARYLAND 20876<br><br>*Defendants.* | **[PROPOSED] FIRST AMENDED**<br>**COMPLAINT**<br><br><br>Civil Action No. 16-cv-1723<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Nearly 150 low- and moderate-income families are facing displacement from their homes and community solely because of their family status and size. The owners and operators of Brookland Manor Apartments ("Brookland Manor") have deemed large families "not consistent with the creation of a vibrant new community." These families will be forcibly displaced from Brookland Manor because many three-bedroom and all four- and five-bedroom apartments that can accommodate them will be eliminated. As a result, larger families will be forced to find housing elsewhere in the District of Columbia or surrounding states, most likely in neighborhoods that lack the diversity of Brookland Manor and the surrounding areas, or will be rendered homeless. This redevelopment plan violates federal and District of Columbia fair housing laws that protect tenants from discrimination based on their "familial status."

Among those who face displacement from Brookland Manor are residents Adriann Borum and Marita Moore and their families. Because of the discriminatory effect that the proposed redevelopment will have on them and similarly situated families, Mses. Borum and Moore, joined by Organizing Neighborhood Equity in Shaw and the District of Columbia ("ONE DC"), bring this action under federal and state fair housing laws to challenge the discriminatory redevelopment of Brookland Manor and ensure an inclusive community of which they can be a part.

## INTRODUCTION

1.     Plaintiffs Adriann Borum, Marita Moore, and ONE DC seek to remedy violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), and the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.* ("DCHRA"). Plaintiffs Adriann Borum and Marita Moore bring this action on their own behalf and on behalf of more than one hundred similarly situated families who reside at the Brookland Manor property and will be displaced by Defendants' proposed redevelopment that will disproportionately harm households with minor children.

2.      In revising the federal fair housing law to include protections for families, Congress specifically recognized that "[t]he American dream of having the ability to provide safe and decent housing for one's family is quickly becoming just that—a dream. One-third of the homeless population nationwide are families, a proportion that is rising. Families, the backbone of American society, are turned away from houses and apartments simply because they have children." 134 Cong. Rec. H4603-02 (daily ed. June 22, 1988) (statement of Rep. Pepper).

3.      Plaintiffs Moore and Borum are residents of Brookland Manor, an affordable housing apartment complex located in Ward 5 of Northeast Washington, D.C., owned and operated by Brentwood Associates, L.P., Edgewood Management Corporation, and Mid-City Financial Corporation (collectively, "Defendants"). Ms. Moore rents and resides in a five-bedroom apartment unit, and Ms. Borum rents and resides in four-bedroom apartment unit at Brookland Manor. They live in their apartments with minor children and extended family members or with their minor children, and these larger-size apartments are necessary to accommodate their families.

4.      The families at Brookland Manor want to remain part of an inclusive community— one that welcomes families and people from all backgrounds—whether at Brookland Manor or a future redevelopment of the property. Unfortunately, a proposed redevelopment of Brookland Manor is threatening to displace hundreds of families who currently live at Brookland Manor and transform Brookland Manor into a community where families are unwelcome. As part of the proposed redevelopment of Brookland Manor, Defendants have adopted a policy or practice of eliminating the vast majority of larger apartment units, which will disproportionately cause the displacement of Plaintiffs and other families.

5.      As Defendants' redevelopment plans submitted to the District of Columbia Zoning Commission ("the Zoning Commission") make clear, Defendants intend to eliminate all four- and

five-bedroom apartment units and significantly reduce the number of three-bedroom apartments in the redevelopment. Whereas Brookland Manor currently has 209 apartments of three bedrooms or more, the redeveloped property would have zero four- or five-bedroom apartments and only 64 three-bedroom apartments. Based on Defendants' public filings, these large-size apartments are home primarily to families, and therefore families at Brookland Manor are far more likely to be displaced from their homes due to the redevelopment, as compared to non-families who do not have minor children in their households.

6.      If the redevelopment of Brookland Manor goes forward as planned by the Defendants, the families who live in larger-size units at Brookland Manor will struggle greatly to find affordable housing for their families due to the gross scarcity of affordable and available three-, four-, and five-bedroom apartments in the District of Columbia ("D.C."). Some of these families will become homeless. Others will be forced to move far away from the neighborhood in which they have lived for decades in order to find housing for their families.

7.      Many families at Brookland Manor have been a part of the community for generations. If forcibly displaced from the property and offered no replacement housing of their unit type in the redevelopment, numerous families at Brookland Manor will lose their long-standing support structures, including access to their jobs, assistive or social service-related programs, and their children's local schools.

8.      Defendants purport to justify their policy of eliminating and reducing larger-size units through a series of discriminatory statements against large families. Defendants have publicly stated that they will not build four- or five-bedroom apartment units in the redeveloped property because Defendants believe that allowing large families to reside in large units at apartment

complexes is unsuitable for such families, has an "adverse" impact on residential quality of life, and is inconsistent with the new community Defendants seek to create.

9.  Defendants have unlawfully discriminated against the families of Brookland Manor under the FHA and DCHRA by implementing a policy to eliminate all four- and five-bedroom units and significantly reduce three-bedroom units at the redeveloped property, and by making public statements that large families who reside in apartment complexes harm the quality of life of the residential community.

10.  As a result of Defendants' discriminatory policy, families at Brookland Manor will be disparately impacted by the redevelopment. The proposed redevelopment of Brookland Manor is threatening to displace hundreds of families and transform Brookland Manor into a community where families are unwelcome. For those displaced families able to find replacement housing in D.C., these families will likely be forced to migrate to neighborhoods that are majority-minority and/or areas where there is existing concentrated poverty. A 2015 study from the Urban Institute indicates that the larger-sized rental units these families need are extremely limited in number and largely restricted to Wards 7 and 8, which are affected by poverty more than any other area in D.C. and have high concentrations of African American and Latino communities. *See* Peter Tatian et al., Urban Institute, *Affordable Housing Needs Assessment for the District of Columbia, Phase II* (May 2015). The redevelopment's displacement of families will likely lead to more intensified patterns of segregation and/or concentrated poverty in D.C., results that will adversely impact these families by limiting their access to opportunities and integrated communities. And for those families who are unable to find housing, the redevelopment will bring these families closer to homelessness.

11.     If forcibly displaced from the property and offered no replacement housing of their unit type in the redevelopment, numerous families at Brookland Manor will lose access to long-standing support structures, including access to jobs, assistive or social service-related programs, and local schools. The harm to these families is difficult to quantify, and as a D.C. Fiscal Policy Institute report has observed, "[s]table . . . housing is a critical foundation to stable families and communities." Wes Rivers, D.C. Fiscal Policy, *Going, Going, Gone: DC's Vanishing Affordable Housing* 5 (March 12, 2015).

12.     These families have suffered and will continue to suffer substantial injury unless this Court enjoins Defendants from moving forward with its discriminatory redevelopment plan. In addition, so long as Defendants' FHA and DCHRA violations continue, ONE DC will continue to suffer injury by having to engage in activities to identify and combat Defendants' discriminatory conduct, requiring ONE DC to divert its scarce organizational resources and frustrating its mission to create and preserve racial and economic equity in the District.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as Plaintiffs assert claims under a federal civil rights statute, the Fair Housing Act, 42 U.S.C. § 3601.

14.     This court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' District of Columbia law claims, which are so related to Plaintiffs' federal claims that they form part of the same case or controversy.

15.     Declaratory and injunctive relief is sought, as authorized by 28 U.S.C. §§ 2201-02.

16.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this action occurred in this district.

## PARTIES

17.     Plaintiff Adriann Borum is a Brookland Manor tenant residing at 1318 Saratoga Ave. NE, Apt. 6, Washington, D.C. 20018 with her minor children. Ms. Borum lives in a four-bedroom unit at Brookland Manor.

18.     Plaintiff Marita Moore is a Brookland Manor tenant residing at 1291 Brentwood Road NE, Apt. 4, Washington, D.C. 20018 with her two adult sisters and her sister Evelyn's two minor grandchildren, one of whom Evelyn has legally adopted.  Ms. Moore lives in a five-bedroom unit at Brookland Manor.

19.     Plaintiff Organizing Neighborhood Equity in Shaw and the District of Columbia ("ONE DC") is a community-based non-profit organization with its principal place of business at 614 S Street NW, Washington, D.C. 20001. ONE DC seeks to create and preserve racial and economic equity in the District. As part of its broader mission, ONE DC's Right to Housing campaign supports long-time District of Columbia residents by advocating for safe and affordable housing and organizing, educating, and training tenants to resist punitive and harmful displacement tactics.

20.     [RESERVED.]

21.     Defendant Mid-City Financial Corporation ("Mid-City") is incorporated in the District of Columbia and has its principal place of business at 20316 Seneca Meadows Parkway, Germantown, MD 20876. Mid-City owns the Brookland Manor property.

22.     Defendant Brentwood Associates, LP ("Brentwood Associates") is a limited partnership with its principal place of business at 7200 Wisconsin Avenue, Suite 903, Bethesda, MD 20814. Brentwood Associates manages Brookland Manor's federally assisted (*i.e.*, affordable) housing contracts with federal housing authorities, described *infra* at paragraphs 27 and 34.

23.    "Brookland Manor Apartments" is a registered trade name of Brentwood Associates, LP.

24.    Defendant Edgewood Management, Corporation ("Edgewood") is incorporated in Maryland and has its principal place of business at 20316 Seneca Meadows Parkway, Germantown, MD 20876. Edgewood manages numerous rental complexes throughout the District of Columbia, Virginia, and Maryland, including the residential property known as Brookland Manor.

25.    Upon information and belief, when Defendant Edgewood sends written correspondence to tenants at Brookland Manor, it uses and conducts business under the name Brookland Manor Apartments.

## FACTUAL ALLEGATIONS

### A.  Brookland Manor Property

26.    Brookland Manor is an apartment complex situated on twenty acres of land at the intersection of Rhode Island Avenue, NE and Montana Avenue, NE, Washington, D.C.

27.    Since 1977, Brentwood Associates has managed Brookland Manor pursuant to two U.S. Department of Housing and Urban Development Project-Based Section 8 Housing Assistance Payment contracts ("HUD HAP contracts" or "project-based Section 8").

28.    Upon information and belief, Mid-City has oversight over Brentwood Associates' management of the Brookland Manor HUD HAP contracts.

29.    Brentwood Associates additionally accepts District of Columbia Housing Authority ("D.C. Housing Authority") administered tenant-based Housing Choice Vouchers ("Vouchers") for residents on the property.

30.    The Brookland Manor property currently includes 535 apartment units that range in size from one- to five-bedroom apartments.

31.     Many families who reside at Brookland Manor have a long history in the community, with family members born and raised on the property.

32.     As of the date this action was instituted on August 25, 2016, the configuration of the Brookland Manor property was broken down into the following bedroom size units:

| Unit Type | Number of Units |
|-----------|-----------------|
| 1BR/1BA | 280 |
| 2BR/1BA | 46 |
| 3BR/1BA | 75 |
| 4BR/2BA | 113 |
| 5BR/2BA | 21 |

33.     373 units at Brookland Manor are governed by two HUD HAP contracts.

34.     As of April 2015, 490 of the 535 apartment units at Brookland Manor were occupied. In addition to the 373 apartments governed by HUD HAP contracts, 117 of these apartments available to tenants were "market" rate units that Defendants maintain at affordable rents and for which the majority of tenants qualify for Vouchers. A minority of the residents at Brookland Manor pay full, market-rate rent without public assistance. A small number of apartments are used by Defendants to house management and security offices.

35.     Brookland Manor publicly reported the demographics of its residents to the D.C. Zoning Commission in June 2015. At that time, 486 households continued to reside in apartments at the property.

36.     As of June 2015, minor children resided in 253 of these 486 households.

37.     As of June 2015, 116 households resided in four- and five-bedroom apartment units. An additional 67 households resided in three-bedroom units. Of the 183 households in apartment units of three or more bedrooms, 149 households included minor children and therefore qualify as "families" under the FHA and DCHRA.

38.     D.C. Housing Authority occupancy standards mandate that these large families cannot reside in smaller apartment units. *See* D.C. Mun. Regs. tit. 14, § 5205.3 (2012).

39.     Under these occupancy guidelines, Plaintiffs Borum and Moore, as well as many similarly situated families that currently live at Brookland Manor, including many ONE DC members, require four- or five-bedroom apartments to accommodate their families.

40.     Under these occupancy guidelines, many similarly situated families who currently live at Brookland Manor, including many ONE DC members, require at least three- bedroom apartments to accommodate their families.

41.     If forced to relocate to smaller units based on Defendants' eradication of units of adequate size to safely house these families pursuant to D.C. Housing Authority occupancy standards, these families would suffer a deprivation of privacy and safe living conditions.

42.     Brookland Manor is one of very few residences in Northeast Washington, D.C. that offers affordable three-, four-, and five-bedroom apartments.

### B.   Defendants' Zoning Commission Disclosures

43.     The D.C. Municipal Regulations ("DCMR") set forth the rules governing the PUD process. Specifically, the DCMR provides that in the case of a two-stage PUD, the first stage involves, among other things, a review of the "appropriateness, character, scale, mixture of uses, and design of the uses proposed," as well as of "the compatibility of the proposed development with city-wide, ward, and area plans of the District of Columbia, and other goals of the PUD process." D.C. Mun. Regs. tit. 11, § 2402.2.

44.     On October 1, 2014, Mid-City filed an application for a First-Stage Planned Unit Development and Related Zoning Map Amendment (the "First-Stage PUD") with the Zoning Commission.

45.     In conjunction with the First-Stage PUD, Defendants provided a detailed overview of their proposed redevelopment plan for Brookland Manor. This overview included a proposal that identifies the number of different sized apartment units that would be available at the property after the redevelopment.

46.     As the Defendants' First-Stage PUD application states, the redeveloped property would have zero four- or five-bedroom apartment units.

47.     As the Defendants' First-Stage PUD application states, the redeveloped property would have only 64 three-bedroom apartment units, as compared to the 75 three-bedroom units that are currently available for residents at Brookland Manor.

48.     Defendants' proposed redevelopment will include 373 designated affordable housing units out of the total 1,760 units of which 1,646 will be apartments. Defendants claim that these affordable units will be preserved through renewal of the current HUD HAP contracts.

49.     Defendants have not informed the Zoning Commission if any of the remaining 64 three-bedroom units on the redeveloped property will be affordable.

50.     According to Defendants' submissions to the Zoning Commission, 183 households—of which 149 are "families" as defined in the FHA and DCHRA—currently reside in three-, four-, or five-bedroom units at Brookland Manor. The vast majority of families residing in four- and five-bedroom units at Brookland Manor could not adequately house their families in a unit with three or fewer bedrooms.

51.     Even if these families could safely reside in three-bedroom units without violating D.C. Housing Authority occupancy standards, an adequate total number of three bedroom apartments will not be available to accommodate them. Under the current redevelopment plan, all

183 households currently living in three-, four-, or five-bedroom apartments at Brookland Manor would be forced to vie for 64 three-bedroom units at the redeveloped property.

52.     On information and belief, many of these three-bedroom units will not be affordable, further reducing the available housing for larger families.

53.     At a minimum, according to the demographic information submitted to the D.C. Zoning Commission in 2015, the redevelopment will forcibly displace 119 households who reside in larger-size apartments at Brookland Manor.

54.     On May 11, 2015, Mid-City's Executive Vice President Michael Meers testified before the Zoning Commission. Meers testified to the Zoning Commission that "all residents in good standing shall have the opportunity to return [to the redeveloped property]. And when relocations do occur ownership will pay for all packing and moving expenses, and will make sure that it's done in a first class manor [sic] with as few inconveniences as possible." Meers further testified that Defendants were "committed that anyone with a [D.C. Housing Authority] Housing Choice Voucher . . . will have the opportunity to remain."

55.     Citing a public report focused on issues of housing redevelopment in D.C., however, Meers additionally testified that Defendants "'do[] not intend that replacement units will mirror the demolished units by bedroom size. . . . Nor can the mix of new housing be built to fit the households in the current population.'" Rather, Meers testified that Defendants would "work with . . . families" that cannot be accommodated in the redevelopment "to determine what their needs and preferences may be."[1]

---

[1] Similarly, Edgewood organized and held a meeting on March 4, 2015 at the Israel Baptist Church. Upon information and belief, with the express or implied consent of Brentwood Associates, Edgewood used the registered trade name "Brookland Manor Apartments" in written notices to tenants about this meeting. At this meeting, Mid-City informed tenants of Brookland Manor, including Plaintiffs Moore and Borum, that all tenants would have the opportunity to return to

56.     The Zoning Commission approved Defendants' First-Stage PUD on June 29, 2015 and its subsequent order became final on November 6, 2015.

57.     Based on the approval of a first-stage PUD, a PUD applicant may file an application for a second-stage PUD approval. One a second-stage application is approved, Defendants may immediately seek building permits and begin demolition. D.C. Mun. Regs. tit. 11, §§ 2408.1, 2408.8, 2408.9; *see also id.* § 2409.1.

58.     Defendants submitted an application for the second-stage PUD approval process, which was initially approved on May 22, 2017.  This approval was subject to a motion for reconsideration, which was denied on April 30, 2018.  A tenant at Brookland Manor has filed an appeal of the approval of the second-stage PUD, and that appeal remains pending before the District of Columbia Court of Appeals.

### C.   Defendants' Statements About and Actions Against Larger Families

59.     Defendants have stated publicly—including in their Zoning Commission submission and at related hearings, in correspondence to Brookland Manor tenants, and in meetings with the same tenants—that Defendants' planned redevelopment does away with or dramatically reduces larger size apartment units because Defendants do not want larger families to reside at the redeveloped property.

60.     For example, on April 10, 2015, Mid-City made the following statement to the Zoning Commission: "Communities and organizations throughout the country are in agreement that housing very large families in apartment complexes is significantly impactful upon the quality

---

Brookland Manor. However, at the same meeting, Mid-City stated that it would not build any four- or five-bedroom units.

of life of households as well as their surrounding neighbors. Therefore, the Applicant does not propose to construct four or five bedroom units in the project."

61.     Further, in a December 2014 letter to the Brookland Manor/Brentwood Village Residents Association, Mid-City stated that "practical experience has demonstrated that [four or five bedroom apartments are] not an ideal housing type for larger families and there are adverse impacts on the remainder of the community."

62.     Similarly, in a January 20, 2015 letter to all Brookland Manor residents, Mid-City stated that "the new community will not include new 4 and 5 [bedroom] units as these large units are not consistent with the creation of a vibrant new community."

63.     Defendants have not yet obtained finality on the necessary second-stage approval for their redevelopment plan from the Zoning Commission (an appeal of the Zoning Commission order remains pending). Nonetheless, Defendants are already engaging in efforts to force larger families to move away from Brookland Manor. These ongoing actions will result in disrupting these families' support structure and eliminating their current housing.

64.     As early as July 2015, Edgewood sent letters to leaseholders with large families stating or suggesting that, due to the redevelopment, they must relocate from their homes starting in August 2015. These tenants were informed by Edgewood that households residing in HUD HAP contract units would move first, followed by Voucher holder households, and finally by market-rate residents.

65.     In October 2015, Edgewood sent letters to large families who use Vouchers to pay their rent, indicating that they had to move out of their homes. These letters stated or suggested that the transfer was required by the D.C. Housing Authority, even though the decision to transfer to another unit is a voluntary one that only the tenant or family is entitled to make.

66.     Edgewood has also told leaseholders with larger families that there are no available alternative larger-size apartment units at the property and has required many larger households to downsize to inappropriately small units or break up their families into multiple units.

67.     Upon information and belief, residents of Brookland Manor who do not require three-, four-, or five-bedroom apartments have not received similar letters from Edgewood to encourage them to leave their current units or have not been forced to relocate apartments in order to facilitate Defendants' redevelopment plans.

68.     Upon information and belief, Edgewood used the name "Brookland Manor Apartments" in its communications with larger families about the alleged need for relocation. Upon further information and belief, Brentwood Associates knew or approved use of its registered trade name when communicating with larger families about the alleged need for them to relocate off the property.

### D.   Disparate Impact of the Redevelopment on Families

69.     Defendants' proposed redevelopment, which eliminates all four- and five-bedroom apartments and significantly reduces the number of three-bedroom apartments, will adversely affect and have a substantial disparate impact on families who currently live at Brookland Manor.

70.     In 2015, in conjunction with the First-Stage PUD, Mid-City publicly disclosed a range of demographic information about the residents who live in each of the 486 occupied units at Brookland Manor, including the relevant number of bedrooms in each unit and the ages of the residents in each unit. That information is attached to the Complaint as Exhibit A ("Demographics Disclosure").

71.     In the Demographics Disclosure, Mid-City identified 486 occupied units at Brookland Manor, including 261 one-bedroom units, 42 two-bedroom units, 67 three-bedroom units, 99 four-bedroom units, and 17 five-bedroom units.

72.     Among the 486 occupied units at Brookland Manor, Mid-City identified 253 units that are occupied by "families" within the meaning of the FHA and DCHRA, i.e., those who have one or more minor children living in the household.

73.     Defendants' own public filings demonstrate that larger units (three-, four-, and five-bedroom units) are far more likely to be occupied by families than the smaller units at Brookland Manor (one- and two-bedroom units).

74.     For example, only 104 of the 303 (34.3%) one- and two-bedroom units at Brookland Manor are occupied by families. In comparison, 149 of the 183 (81.4%) three-, four-, and five-bedroom units at Brookland Manor are occupied by families.

75.     The following chart identifies for each bedroom unit size the number of occupied units at Brookland Manor, the number of such units that are occupied by families and the percentage of such units that are occupied by families.

| Unit Size | # Occupied Units at Brookland Manor | # Units Occupied by Families | % of Unit Type Occupied by Families |
|-----------|-------------------------------------|------------------------------|-------------------------------------|
|           |                                     |                              |                                     |
| 1 Bedroom | 261 | 83 | 31.80% |
| 2 Bedrooms | 42 | 21 | 50.00% |
| 3 Bedrooms | 67 | 47 | 70.15% |
| 4 Bedrooms | 99 | 87 | 87.88% |
| 5 Bedrooms | 17 | 15 | 88.24% |
| Total | 486 | 253 | |

76.     Because families are far more likely than non-families to currently live in three-, four-, or five-bedroom units at Brookland Manor, and because most of the households who live in three-, four-, and five-bedroom units will be displaced from Brookland Manor under Defendants' redevelopment plan, the redevelopment will have a severely disparate impact on families. In other words, families at Brookland Manor are far more likely than non-families to be adversely impacted by the proposed redevelopment.

77.     Based upon Defendants' public filings in connection with the first-stage PUD process, 149 of the 253 (58.89%) families at Brookland Manor will be subject to being displaced by the proposed redevelopment, whereas only 34 of the 233 (14.59%) non-families at Brookland Manor will be subject to being displaced by the proposed redevelopment.

78.     The following chart identifies the number and percentage of families and non-families who will be adversely affected by the proposed redevelopment:

|  | Non-Families | Families |
|---|---|---|
| # Units Overall in Brookland Manor | 233 | 253 |
| # Units Adversely Affected (3, 4 or 5 bedroom units in Brookland Manor) | 34 | 149 |
|  | 14.59% | 58.89% |

79.     Accordingly, families are more than four times as likely as non-families to be adversely affected by the proposed redevelopment and elimination or reduction of their respective unit types.

## INDIVIDUAL ALLEGATIONS

**Marita Moore**

80.     Plaintiff Marita Moore has resided in a five-bedroom unit at Brookland Manor for since at least 1974.

81.     Ms. Moore lives with her 67-year-old sister Evelyn, her 61-year-old sister Melinda, Evelyn's 9-year-old grandson Rajon (whom Evelyn has legally adopted), and Evelyn's 12-year-old granddaughter Chyler.

82.     Until the fall of 2017, Ms. Moore's 19-year-old niece, Denver, also resided in the apartment full-time. Denver is currently a college student, but returns to reside in Ms. Moore's Brookland Manor apartment during breaks from school.  Denver plans to return to full-time residence at Ms. Moore's Brookland Manor apartment upon graduation.

83.     Ms. Moore previously suffered a brain tumor and glaucoma that resulted in a severe loss of eyesight.  Ms. Moore's sister Melinda, who resides in the apartment, currently serves as a live-in aide for Ms. Moore and helps her care for herself and maintain the household.

84.     Ms. Moore's sister Evelyn also suffers from a serious medical condition that requires care and assistance from Ms. Moore and her sister Melinda.  Ms. Moore's sister Evelyn would find it impossible to care for herself or her grandchildren without assistance from her sisters.

85.     Ms. Moore and her family regularly visit and receive treatment at medical centers in the Brookland Manor neighborhood, including Fort Lincoln Family Medicine, Providence Hospital, and Unity Health Care (Brentwood Health Center), as well as nearby pharmacies.

86.     Ms. Moore's household receives housing assistance through the project-based Section 8 program at Brookland Manor.

87.     Due to the ages and genders of the members of her family, the size of her family, and the special needs of her family members, Ms. Moore requires at least a five-bedroom apartment.

88.     If the redevelopment is implemented as proposed, Ms. Moore and her family will be involuntarily displaced from the family's apartment and will not be able to reside at the redeveloped property.

89.     Ms. Moore will have an extremely difficult time finding an adequately sized apartment in D.C. for her family because of the scarcity of affordable housing of her unit type.

90.     Ms. Moore has already witnessed how Defendants' conduct has forced other families at Brookland Manor to move due to the redevelopment.

91.     Ms. Moore's family, which has resided at Brookland Manor for more than forty-five years and has come to rely on the schools, medical centers, pharmacies, and grocery stores in

the Brookland Manor neighborhood, will be negatively impacted if they are involuntarily displaced from the property and are unable to find appropriate substitute housing in the area of Brookland Manor.

92.     [RESERVED.]

93.     [RESERVED.]

**Adriann Borum**

94.     Plaintiff Adriann Borum grew up on the Brookland Manor property. She has resided in her current four-bedroom unit, or other units on the Brookland Manor property, for more than 25 years.

95.     Ms. Borum lives with her children Donta Borum, Trayvon Borum, Demante Borum, Garey Freeman Jr., and Taylor Borum, ages 24, 22, 21, 16, and 10, respectively.

96.     All of Ms. Borum's children have lived at Brookland Manor since they were born.

97.     Ms. Borum has been a member of the neighborhood Israel Baptist Church for over 18 years, and depends on the membership for religious and communal support.

98.     Ms. Borum's 10-year-old daughter, Taylor, attends an after school program at the Boys and Girls club, located near Brookland Manor at 2500 14th St NW, Washington, DC 20009. Ms. Borum depends on this program to provide afterschool care for her young child while she is at work.

99.     Ms. Borum's school-age children all attend schools in close proximity to Brookland Manor. Gary Freeman Jr. attends Kingsman Academy public Charter School, which is a short drive from Brookland Manor. Taylor Borum attends Noyes Education Campus, which is a short walk from Brookland Manor.

100.    Ms. Borum's sons participate in recreational activities and programs at the neighboring Brentwood Recreational Center.

101.    Ms. Borum's place of employment is within walking distance of Brookland Manor. Ms. Borum chose this place of employment in order to reduce her commute time and allow her to spend more time caring for her children.

102.    Ms. Borum is a participant in the project-based Section 8 program at Brookland Manor.

103.    Due to the ages of her children, the size of her family, and the needs of her family, Ms. Borum requires at least a four-bedroom apartment.

104.    If the redevelopment moves forward as planned, Ms. Borum and her family will be involuntarily displaced from their apartment.

105.    Ms. Borum will have an extremely difficult time finding an adequately sized apartment in D.C. for her family because of the scarcity of affordable housing of her unit type.

106.    Ms. Borum has already witnessed how Defendants' conduct has forced other families at Brookland Manor to move due to the redevelopment, including families who have moved off the property.

107.    Ms. Borum's family, who attends school and other programs in close proximity to Brookland Manor, will be negatively impacted if they are involuntarily displaced from the property.

**ONE DC**

108.    Plaintiff ONE DC is a community-based organization comprised of members who include tenants of affordable housing properties that are seeking to avoid displacement, preserve affordable housing, ensure fair housing, and further equitable development in D.C.

109.     ONE DC brings this action on its own behalf and as a representative of its members, including members who are residents of Brookland Manor and have minor children, whose fair housing rights are being violated and who wish to ensure an equitable redevelopment of the Brookland Manor property that preserves affordable housing and maintains a family-inclusive community.

110.     The participation of individual ONE DC members in the action is not required to resolve the claims at issue or to formulate appropriate relief.

111.     ONE DC also brings this case because Defendants' discriminatory conduct has damaged ONE DC by frustrating its mission of creating and preserving racial and economic equity in D.C. for all and by causing ONE DC to divert scarce organizational resources that it would have used to raise community awareness of the structural causes of poverty and injustice, increase membership and the organization's political influence around issues of racial and economic equity, and invest in members' empowerment and training in methods for building ownership and equity with respect to employment and housing, among other goals.

112.     ONE DC has a limited operational budget and only two full-time staff members and an intern. Accordingly, when ONE DC takes on a new organizing project, this project necessarily diverts both money and human resources from ONE DC's other organizational activities and community initiatives.

113.     Instead of providing services to its members and the community, ONE DC has been forced to divert its scarce resources to identifying, investigating, and combating Defendants' discriminatory policies and practices, and to counseling, organizing, and reassuring tenants who have been forcibly moved or have feared imminent displacement under Defendants' proposed redevelopment plan of Brookland Manor.

114.    On or around July 2014, ONE DC received reports from residents and its own organizers that Defendants planned to redevelop Brookland Manor through a PUD process and that tenants were fearful of the possible outcomes of such a redevelopment, including tenant displacement and the loss of their current affordable housing.

115.    Given these reports, ONE DC was compelled to further investigate the tenants' concerns about the redevelopment.

116.    As a result of its investigation, in 2014 and 2015, ONE DC undertook organizing efforts to investigate and resist the redevelopment of Brookland Manor, which led to a series of "Outreach Days" at the property. ONE DC conducted six Outreach Days in 2015.

117.    These Outreach Days were paired with phone calls to tenants, door knocking and canvassing efforts at the property, and a series of tenant association and related tenant-focused meetings and gatherings. ONE DC appeared before the Tenant's Association on April 23, 2015 and has continued to remain involved with the Tenant's Association monthly meetings, making frequent appearances at these and other redevelopment-related meetings organized for residents.

118.    Because of the impact of the redevelopment, ONE DC has redirected and continues to redirect significant resources to "crisis organizing" and tenant counseling and development-resistance training efforts, work that would not have been done in the absence of Brookland Manor's proposed redevelopment and efforts to force families to vacate their units.

119.    ONE DC has also allocated resources to meet with other organizations regarding Brookland Manor, including members of the D.C. organized labor community.

120.    ONE DC has participated in various government-related meetings and hearings to raise awareness about the proposed redevelopment of Brookland Manor and how it will unfairly impact families.

121.    As of July 28, 2016, ONE DC has diverted approximately 640 hours of its staff members' time to identify and combat Defendants' discriminatory conduct through outreach, organizing, advocacy and tenant counseling efforts, among other activities. ONE DC will continue to divert it scarce resources to identify and combat such discrimination until Defendants cease their violations of the FHA and the DCHRA.

## VI. CLASS ALLEGATIONS

122.    Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, or in the alternative as a hybrid class under Rule 23(a) and 23(b)(2) and (3) or under Rule 23(a) and (b)(2) and (c)(4), on behalf of the following class:

> All households who reside or have resided at Brookland Manor in a
> three-, four-, or five bedroom unit with one or more minor child, and
> (i) have been displaced from a three-, four-, or five-bedroom unit at
> Brookland Manor since October 1, 2014 (the date that Defendants
> proposed their First Stage PUD to the Zoning Commission), or (ii)
> are at risk of being displaced from a three-, four-, or five-bedroom
> unit at Brookland Manor.

123.    Plaintiffs seek permanent injunctive relief for all members of the proposed Class so that all members of the proposed Class will have a future opportunity to reside at Brookland Manor or the redeveloped property in a three-, four-, or five-bedroom unit. Plaintiffs, further seek damages for individuals who have already been displaced from a three-, four-, or five-bedroom unit at Brookland Manor since October 1, 2014 or are so displaced at a later date, insofar as their displacement causes distinct and additional harms separate from their loss of housing, including

but not limited to monetary costs related to moving services or apartment brokerage fees and increased transportation costs to school and work.

124.    This action is properly maintainable as a class action, because the requirements of Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure can be satisfied.

125.    The class is so numerous that joinder of all members is impracticable. Upon information and belief, at least 149 families in Brookland Manor are members of the Proposed Class.

126.    There are numerous questions of law and fact that are common to each member of the Proposed Class.

127.    Defendants' proposed redevelopment will have the same impact on all class members, as Defendants' uniform policy and practice of eliminating four- and five-bedroom units and significantly reducing three-bedroom units as part of its redevelopment of the property will make the property unavailable to the class members. In particular, common questions of law and fact that apply to each class member include, but are not limited to:

(a)    Whether Defendants' policy or practice of eliminating four-, and five-bedroom units and reducing the number of three-bedroom units will make class members' housing unavailable by impacting class members' ability to remain residents of Brookland Manor once it is redeveloped;

(b)    Whether Defendants' decision to eliminate four-, and five-bedroom apartments and reduce the number of three-bedroom units from the Brookland Manor redevelopment has a disparate impact on families at Brookland Manor;

(c)    Whether Defendants have a legitimate non-discriminatory reason for their policy or practice;

(d)     Whether Defendants could have adopted an alternative policy or practice that would have had a less discriminatory impact on families.

(e)     Whether Defendants' statements regarding the impact of large families on the quality of life of tenants who reside in apartment buildings and inconsistency of housing larger families with the creation of vibrant new community reveals a preference to not provide housing to families in violation of the FHA and the DCHRA.

(f)     Whether Defendants' actions and statements violate § 3604(a) and (c) of the Fair Housing Act and the equivalent provisions of the DCHRA.

(g)     Whether Defendants may be enjoined from proceeding with their proposed redevelopment that will have an unjustified disparate impact on families.

128.    Members of the Proposed Class have been injured and will be injured by Defendants' failure to comply with the FHA and DCHRA.

129.    The claims of the named Plaintiffs are typical of the claims of the other putative Class Members they seek to represent. Plaintiffs challenge a single policy and practice of Defendants through which Defendants have chosen to purposefully eliminate four- and five-bedroom units in the redevelopment and significantly reduce the affordable, three-bedroom units as part of the redevelopment of Brookland Manor, as well as to justify the instant policy or practice through a series of discriminatory statements made against families. Plaintiffs' civil rights were accordingly violated in the same manner as all other Class Members, who were subjected to Defendants' same policy or practice and Defendants' same discriminatory statements.

130.    The named Plaintiffs will fairly and adequately protect the interests of the proposed Class. The named Plaintiffs are aware of no conflict with any other member of the Class. The

named Plaintiffs understand their obligations as proposed Class Representatives, have already taken steps to fulfill them, and are prepared to continue to fulfill their duties as proposed class representatives.

131.    Defendants have no unique defenses against the named Plaintiffs that would interfere with them serving as Class Representatives.

132.    Plaintiffs' counsel are experienced in federal court class-action litigation, including in the area of fair housing law.

133.    This action may be maintained as a class action pursuant to Rule 23(b)(3) of because the questions of law and fact common to members of the class predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

134.    This action may alternatively be maintained as a hybrid class under Rule 23(b)(2) and 23(b)(3), in which the Court certifies a Rule 23(b)(2) class with respect to the claims for injunctive or declaratory relief and a Rule 23(b)(3) class with respect to the monetary claims, and grants the right to opt out to class members regarding monetary relief. Defendants' actions in uniformly eliminating four- and five-bedroom units and significantly reducing the number of affordable, three-bedroom units through the redevelopment applies generally to the members of the Class. Final injunctive or declaratory relief, therefore, is appropriate with respect to the class as a whole. The proposed Class can satisfy Rule 23(b)(3)'s requirements of predominance and superiority, and to the extent that some of the members of the Proposed Class have damages, their claims for damages can be adjudicated consistent with Rule 23(b)(3).

135.    Finally, this action may alternatively be maintained as a hybrid class pursuant to Rule 23(b)(2) and (c)(4). Because final injunctive or declaratory relief is appropriate with respect

to the class as a whole, the proposed Class may seek injunctive and declaratory relief pursuant to Rule 23(b)(2). In addition, the Court may certify an issue class pursuant to Rule 23(c)(4), which states that "an action may be brought or maintained as a class action with respect to particular issues," while resolving on an individual basis the claims for damages that some of the proposed Class Members may have.

136.    By resolving the common issues described herein through a single class proceeding, each member of the Class will receive a determination of whether Defendants' policy or practice of eliminating four- and five-bedroom units and reducing the number of three-bedroom units makes their housing unavailable and has a disparate impact on families in violation of the FHA and DCHRA, whether Defendants' statements revealed a discriminatory preference in violation of the FHA and DCHRA, and whether Defendants have a legal obligation to not adversely affect families in redeveloping Brookland Manor.

137.    Members of the Proposed Class do not have a significant interest in controlling the prosecution of separate actions, as a single injunction will provide all Class Members the primary relief that they seek in this litigation.

138.    There has been no prior litigation involving the redevelopment of Brookland Manor. Subsequent to the filing of this case, an appeal of the second-stage PUD approval has been filed in the District of Columbia Court of Appeals.

139.    There are no difficulties in managing this class as a class action.

## COUNT 1: DISPARATE IMPACT DISCRIMINATION
### (Familial Status Discrimination under the Fair Housing Act ("FHA"), 42 U.S.C. § 3604(a))

140.    Plaintiffs incorporate by reference the allegations in all of the preceding paragraphs.

141.    Plaintiffs Moore and Borum bring this claim on behalf of all members of the proposed Class. Plaintiff ONE DC brings this claim on its own behalf and on behalf of its members who currently reside in three-, four-, or five-bedroom units at Brookland Manor.

142.    The Fair Housing Act makes it unlawful, among other practices, to "otherwise make unavailable or deny[] a dwelling," to an individual on the basis of familial status. 42 U.S.C. § 3604(a).

143.    Defendants violated the FHA, 42 U.S.C. § 3604(a), by creating, proposing, undertaking implementation of a redevelopment plan that will reduce the number of three-bedroom apartment units and eliminate all four- and five-bedroom apartment units, and thus will have a disparate impact or disproportionate effect on families at Brookland Manor.

144.    Section 3602(k) of the FHA defines familial status as one or more individuals under the age of 18 being domiciled with (1) a parent, legal custodian, or (2) the designee of such parent or legal custodian, with the written permission of such parent or legal custodian.

145.    Under the FHA, "person" is defined to "include[] one or more individuals . . . associations . . . [or] unincorporated organizations." 42 U.S.C. § 3602(d).

146.    Defendants, individually and through their agents, adopted a redevelopment plan that significantly reduces the number of three-bedroom units and entirely eliminates four- and five-bedroom units at Brookland Manor, thus making housing unavailable to families residing in these units.

147.    The reduction in three-bedroom units and elimination of four- and five-bedroom units will have a disparate impact on families who live at Brookland Manor based on their familial status.

148.     Defendants injured Plaintiffs Borum, Moore, and other members of the Proposed Class, as well as ONE DC, by committing these discriminatory housing practices. Thus, Plaintiffs Moore and Borum, similarly situated members of the Proposed Class, and ONE DC are "aggrieved persons" within the meaning of the FHA, 42 U.S.C. § 3602(i).

149.     By reason of Defendants' unlawful acts or practices, Plaintiffs Borum, Moore, and all members of the Proposed Class, including ONE DC members, have suffered violations of their civil rights. Most, if not all, members of the Proposed Class, will also suffer deprivation of the full use and enjoyment of their dwellings, and will suffer wrongful eviction and displacement from their dwellings and community.

150.     By reason of Defendants' unlawful acts or practices, Plaintiff ONE DC has suffered direct harm by being forced to reallocate significant financial resources and man power to community organizing and training efforts intended to empower Brookland Manor tenants.

### COUNT 2: DISPARATE IMPACT DISCRIMINATION
### (Familial Status Discrimination under the District of Columbia Human Rights Act ("DCHRA") (D.C. Code §§ 2-1402.21(a)(1), 2-1402.68)

151.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

152.     Plaintiffs Moore and Borum bring this claim on their own behalf and on behalf of all members of the Proposed Class. Plaintiff ONE DC brings this claim on its own behalf and on behalf of its members who live in three-, four-, or five-bedroom units at Brookland Manor.

153.     The DCHRA makes it an unlawful discriminatory practice to "refuse or fail to initiate or conduct any transaction in real property" when such refusal is "wholly or partially for a discriminatory reason based on the actual or perceived[] familial status . . . of any individual." D.C. Code § 2-1402.21(a).

154.    The DCHRA specifies that "[a]ny practice which has the effect or consequence of violating any of the provisions of this chapter [Chapter 14. Human Rights] shall be deemed to be an unlawful discriminatory practice." D.C. Code § 2-1402.68.

155.    Defendants injured Plaintiffs and Proposed Class members in violation of the DCHRA, D.C. Code §§ 2-1402.21(a) & 2-1402.68, by creating, proposing, and undertaking implementation of a redevelopment plan that will reduce the number of three-bedroom apartment units and eliminate four- and five-bedroom apartment units, resulting in a disparate impact or disproportionate effect on families who live at Brookland Manor.

156.    The DCHRA defines familial status as "one or more individuals under 18 years of age being domiciled with: (1) a parent or other person having legal custody of the individual; or (2) the designee, with written authorization of the parent, or other persons having legal custody of individuals under 18 years of age." D.C. Code § 2-1401.02(11A). Further, "[t]he protection afforded against discrimination on the basis of familial status [] applies to any person who is pregnant or in the process of securing legal custody of any individual under 18 years of age."

157.    The DCHRA defines "person" to include any "individual," "association," or "organization." D.C. Code § 2-1401.02(21).

158.    Defendants adopted a redevelopment plan that significantly reduces the number of three-bedroom units and entirely eliminates four- and five-bedroom units at Brookland Manor, which has the effect of making housing unavailable to families residing in these units.

159.    The reduction in three-bedroom units and elimination of four- and five-bedroom units will result in a disparate impact on families who reside at Brookland Manor on the basis of their familial status.

160.     Defendants injured Plaintiffs Borum, Moore, and other members of the Proposed Class, as well as ONE DC, by committing these discriminatory housing practices. Accordingly, Plaintiffs Borum and Moore, all members of the Proposed Class, and ONE DC are "aggrieved persons" entitled to enforce the DCHRA against Defendants under the DCHRA, D.C. Code § 2-1403.16(a).

161.     By reason of Defendants' unlawful acts or practices, Plaintiffs Borum and Moore and members of the Proposed Class have suffered violations of their civil rights. Most, if not all of the Proposed Class Members will also suffer deprivation of the full use and enjoyment of their dwellings, and will suffer wrongful eviction and displacement from their dwellings and community.

162.     By reason of Defendants' unlawful acts or practices, Plaintiff ONE DC has suffered direct harm by being forced to reallocate significant financial resources and man power to community organizing and training efforts intended to empower Brookland Manor tenants.

### COUNT 3: DISCRIMINATORY STATEMENTS
### (Discriminatory Statements under the FHA, 42 U.S.C. § 3604(c))

163.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

164.     Section 3604(c) of the FHA makes it unlawful to make a statement with respect to the sale or rental of a dwelling that indicates any preference, limitation or discrimination based on familial status, or an intention to make any such preference, limitation or discrimination on the basis of familial status. 42 U.S.C. § 3604(c).

165.     Defendants have made public statements to the D.C. Zoning Commission that four- and five- bedroom units will not be constructed because "housing very large families in apartment communities is significantly impactful upon the quality of life of households as well as their surrounding neighbors."

166.    Defendants have also publicly stated to the Brookland Manor Residents Association that "practical experience has demonstrated that [four or five bedroom apartments are] not an ideal housing type for larger families[,] and there are adverse impacts on the remainder of the community."

167.    Further, Defendants have stated to Brookland Manor residents in a widely-distributed letter about the redevelopment that building four and five-bedroom units is "not consistent with the creation of a vibrant new community." Because the four- and five-bedroom units are effectively a proxy for the families who reside in these apartments, Defendants' statements about households who live in four- and five-bedroom units directly indicate that including families in the redevelopment would be inconsistent "with the creation of a new vibrant community."

168.    Defendants injured Plaintiffs Borum, Moore, and all members of the Proposed Class, as well as ONE DC, by making statements with respect to the rental of apartment units at Brookland Manor that expressed a preference against including families in the redeveloped property. Therefore, these statements expressed an unlawful preference, limitation, or discrimination —or at minimum, evidenced an intention to make such a preference, limitation, or discrimination—on the basis of familial status, in violation of 42 U.S.C. § 3604(c).

169.    By reason of Defendants' unlawful statements, Plaintiffs Borum, Moore, and members of the Proposed Class have suffered violations of their civil rights.

170.    By reason of Defendants' unlawful acts or practices, Plaintiff ONE DC has suffered direct harm by being forced to reallocate significant financial resources and man power to community organizing and training efforts intended to empower Brookland Manor tenants.

**COUNT 4: DISCRIMINATORY STATEMENTS**
**(Discriminatory Statements under the DCHRA, D.C. Code § 2-1402.21(a)(5))**

171.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

172.    The DCHRA provides that it is an unlawful discriminatory practice "to make . . . or cause to be made[] . . . any statement . . . with respect to a transaction, or proposed transaction, in real property," that "indicates or attempts unlawfully to indicate any preference, limitation or discrimination based on . . . familial status." D.C. Code § 2-1402.21(a)(5).

173.    Defendants have made public statements to the Zoning Commission that four- and five- bedroom units will not be constructed because "housing very large families in apartment communities is significantly impactful upon the quality of life of households as well as their surrounding neighbors."

174.    Defendants have also publicly stated to the Brookland Manor Residents Association that "practical experience has demonstrated that [four or five bedroom apartments are] not an ideal housing type for larger families and there are adverse impacts on the remainder of the community."

175.    Further, Defendants have stated to Brookland Manor residents in a widely-distributed letter about the redevelopment that building four and five-bedroom units is "not consistent with the creation of a vibrant new community." Because the units are a effectively proxy for the families who reside in these apartments, Defendants' statements about households who live in four- and five-bedroom units directly indicate that including families in the redevelopment would be inconsistent "with the creation of a new vibrant community."

176.    Defendants injured Plaintiffs Borum, Moore, and all members of the Proposed Class, as well as ONE DC, by making statements with respect to the rental of apartment units at Brookland Manor that expressed a dis-preference for including families in the redeveloped property. Therefore, these statements expressed an unlawful preference, limitation, or

discrimination—or at minimum, evidenced an intention to make such a preference, limitation, or discrimination— on the basis of familial status, in violation of D.C. Code § 2-1402.21(a)(5).

177.    By reason of Defendants' unlawful statements, Plaintiffs Borum, Moore, and members of the Proposed Class have suffered violations of their civil rights.

178.    By reason of Defendants' unlawful acts or practices, Plaintiff ONE DC has suffered direct harm by being forced to reallocate significant financial resources and man power to community organizing and training efforts intended to empower Brookland Manor tenants.

## PRAYER FOR RELIEF

Based upon the foregoing, Plaintiffs respectfully request that the Court:

(a)    Certify this action as a class action on behalf of the Proposed Class pursuant to Rules 23(a) and (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

(b)    Designate the named, individual Plaintiffs as representatives of the Class, and designate Plaintiffs' counsel of record as Class Counsel for the Class;

(c)    Declare that in eliminating the number of four- and five-bedroom units and significantly reducing the number of three-bedroom units from the redevelopment of Brookland Manor, Defendants' proposed redevelopment plan violates the Fair Housing Act of 1968 and the District of Columbia Human Rights Act, as well as declare that Defendants are obligated, as a matter of law, to make housing available to families requiring three-, four-, and five-bedroom units as part of its planned redevelopment.

(d)    Order any and all injunctive relief that the Court may deem appropriate, including entering a preliminary and permanent injunction ordering Defendants to: (i) cease violating Plaintiffs' federally-protected rights and rights protected by the District of Columbia; and (ii) in particular, enjoining Defendants' implementation of the

currently proposed redevelopment unless and until the redevelopment ensures that housing will remain available for members of the Proposed Class who reside in current three-, four-, and five-bedroom units;

(e)     Enter judgment awarding Plaintiff ONE DC and members of the Proposed Class compensatory damages and punitive damages, where such damages are appropriate under the FHA and DCHRA;

(f)     Award Plaintiffs costs and reasonable attorneys' fees incurred in this action to the extent allowable by law; and

(g)     Grant such other relief to the Plaintiffs as the Court may deem just and proper.

DATED: February 6, 2019                          Respectfully submitted,

                                                  _/s/ Maureen F. Browne_____

                                                 Maureen F. Browne (Bar No. 441440)
                                                 (mbrowne@cov.com)
                                                 Nooree Lee (Bar No. 1001687)
                                                 (nlee@cov.com)
                                                 Amber M. Charles (Bar No. 1035226)
                                                 (acharles@cov.com)
                                                 Samuel Adriance (admitted pro hac vice)
                                                 (sadriance@cov.com)
                                                 Stephen Petkis (Bar No. 229669)
                                                 (spetkis@cov.com)
                                                 Brian E. Foster (Bar No. 988311)
                                                 (bfoster@cov.com)
                                                 COVINGTON & BURLING LLP
                                                 One CityCenter
                                                 850 10th Street NW
                                                 Washington, D.C. 20001
                                                 Telephone: (202) 662-6000

                                                 Hannah Lieberman (Bar No. 336776)
                                                 (hannah_lieberman@washlaw.org)
                                                 Catherine Cone (Bar No. 1032267)
                                                 (catherine_cone@washlaw.org)
                                                 WASHINGTON LAWYERS'
                                                 COMMITTEE FOR CIVIL RIGHTS &

URBAN AFFAIRS
11 Dupont Circle, NW, Suite 400
Washington, D.C. 20036
Telephone: (202) 319-1000

*Counsel for Plaintiffs Adriann Borum,*
*Marita Moore, ONE DC, and all those*
*similarly situated.*