## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADRIANN BORUM, *et al.*, | : | REDACTED – FOR PUBLIC FILING |
| | : | |
| Plaintiffs, | : | Civil Action No.: 16-1723 (RC) |
| | : | |
| v. | : | Re Document Nos.: 151, 153, 154, |
| | : | 156, 157, 190 |
| BRENTWOOD VILLAGE, LLC, *et al.*, | : | 194, 195 |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM OPINION</u>

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS; DENYING PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND EXPENSES; GRANTING IN PART AND DENYING IN PART DEFENDANTS' BILL OF COSTS

## I. INTRODUCTION

On August 25, 2016, ONE DC, a community organization, joined a class action by residents of the Brookland Manor apartment complex ("Brookland Manor") against Defendants Brentwood Associates, L.P., Mid-City Financial Corporation, and Edgewood Management Corporation, for violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–19, and the D.C. Human Rights Act ("DCHRA"), D.C. Code §§ 2–1401 to 2–1404. Plaintiffs alleged that the planned redevelopment of the complex by Defendants was discriminatory and would force certain residents out of their homes. Summary judgment was granted for the Defendants on March 30, 2020. *See* Mem. Op. Granting Defs.' Mot. for Summ. J., ECF No. 180. Now pending before the Court are three different fee- and cost-related matters. The first concerns a dispute during discovery, which arose when Defendants learned that an employee of ONE DC had deleted relevant electronically stored information ("ESI") after filing of the suit. On Defendants' motion, this Court granted sanctions against Plaintiff ONE DC, including a reasonable amount of associated fees and expenses. *See* Mem. Op. Granting in Part and Den. in Part Defs.' Mot. for

Sanctions, ECF No. 136.  However, the parties were unable to reach an agreement regarding the appropriate quantum of fees and costs, and Defendants filed the present motion with proposed fees and expenses.  Defs.' Mot. Attys' Fees, ECF No. 151.  Plaintiffs subsequently filed the second motion pending before the Court: their own motion for reasonable attorneys' fees and expenses regarding (1) efforts to compel production of certain documents during discovery and (2) costs incurred in opposing Defendants' unsuccessful motion to compel responses to interrogatories issued to absent class members.  Pls.' Mot. Attys' Fees, ECF No. 153.  The third pending matter is Defendants' Bill of Costs, which concerns strictly taxable costs pursuant to Federal Rule of Civil Procedure 54(d)(1) and this Court's Local Rule 54.1.  Defs.' Bill of Costs, ECF No. 190.  Plaintiffs maintain that the Bill of Costs is improperly calculated, and that given the financial situation of the Plaintiffs, imposition of costs in this matter is inequitable.

For the reasons explained below, the Court grants Defendants' motion for attorneys' fees and costs only in part, as it disagrees with Defendants' calculation of some costs.  The Court denies Plaintiffs' motion for attorneys' fees and expenses because the Court cannot conclude that Defendants unjustifiably withheld certain documents or issued interrogatories on absent class members in bad faith.  Additionally, Plaintiffs failed to obtain the requisite leave of the Court before filing this motion, even after being warned of the consequences of doing so.  Lastly, the Court grants Defendants' Bill of Costs only in part because *pro hac vice* fees are not taxable, Defendants' improperly calculated some of their transcription costs, and imposing full costs would be inequitable.[1]

---

[1] Along with these filings, both parties have moved, unopposed, for leave to file a number of related documents under seal.  *See* Pls.' Mots. File Under Seal, ECF Nos. 154, 156, 157, 194; Defs.' Mot. File Reply Under Seal, ECF No. 195.  The underlying documents all include information designated as confidential by the parties pursuant to the Court's December 15, 2016 Protective Order, ECF No. 36.  The Court concludes that all involve significant privacy interests

## II.  BACKGROUND

### A.  Defendants' Motion for Reasonable Attorneys' Fees and Costs, ECF No. 151

During discovery, Defendants learned that Yasmina Mrabet, an employee of ONE DC, had deleted relevant ESI after Plaintiffs filed their suit.  Defendants moved for sanctions pursuant to the Court's inherent authority and Rule 37(e) of the Federal Rules of Civil Procedure. Defs.' Mot. Sanctions, ECF No. 94-2.  As relief, Defendants requested that the Court dismiss ONE DC from this case, and that the Court award Defendants fees and costs associated with discovery and defending against ONE DC's claims.  *Id.*  The Court granted Defendants' motion for sanctions only in part.  Mem. Op. Granting in Part and Den. in Part Defs.' Mot. for Sanctions, ECF No. 136.  The Court found that an award of some fees and costs was appropriate under Rule 37(e)(1) to cure the prejudice to Defendants resulting from the spoliation.  *Id.*  However, the Court also found that ONE DC did not act intentionally to deprive Defendants of the lost ESI, and therefore did not grant any claim-dispositive sanctions.  *Id.*  The Court specifically ordered ONE DC to reimburse Defendants for the reasonable attorneys' fees and costs Defendants incurred in (a) preparing for and conducting the portions of the depositions of Dominic Moulden, ONE DC's corporate representative, and Yasmina Mrabet relevant to the spoliation issues, and (b) litigating the motion for sanctions.  Order Granting in Part and Den. in Part Defs.' Mot. for Sanctions, ECF No. 135.  The Court further ordered Defendants to submit a motion for reasonable fees and costs if they could not resolve the matter after meeting and conferring with ONE DC.  *Id.*  It is undisputed that the parties met and conferred and that they were unable to reach an agreement on the amount of fees and expenses to be awarded.  *See* Defs.' Mot. Attys'

---

that outweigh the need for public access and accordingly grants the motions for leave to file under seal.  *See Hardaway v. D.C. Hous. Auth.*, 843 F.3d 973, 980 (D.C. Cir. 2016).

Fees at 2–3; Pls.' Opp'n Defs.' Mot. Attys' Fees at 2, ECF No. 155.  On September 16, 2019, Defendants filed their motion for reasonable attorneys' fees and costs.  Defs.' Mot. Attys' Fees. Defendants request a total of $115,133.78 calculated as follows: (1) $34,398.53 in fees associated with preparing for and taking the portions of the depositions of Moulden and Mrabet related to the spoliation issue; (2) $2,006.25 in costs associated with these depositions; (3) $60,039.00 for litigating the sanctions motion; and (4) $18,690.00 for litigating the instant fee motion.  Defs.' Reply Supp. Mot. Attys' Fees at 11, ECF No. 158.

Plaintiffs filed an opposition to Defendants' motion for attorneys' fees and costs alleging, *inter alia*, that (1) expenses related to the Moulden and Mrabet depositions are excessive; (2) the hours spent by Defendants' counsel litigating the motion for sanctions, Defs.' Mot. Sanctions, are excessive and supported by inadequate records; and (3) Defendants are not entitled to fees and costs associated with the instant motion because Defendants did not provide ONE DC with sufficient information during the meet-and-confer process to analyze the appropriateness of Defendants' fee demand.  Pls.' Opp'n Defs.' Mot. Attys' Fees.  Accordingly, Plaintiffs request the Court find reasonable attorneys' fees for the relevant activity total no more than $33,034.  *Id.* at 9.  The Court is now left to determine the appropriate amount of fees and costs that are to be awarded to the Defendants.

### B.  Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses, ECF No. 153

Plaintiffs also move for an order requiring Defendants to pay the reasonable fees and expenses incurred in connection with (1) Plaintiffs' opposition to Defendants' motion to compel interrogatories issued to absent class members; and (2) Plaintiffs' efforts to compel production of certain financial documents.

### (1) Attorneys' Fees and Expenses Related to Interrogatories

During discovery, Defendants issued a set of interrogatories to the named head-of-household of all 3-, 4- or 5-bedroom apartments in the complex.  *See* Defs.' Mot. Compel Interrogs. at 3, ECF No. 79.  Plaintiffs objected to these interrogatories on absent class members, and Defendants thereafter filed a motion to compel responses.  Defs.' Mot. Compel Interrogs. Plaintiffs opposed the motion to compel on the grounds that Defendants failed to provide a legitimate basis that would allow discovery of the roughly 130 absent class members.  Pls.' Opp'n Defs.' Mot. Compel at 13, ECF No. 91.  The Court subsequently reviewed Defendants' proposed interrogatories and Plaintiffs' objections and denied Defendants' motion to compel. Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel, ECF No. 115.  The Court found that all of Defendants' proposed interrogatories sought information that was either already available or not relevant to the decision of common questions.  *Id.* at 2–3.

Plaintiffs now claim that Defendants are responsible under Federal Rule of Civil Procedure 37(a)(5)(B) for covering the expenses and fees Plaintiffs incurred in opposing Defendants' unsuccessful motion to compel discovery.  Pls.' Mot. Attys' Fees at 11.  Plaintiffs allege that Defendants knew or should have known that courts generally forbid discovery on absent class members and therefore Defendants were not justified in making their motion. Defendants argue the Court should deny Plaintiffs' fee motion because Plaintiffs failed to meet and confer with Defendants before filing this fee motion, Plaintiffs failed to obtain leave of the Court as required by the Revised Scheduling Order, ECF No. 96, and Plaintiffs cannot demonstrate that an award of fees under Rule 37 is appropriate.  Defs.' Opp'n Mot. Attys' Fees at 16–18, ECF No. 161.

(2) Attorneys' Fees and Expenses Related to Document Production Dispute

During discovery there was an additional dispute over the production of certain so-called "pro forma" financial models (and associated documents) relating to the finances of the planned Brookland Manor project. *See* Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel at 5. Plaintiffs filed a motion to compel production of these models and documents. Pls.' Mot. Compel Produc., ECF No. 100-2. Defendants opposed the motion on the grounds that Plaintiffs had failed to comply with the procedures set forth by the Court in the Revised Scheduling Order. *See* Defs.' Mot. Den. Pls.' Mot. Compel, ECF No. 101. Defendants further claimed that the discovery dispute concerned proprietary financial documents that were immaterial to Plaintiffs' claims and were thus irrelevant to the case. *Id.* at 2. The Court granted Plaintiffs' motion to compel production. *See* Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel. The Court found that documents relating to the financial viability and finances of Brookland Manor, including the "pro forma" financial models, were relevant to Plaintiffs' claims. *Id.* at 6. The Court further noted that Mid-City Financial had not moved for a protective order and had failed to meet its burden to show either that the financial models were trade secrets or other confidential research, or that it would be harmed by production to non-competitor Plaintiffs. *Id.*

In the instant motion, Plaintiffs claim they are due reasonable expenses and fees incurred in obtaining what they consider improperly withheld discovery. Pls.' Mot. Attys' Fees at 4. Plaintiffs contend that sanctions are appropriate under three different rationales: (1) Federal Rule of Civil Procedure 37(a)(5)(A) that states "the court must . . . require [the offending party] . . . to pay the movant's reasonable expenses"; (2) the fact that defense counsel improperly withheld and obscured the existence of relevant documents and therefore improperly certified Defendants' discovery responses in violation of Federal Rule of Civil Procedure 26(g)(3); and (3) the Court's inherent powers to issue sanctions. *Id.* at 4–5. Defendants object on the grounds that although

Plaintiffs may have met and conferred regarding fees incurred in connection with the motion to compel "pro forma" models, Plaintiffs failed to obtain leave of the Court before filing the motion (as required by the Court's Scheduling Order).  Defs.' Opp'n Mot. Attys' Fees at 10.  Defendants also claim that (1) Mid-City Financial's objections to production were substantially justified, (2) Federal Rule of Civil Procedure 26(g)(3) is not applicable, and (3) invoking the Court's inherent authority is unjust absent a finding of bad faith.  *Id.*

### C.  Defendants' Bill of Costs, ECF No. 190

On March 30, 2020, this Court granted Defendants' motion for summary judgment, resolving all claims in Defendants' favor.  *See* Mem. Op. Granting Defs.' Mot. for Summ. J., ECF No. 180.  Defendants now seek $34,607.90 in taxable costs pursuant to 28 U.S.C. § 1920 and Local Civil Rule 54.  Defs.' Bill of Costs, ECF No. 190.  Defendants calculated this total as follows: (1) $400.00 in Clerk's fees for *pro hac vice* admissions of certain members of the defense team to this Court; (2) $33,744.50 for the costs for transcripts of depositions that were used in various filings; (3) $163.40 in transcript costs for the hearings on January 9, 2019 and February 22, 2019; and (4) $300.00 in copying costs, the maximum amount recoverable under Local Rules.  Edney Decl. Supp. Defs.' Bill of Costs ¶¶ 4–7, ECF No. 190-1.

Plaintiffs counter that their financial situation makes the imposition of costs in this matter inequitable.  Pls.' Opp'n Defs.' Bill of Costs, ECF No. 194-1.  They argue that imposing even moderate costs would be financially devastating and ask the Court to decline awarding of costs.  *Id.* at 15.  Plaintiffs request that if the Court chooses to award costs under 28 U.S.C. § 1920, the total should be only $15,635.00, as Defendants have improperly included non-taxable costs.  *Id.*  Specifically, Plaintiffs claim that *pro hac vice* admission fees are not recoverable, Defendants' claimed deposition fees include non-taxable expenditures and seek double recovery on certain

depositions, and hearing transcripts are not recoverable under Local Rule 54.1(d).  *Id.* at 3, 5, 13, 14.

### III.  ANALYSIS

**A.  Defendants' Motion for Reasonable Attorneys' Fees and Costs, ECF No. 151**

As explained, Defendants are due reasonable attorneys' fees and costs associated with the spoliation issue.  The Court must determine reasonable attorneys' fees using the "lodestar" method, whereby the number of hours reasonably expended is multiplied by a reasonable hourly rate.  *See DL v. District of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019) (citing *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988)).  In assessing whether an attorneys' fees award is reasonable, the Court must (1) determine what constitutes a reasonable hourly rate, (2) assess whether the hours billed are reasonable, and (3) consider whether adjustments or multipliers to the lodestar are warranted.  *See Martini v. Fed. Nat'l Mortg. Ass'n*, 977 F. Supp. 482, 484 (D.D.C. 1997) (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995)).  The Court will also discuss Defendants' request for costs incurred in preparing for and conducting the portions of the depositions relevant to the spoliation issue and fees associated with bringing the instant fee petition.

#### 1.  Defendants' Hourly Rates are Reasonable

An initial note: because the billing rates of different attorneys and their respective time spent working on the matter has varied, Defendants' counsel Norton Rose Fulbright US LLP's ("Norton Rose Fulbright") effective billing rate has fluctuated depending on the filing.  To resolve the instant motion, the Court determines that Norton Rose Fulbright's effective billing rate for the sanctions litigation is $532.26—*i.e.*, $60,039.00 in requested fees divided by 112.8 claimed hours.  Schapira Decl. Supp. Defs.' Mot. Attys' Fees  ¶¶ 46–47, ECF No. 151-1.  The

Court determines that Norton Rose Fulbright's effective billing rate for the preparing and conducting the two depositions is $572.16—*i.e.*, $34,398.53 in requested fees divided by 60.12 claimed hours spent on the spoliation issue.  And finally, the Court determines that Norton Rose Fulbright's effective billing rate for the instant motion is $588.66—*i.e.*, $18,690.00 in requested fees divided by 31.75 claimed hours.  Schapira Decl. Supp. Defs.' Reply Supp. Mot. Attys' Fees ¶¶ 8–10, ECF No. 158-2.

The reasonableness of an attorney's hourly rate should be considered in light of the prevailing market rates in the relevant community for lawyers with comparable skills, experience, and reputation.  *See Salazar ex rel. Salazar v. District of Columbia*, 809 F.3d 58, 62 (D.C. Cir. 2015) (citing *Covington*, 57 F.3d at 1107).  Attorneys' fee matrices are "one type of evidence that 'provide[ ] a useful starting point' in calculating the prevailing market rate." *Ventura v. L.A. Howard Constr. Co.*, 139 F. Supp. 3d 462, 463–64 (D.D.C. 2015) (citing *Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015)).  For example, the D.C. Circuit has established that courts may look to the *Laffey* Matrix,[2] a schedule of appropriate fees for attorneys conducting litigation in Washington, D.C., based on years of experience.  *Covington*, 57 F.3d at 1105.  The party requesting attorneys' fees should present evidence that the requested hourly rate constitutes "the prevailing rate for attorneys in *this* community for *this* type of

---

[2] The *Laffey* Matrix was established from the schedule of prevailing rates compiled in *Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds, Laffey v. Nw. Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds, Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988). *See Eley*, 793 F.3d at 100.  The original *Laffey* Matrix, which the U.S. Attorney's Office maintains and updates, adjusts rates for inflation generally using U.S. Bureau of Labor Statistics' Consumer Price Index for All Urban Consumers.  *See Serrano v. Chicken-Out Inc.*, 209 F. Supp. 3d 179, 195 (D.D.C. 2016).  A competing version, the LSI *Laffey* Matrix, adjusts rates for inflation of the price of legal services in particular, based on the Legal Services Index of the United States Bureau of Labor Statistics.  *Id.*  The LSI *Laffey* rates often "exceed those found in the USAO Laffey Matrix."  *Id.*

litigation by attorneys with comparable experience." *L.A. Howard Constr. Co.*, 139 F. Supp. 3d at 464.

Although neither party cites the *Laffey* Matrix, it indicates that the rates charged by Defendants' counsel Norton Rose Fulbright are at the upper end, and in some cases exceed, the prevailing rates in Washington, D.C., but not to such an extent that the Court can definitively state they are unreasonable.[3]  Additionally, this Circuit has previously held that "an attorney's usual billing rate is presumptively the reasonable rate." *Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733, 735 (D.C. Cir. 2018).  The Defendants have further indicated that Norton Rose Fulbright charged a discounted rate for many of the personnel working on the case given the volume of work and the importance of the client relationship.  Defs.' Mot. Attys' Fees at 3–4; Schapira Decl. Supp. Defs.' Mot. Attys' Fees ¶¶ 10–25.  Importantly, Plaintiffs do not object to the billing rates set by Norton Rose Fulbright.  Pls.' Opp'n Defs.' Mot. Attys' Fees at 6, ECF No. 155.  Although Defendants neither specify the position nor seniority of lawyers and staff billed, which makes it difficult to verify against the *Laffey* matrix (*see* Schapira Decl. Supp. Defs.' Mot. Attys' Fees ¶¶ 10–25 (listing only the standard hourly rate for each personnel who worked on the matter)), given that Norton Rose Fulbright's billing rates purport to be the rates negotiated with the client, are not challenged by Plaintiff, and are not unreasonable, the Court will accept them.

2.  Defendants' Total Claimed Hours Are Reasonable but the Court
Cannot Verify Defendants' 30% Calculation

The Court must also consider whether the number of hours billed for work by counsel are reasonable.  The moving party bears this burden.  *Reyes v. Kimuell*, 270 F. Supp. 3d 30, 37

---

[3] *See* USAO Attorney's Fees Matrix — 2015-2020, https://www.justice.gov/usao-dc/page/file/1189846/download.

(D.D.C. 2017) (citing *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 46 (D.D.C. 2017)).

The fee request "must be sufficiently detailed to permit the District Court to make an

independent determination whether or not the hours claimed are justified." *Herrera*, 257 F.

Supp. 3d at 47 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327

(D.C. Cir. 1982)).  Productivity is the key factor that determines whether an attorney's time was

reasonably expended.  *See Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 8, 33–34 (D.D.C. 2010)

(citing *Copeland v. Marshall*, 641 F.2d 880, 891–92 (D.C. Cir. 1980)).  To this end, a court

should exclude hours that are "duplicative, excessive, or otherwise unnecessary." *Id.* at 33–34

(citing *Copeland*, 641 F.2d at 892); *see also Herrera*, 257 F. Supp. 3d at 47; *Serrano*, 209 F.

Supp. 3d at 198.

Defendants indicate that Norton Rose Fulbright personnel spent 200.4 hours preparing for

and taking the depositions of Moulden and Mrabet and addressing the spoliation issues ahead of

those depositions.  Schapira Decl. Supp. Defs.' Mot. Attys' Fees ¶ 37.  Defendants seek to

recover 30% of those costs.  Defs.' Mot. Attys' Fees at 7.  Defendants claim to have calculated

this percentage by reviewing the transcripts of the depositions, communicating both with the

individuals who prepared for and conducted those depositions, and reviewing related documents

and correspondence.  Schapira Decl. Supp. Defs.' Mot. Attys' Fees ¶ 39.  Plaintiffs counter that

30% is merely a rough estimate and that only 5.6% of the deposition transcripts even touch on

the spoliation issue.  Pls.' Opp'n Defs.' Mot. Attys' Fees at 3–4.  Accordingly, Plaintiffs request

that the Court award no more than 5.6% of the fees resulting from the Mrabet and Moulden

depositions.  *Id.* at 6.

The billing records submitted by Defendants indicating the overall hours spent preparing

for and conducting the two depositions (and litigating the sanctions motion) appear reasonable,

and Plaintiffs do not challenge the overall figures directly.  But while the descriptions may be sufficiently detailed for overall billing purposes, they provide little insight into how many of those overall hours were specifically devoted to the relevant spoliation issue.  Accordingly, this Court has no way of verifying Defendants' calculation that 30% of the overall time was devoted to the spoliation.  For example, the time entry for Rudolph, M. on September 17, 2018, merely lists 8.25 hours for: "Review and analyze documents produced by ONE-DC to identify key documents for deposition; confer with M. Levitt regarding same."  Defs.' Mot. Attys' Fees Ex. 2 (Schapira Decl.) at 10, ECF No. 151-3.  To the Court, it seems that this time could well have been dedicated to issues outside of spoliation.  *See In re Meese*, 907 F.2d 1192, 1204 (D.C. Cir. 1990) (reducing the fee award "where no mention is made of the subject matter of a meeting, telephone conference or the work performed during hours billed"); *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989) (reducing fees when "multitudinous billing entries . . . wholly fail to state, or to make any reference to the subject discussed at a conference, meeting or telephone conference").

Plaintiffs seize on this lack of specificity, and correctly note that only 5.6% of the total deposition transcripts of Mrabet and Moulden touch on the spoliation issue.  Pls.' Opp'n Defs.' Mot. Attys' Fees at 4.  But, as Defendants counter, merely looking at the number of deposition pages devoted to the spoliation issue and directly translating that into the amount Defendants should recover is also questionable.  Defs.' Reply Supp. Mot. Attys' Fees at 8, ECF No. 158.  An issue that required little preparation might consume a significant portion of the deposition, while many hours could be spent preparing for a line of questioning that is quickly resolved.  Given the problems with both sides' methodologies, and given that justifying the reasonableness of the fees is Defendants' burden in this context, this Court awards Defendants 10% of their requested time

associated with preparing for and taking the portions of the depositions related to the spoliation issue. Defendants requested 60.12 hours in connection with the spoliation issue—*i.e.*, 30% of 200.4 hours. Defs.' Mot. Attys' Fees at 4, 6; Schapira Decl. Supp. Defs.' Mot. Attys' Fees ¶¶ 28, 40. The Court will therefore reduce this amount and grant Defendants 10% of 200.4 hours for a total of 20.04 hours, which, at the billing rate of $572.16 per hour, amounts to a total of $11,466.09 in connection with the spoliation issue.

An analogous reduction is not required with respect to the request for hours directly spent litigating the sanctions motion. Defendants' indicate they spent 112.8 hours researching and preparing two briefs, reviewing evidence, conferring with opposing counsel, and preparing to argue the motion. *See* Defs.' Mot. Attys' Fees at 7. Plaintiffs suggest that this is an unreasonably excessive amount of time for experienced counsel to spend on a single, "rather straightforward" motion, but do not clearly explain why this is so. Pls.' Opp'n Defs.' Mot. Attys' Fees at 7. Their main support is a case finding it *per se* unreasonable to spend 240 hours creating a discovery dispute fee petition, but, of course, Defendants here are requesting fewer than half of those hours (and moreover, a sanctions motion seems more complex than a fee petition). *Id.* (citing *DL v. District of Columbia*, 256 F.R.D. 239, 245 (D.D.C. 2009)). The Court therefore concludes that the hours requested are reasonable and awards the full amount ($60,039.00) requested in connection with the sanctions motion.

### 3. Costs Associated with the Spoliation

In addition to reasonable attorneys' fees, this Court previously ordered ONE DC to reimburse Defendants for the reasonable costs Defendants incurred in preparing for and conducting the portions of the depositions of Moulden and Mrabet relevant to the spoliation issue. Order Granting in Part and Den. in Part Defs.' Mot. for Sanctions, ECF No. 135. The

Defendants calculated that the total costs for those activities is $6,687.49.  Schapira Decl. Supp.

Defs.' Mot. Attys' Fees ¶ 50.  Defendants are again requesting 30% of that amount to reflect

their determination of the proportion associated with spoliation.  Defendants allege to have

calculated total costs by adding (a) costs associated with the Moulden deposition: $2,736.77, (b)

costs associated with the Mrabet deposition: $993.89, and (c) travel costs in preparation for and

conducting those two depositions, including discounts: $2,956.83.  *Id.* ¶ 49.  While this Court

does not dispute the travel costs associated with preparation for and conducting the two

depositions, invoices later filed with the Court show Defendants have miscalculated the

transcription costs of both depositions.  *See* Defs.' Bill of Costs Ex. B at 2, 6, ECF No. 190-3.

The Moulden deposition cost $2,379.80 and the Mrabet deposition cost $864.25.  In an apparent

oversight, Defendants seem to have also included in their instant calculation roughly $486 in late

payment and outstanding finance charges.  *See id.*  Thus, while Defendants may have actually

*paid* a total of $3,730.66 in relation to the two depositions, Defendants were only *billed*

$3,244.05.

Additionally, the Court notes that Defendants have also included the costs for these two

depositions in their Bill of Costs.  Defs.' Bill of Costs Ex. B at 2, 6.  In order to prevent a double

recovery, the Court will deduct the taxable portions of the deposition costs that the Court has

awarded in Section III(C)(3), *infra*.  Defendants may still recover reasonable costs associated

with the deposition beyond the basic costs awarded below in connection with Defendants' Bill of

Costs, ECF No. 190.  Therefore, for the instant issue, Defendants may only recover a percentage

of the $2,956.83 in travel costs.  Based on the previous finding that 10% represented a

reasonable estimate of the spoliation-specific costs in Section III(A)(2), *supra*, the Court will

award the same percentage of Defendants' travel costs.  *Cf. Westfahl v. District of Columbia*, 183

F. Supp. 3d 91, 102 (D.D.C. 2016) (reducing the total costs awarded to reflect the plaintiff's overall success). Accordingly, Defendants are awarded 10% of $2,956.83 for a total of $295.68 in costs.

### 4. "Fees on Fees" Award

Defendants also claim 31.75 hours for fees associated with the preparation and submission of the instant fee petition. Defs.' Reply Supp. Mot. Attys' Fees at 11. The "time reasonably devoted to obtaining attorneys' fees in the context of litigation where the court must be petitioned for such an award is itself subject to an award of fees." *Cobell v. Norton*, 231 F. Supp. 2d 295, 306–07 (D.D.C. 2002) (quoting *Envtl. Def. Fund v. EPA*, 672 F.2d 42, 62 (D.C. Cir. 1982). This is commonly known as a "fees-on-fees" award. This Circuit has held that hours reasonably devoted to fee petitions are compensable but "fees on fees must be reasonable, and not excessive." *Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 162 (D.D.C. 2015) (citing *Boehner v. McDermott*, 541 F. Supp. 2d 310, 325 (D.D.C. 2008)).

Plaintiffs allege that Defendants did not provide ONE DC with sufficient information during the meet-and-confer process to analyze the appropriateness of their fee demand which created the need for further litigation. Pls.' Opp'n Defs.' Mot. Attys' Fees at 8–9. Defendants provided Plaintiffs with a PDF chart containing the hours billed for Defendants' fees on fees motion, but Plaintiffs claim the chart was insufficient as it was unsortable and did not contain accompanying narratives describing the time that each timekeeper billed. *Id.* However, there is a difference between failing to meet and confer entirely and failing to provide information in an accessible and digestible format. Plaintiffs were able to review the billing hours even though the PDF was not sortable. *See* Okemgbo Decl. Supp. Pls.' Opp'n Defs.' Mot. Attys' Fees ¶ 3, ECF No. 155-1. And while the Court agrees that Defendants should have ideally included

corresponding narrative time descriptions, the Court cannot state that the meet and confer was insufficient without reviewing the PDF chart, which Plaintiffs failed to include in their opposition to Defendants' motion.  Furthermore, Defendants' filing contains the Certificate of Conference as required by Local Rule 7(m).  Defs.' Mot. Attys' Fees at 10.  This Court cannot state that the meet and confer was insufficient, nor is this Court able to state with any certainty that 31.75 hours is excessive for the fees on fees request.  *See Robinson v. District of Columbia*, 341 F. Supp. 3d 97, 123 (D.D.C. 2018) (granting the plaintiff's fees on fees request for forty hours); *McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 162–63 (D.D.C. 2017) (granting the plaintiffs' fees on fees request for nearly fifty hours).  Defendants are therefore awarded the full amount requested—$18,690.00—in connection with the instant motion.

In conclusion, Defendants are awarded $11,466.09 in fees associated with the spoliation issue, $60,039.00 in fees for litigating the sanctions motion, $295.68 in costs, and $18,690.00 in attorneys' fees for the instant motion.  Defendants are therefore awarded a total of $90,490.77 with respect to their motion.

### B. Plaintiffs' Motion for Reasonable Attorneys' Fees and Expenses, ECF No. 153

First, a procedural note.  On July 23, 2018, this Court issued a Revised Scheduling Order. ECF No. 69.  That Order additionally notified parties of courtroom procedures relating to discovery disputes:

> It is FURTHER ORDERED that, before bringing a discovery dispute to the Court's attention, the parties must meet and confer in good faith in an attempt to resolve the dispute informally. If the parties are unable to resolve the dispute, they must contact chambers to arrange for a telephonic conference with the Court. The parties must obtain leave of the Court before filing any motion relating to a discovery dispute. Any discovery motions that are filed prior to obtaining such leave may be summarily denied for failure to comply with this order.

Revised Scheduling Order, ECF No. 69.

Plaintiffs have previously failed to comply with the Revised Scheduling Order and were "warned that further disregard of the Court's Orders will have consequences."  Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel at 5–6.  This Court is not aware of the parties meeting and conferring in good faith in an attempt to resolve the pending dispute—for example, Plaintiffs' motion does not include the required Local Rule 7(m) meet-and-confer statement, and the record also does not show Plaintiffs obtained leave of the Court before filing the instant motion.  The motion arguably falls within the scope of the Scheduling Order, as it pertains to a discovery dispute.  Pls.' Mot. Attys' Fees at 4–12, ECF No. 153 (Plaintiffs argue they should be awarded (1) fees in connection with their motion to compel production of certain financial documents and (2) expenses and fees incurred in opposing Defendants' unsuccessful motion to compel interrogatories on absent class members).  Accordingly, this Court would be justified in exercising its discretion to dismiss the motion as Plaintiffs have failed to abide by the Court's previous order, even after Plaintiffs were warned of potential consequences.  *See, e.g.*, *U.S. ex rel. Pogue v. Diabetes Treatment Ctr. of Am., Inc.*, 235 F.R.D. 521, 528–29 (D.D.C. 2006) (denying motion for failure to comply with Local Rule 7(m)).  Nonetheless, in the interest of resolving this dispute on the merits and given that the Court's scheduling order permitted, rather than required, the dismissal of non-compliant filings, this Court will consider Plaintiffs' instant motion for fees and costs on its merits.

### 1.  Plaintiffs Cannot Recover Expenses and Fees Incurred in Compelling Production of Documents

Plaintiffs argue that sanctions relating to the "pro forma" financial models are appropriate through at least three avenues: (a) Federal Rule of Civil Procedure 37; (b) Federal Rule of Civil Procedure 26; and (c) the Court's inherent authority.  For the reasons detailed below, however, the Court denies awarding the associated expenses and fees.

17

*a.  Sanctions Are Not Appropriate Under Federal Rule of Civil Procedure 37*

Rule 37(a)(5)(A) states that if the motion for compelling production is granted, "the court must . . . require [the offending party] . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R. Civ. P. 37(a)(5)(A).  Here, the Court granted Plaintiffs' motion to compel production.  *See* Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel at 6.  However, Rule 37(a)(5)(A) contains a savings clause providing that "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."  A party is "substantially justified" in nondisclosure or objection to production "if reasonable people could differ in their views" on the issue or motion. *Am. Fed'n of State, Cnty., & Mun. Emps. Local 2401 v. District of Columbia*, No. 09-CV-1804, 2013 WL 12398482, at *2 (D.D.C. Feb. 19, 2013).

Here, while the Court ultimately granted Plaintiffs' motion to compel production, Defendants' nondisclosure of the "pro forma" models was based on reasonable objections that created a genuine dispute for the Court to resolve.  *See, e.g.*, *Holland v. Freeman United Coal Mining Co.*, No. 07-1050, 2008 WL 11501533, at *4 (D.D.C. Mar. 18, 2008) (denying fees and costs associated with a motion to compel production when the parties had legitimate disputes about whether certain types of evidence were relevant).  Specifically, Defendants argued that the "pro forma" models did not reflect a study or analysis of the economic viability of 3-, 4-, or 5-bedroom apartments at Brookland Manor and were thus irrelevant to this litigation.  Defendants expressed their specific objections and responses to interrogatory request number 13, which sought "[a]ll documents relating to the financial viability and finances of the redevelopment

project." *See* Pls.' Mot. Compel Produc. Ex. C at 12, ECF No. 100-7.  Defendants objected to

the phrase "financial viability and finances" and "redevelopment project" as vague and

ambiguous as well as the request being "overbroad to the extent that it seeks information that is

not reasonably calculated to lead to the discovery of admissible evidence." *Id.*  Defendants'

counsel also sent Plaintiffs a letter that reiterated their objections and perceived justifications for

withholding documents.  *Id.* Ex. G, ECF No. 100-11.  While the Court ultimately rejected these

arguments, it did not issue any opinion suggesting Defendants' objections were illegitimate or

without reason.  In addition, Defendants maintained their objections and litigated against

Plaintiffs' motion to completion.  *Cf. McCormick v. District of Columbia*, No. 07-CV-570, 2012

WL 13047305, at *2 (D.D.C. Oct. 24, 2012) (finding defendants were not substantially justified

in resisting production because they acquiesced and did not litigate their objections to

completion).  Accordingly, the Court finds Defendants' objection to production was substantially

justified.  *See, e.g.*, *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (holding that "substantially

justified" has "never been described as meaning 'justified to a high degree,' but rather has been

said to be satisfied if there is a 'genuine dispute'" or "justified to a degree that could satisfy a

reasonable person"); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 200, 205–06 (D.D.C. 1998)

(collecting cases determining whether withholding production was substantially justified).  And

for that reason, it must decline to award sanctions under Rule 37.

### b.  Sanctions Are Not Appropriate Under Federal Rule of Civil Procedure 26

Plaintiffs state that Fed. R. Civ. P. 26(g)(3) requires sanctions against parties who

improperly certify discovery responses.  *See* Pls.' Mot. Attys' Fees at 9; *see also* Fed. R. Civ. P.

26(g)(3) ("If a certification violates this rule without substantial justification, the court, on

motion or on its own, must impose an appropriate sanction on the signer, the party on whose

behalf the signer was acting, or both."). Plaintiffs do not cite any case law to support their position that Defendants' failure to disclose the "pro forma" models indicates their initial document production was not formed after a reasonable inquiry and hence Defendants improperly certified their discovery responses. Additionally, Defendants had substantial justification for withholding the "pro forma" models, as discussed in Section III(B)(1)(a), *supra*. Therefore, the Court cannot state that Defendants improperly certified their discovery responses and will not impose sanctions under Fed. R. Civ. P. 26(g)(3).

### c. Sanctions Are Not Appropriate Under the Court's Inherent Authority

As discussed, Plaintiffs failed to comply with both this Court's previous Revised Scheduling Order as well as Local Civil Rule 7(m), which requires counsel to "discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." D.D.C. Civ. R. 7(m). The Court will not incentivize future disobedience by awarding expenses and fees when Plaintiffs have flouted procedures of which they were previously warned. *See, e.g.*, *Walker v. District of Columbia*, 317 F.R.D. 600, 605 (D.D.C. 2016) (denying award of fees when plaintiffs failed to comply with a standing court order as well as Local Civil Rule 7(m)). Additionally, a finding of "bad faith" is typically required for the Court to exercise its inherent authority. *See Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 502 F. App'x 4, 6 (D.C. Cir. 2013) ("A district court has inherent authority to order sanctions, including attorney's fees, if a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (internal quotation marks omitted)); *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Veterans Affairs*, 134 F. Supp. 3d 63, 66 (D.D.C. 2015) ("[I]t is settled that a finding of bad faith is required in order to impose sanctions under the Court's inherent power."). There is no evidence of bad faith by

either party or that Defendants withheld the "pro forma" models out of intent to mislead the Court or delay proceedings. *See, e.g.*, *Citizens for Responsibility*, 134 F. Supp. 3d at 66 ("Bad faith requires finding an intent unreasonably to delay the proceedings."). Accordingly, this Court declines to exercise its inherent authority and will not award expenses and fees associated with Plaintiffs' motion to compel production.

   2.  Plaintiffs Cannot Recover Expenses and Fees Incurred in Opposing Defendants'
           Unsuccessful Motion to Compel Interrogatories

   As mentioned, Defendants issued interrogatory requests on absent class members. But as courts in this district have noted, courts usually disfavor discovery against absent class members. *Barham v. Ramsey*, 246 F.R.D. 60, 62 (D.D.C. 2007) ("[D]iscovery against absent class members under Rule 33 and 34 cannot be had as a matter of course."). Written discovery of absent class members "may be had 'relevant to the decision of common questions, when the interrogatories or document requests are tendered in good faith and are not unduly burdensome, and when the information is not available from the representative parties.'" *Id.* at 63 (quoting *Dellums v. Powell*, 566 F.2d 167, 187 (D.C. Cir. 1977)); *see also Moore v. Johnson*, 303 F.R.D. 105, 108 (D.D.C. 2014) (denying discovery on absent class members because the requesting party failed to show that discovery from absent class members was warranted or the information sought was unavailable from the representative parties); *United States v. Trucking Emp., Inc.*, 72 F.R.D. 101, 104 (D.D.C. 1976) (holding that interrogatories of absent class members may be appropriate when "the circumstances of the case justify such action"). Here, the Court concluded that issuing interrogatories to absent class members was not justified as the proposed interrogatories sought information that was either already available or not relevant to the decision of common questions. Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel at 2–3.

Again, under Federal Rule of Civil Procedure 37(a)(5)(B), if a motion to compel is denied, the court "must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(B). "But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust." *Id*. It is not entirely clear that Defendants' motion to compel interrogatories on absent class members was substantially justified. As courts have noted, discovery requests issued to absent class members may be used as "a tactic to take undue advantage of the class members" or as "a strategem to reduce the number of claimants." *Dellums*, 566 F.2d at 236 (quoting *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1005 (7th Cir. 1971)). Additionally, the Court was unconvinced by all of Defendants' arguments as to why the interrogatories issued on absent class members was relevant to the decision of questions common to the class. Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel at 3–5. The Court was similarly unconvinced by Defendants' arguments that certain interrogatories sought information unavailable from other sources. *Id*. at 3–4. Indeed, the Court observed that the wording of at least one interrogatory did "little to support Defendants' assertion that these interrogatories were submitted in good faith to obtain otherwise unavailable information." *Id*. at 5.

Nonetheless, the Court must consider other circumstances that would make an award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(B). Defendants contend that the eight-month delay Plaintiffs took in filing the instant fee motion and the circumstances of its filing demonstrate that it is being brought as a retaliatory tactic. Defs.' Opp'n Mot. Attys' Fees at 1. While the Court does recognize that Plaintiffs' instant fee motion was filed on the heels of Defendants' fee

petition, the timing of Plaintiffs' motion is not a dispositive factor. *See, e.g.*, *In re Subpoenas to Folliard*, No. 10-mc-789, 2012 WL 907763, at *4 (D.D.C. Mar. 16, 2012) ("The timing of [defendant's] Motion alone does not make the Motion inappropriate or eliminate the genuine dispute that existed regarding the production of the documents."). Additionally, however, this Court is unable to find any record of the parties meeting and conferring regarding Plaintiffs' request for fees and expenses incurred in opposing Defendants' unsuccessful motion to compel. *See, e.g.*, Defs.' Opp'n Mot. Attys' Fees at 17 ("Plaintiffs never informed Defendants that they intended to move for fees related to prevailing against Defendants' motion to compel.").[4] Local Rule 7(m) requires that "[b]efore filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is, to narrow the areas of disagreement." D.D.C. Civ. R. 7(m). Failure to adhere to the Local Rules is appropriate grounds for denying a party's motion. *See, e.g.*, *12 Percent Logistics, Inc. v. Unified Carrier Registration Plan Bd.*, 316 F. Supp. 3d 22, 24 (D.D.C. 2018) ("[T]he court denies Plaintiffs' motion for failure to meet and confer as required by Local Civil Rule 7(m)."); *Henao v. Smiths Detection, Inc.*, No. 18-cv-2564, 2019 WL 2476631, at *1 (D.D.C. June 13, 2019) (same); *English v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 25 (D.D.C. 2017) ("This Court routinely denies non-dispositive motions for failure to comply with Rule 7(m).").

While the Court may be hesitant to resolve a petition for fees on Rule 7(m) grounds, Plaintiffs have not demonstrated any effort to diligently confer. *But see DC2NY, Inc. v. Acad.*

---

[4] There is, in contrast, evidence that the parties met and conferred regarding Plaintiffs' request for fees concerning their motion to compel production of the "pro forma" financial models. *See* Pls.' Mot. Attys' Fees at 2; Defs.' Opp'n Mot. Attys' Fees at 6; Pls.' Reply Supp. Mot. Attys' Fees at 9, ECF No. 169.

*Bus, LLC*, No. 18-cv-2127, 2020 WL 1536219, at *6 (D.D.C. Mar. 31, 2020) (declining to resolve petitioner's motion on 7(m) grounds because the parties disputed the *extent* to which the meet and confer was meaningfully satisfied).  Even if Plaintiffs were convinced that a meet and confer would be unfruitful, as may very well have been the case here, they "must still make a good-faith effort to confer."  *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 6 (D.D.C. 2016).  The Court previously warned Plaintiffs about potential consequences of failing to abide by courtroom procedures.  Order Den. Defs.' Mot. Compel, Granting Pls.' Mot. Compel at 6.  The Court therefore holds that Plaintiffs' failure to demonstrate any meaningful effort to abide by Local Rule 7(m) before filing their motion for expenses and fees incurred in opposing Defendants' unsuccessful motion to compel are sufficient circumstances that make an award of expenses unjust under Rule 37(a)(5)(B).  This is particularly true given that it may very well be the case that Defendants' motion to compel interrogatories on absent class members was substantially justified regardless.

To summarize, Defendants had substantial justification for withholding the "pro forma" financial models.  In addition, discovery on absent class members is disfavored and at times abusive, but there is not enough evidence to conclude that Defendants were not substantially justified in their motion to compel.  Furthermore, the Court questions the timing of Plaintiffs' instant motion and notes the lack of meet and confer as required by Local Rule 7(m) as well as the disregard of the Court's Revised Scheduling Order, ECF No. 69.  Thus, because the Court has found that Plaintiffs should not be awarded expenses and fees incurred in compelling the production of "pro forma" financial models from Defendants, nor are Plaintiffs due expenses and fees incurred in opposing Defendants' unsuccessful motion to compel, Plaintiffs' instant motion is denied in full.

### C.  Defendants Bill of Costs, ECF No. 190

After winning on summary judgment, Defendants have subsequently filed their Bill of

Costs, which contains several charges that Plaintiffs maintain are not recoverable.[5]  *See* Defs.'

Bill of Costs, ECF No. 190; Pls.' Opp'n Defs.' Bill of Costs, ECF No. 194-1.  The Federal Rules

of Civil Procedure provide that costs "should be allowed to the prevailing party."  Fed. R. Civ. P.

54(d)(1).  Under the applicable federal statute, taxable costs include, among other things:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for
>      use in the case;
>      . . .
> (4) Fees for exemplification and the costs of making copies of any materials
>      where the copies are necessarily obtained for use in the case;
>      . . . .

28 U.S.C. § 1920.  This District's Local Rules provide additional guidance, and set forth a more

specific list of costs that the clerk "shall tax" if "requested to do so in the bill of costs," which

include:

> (4) Docket fees and costs specified in 28 U.S.C. § 1923;
>      . . .
> (6) Costs, at the reporter's standard rate, of the original and one copy of any
>      deposition noticed by the prevailing party, and of one copy of any deposition
>      noticed by any other party, if the deposition was used on the record, at a hearing
>      or trial;
> (7) Costs, at the reporter's standard rate, of the original and one copy of the
>      reporter's transcript of a hearing or trial if the transcript: (i) is alleged by the
>      prevailing party to have been necessary for the determination of an appeal
>      within the meaning of Fed. R. App. P. 39(e), or (ii) was required by the court to
>      be transcribed;
>      . . .
> (9) Other costs of copying up to $300.00;
>      . . . .

---

[5] Defendants filed a Bill of Costs, ECF No. 189, on April 20, 2020 which was ostensibly filed in error under the wrong event.  *See* Notice of Error (April 21, 2020).  On April 21, 2020, Defendants re-filed their Bill of Costs, ECF No. 190.  This Court is unable to distinguish between the two documents but will only refer to more recently filed version.

D.D.C. Civ. R. 54.1(d).

The Supreme Court has noted that "liability for costs is a normal incident of defeat." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981).  Although costs are generally awarded as a matter of course, the district court has discretion in allowing, disallowing, or apportioning costs.  *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013) (finding that "Rule 54(d)(1) codifies a venerable presumption that prevailing parties are entitled to costs" but that "the word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court"); *see also Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 565 (2012) ("Federal Rule of Civil Procedure 54(d) gives courts the discretion to award costs to prevailing parties.").  However, "a court may neither deny nor reduce a prevailing party's request for costs without first articulating some good reason for doing so."  *Baez v. U.S. Dep't of Justice*, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam).  Consequently, "federal courts have placed on the unsuccessful parties some burden of showing circumstances sufficient to overcome the presumption favoring the prevailing party."  *Id*.  In class actions, such as here, the presumption of awarding costs to the prevailing party still stands, but only the named representatives may be held liable.  *See White v. Sundstrand Corp.*, 256 F.3d 580, 585 (7th Cir. 2001) ("Neither the federal rules nor the due process clause of the fifth amendment would tolerate" any award of costs against absent class members).

### 1.  Plaintiffs' Financial Hardship

Original plaintiffs Adriann Borum, Loretta Holloman, and ONE DC filed this case on August 25, 2016.  *See* Compl., ECF No. 2.  Holloman later voluntarily dismissed her individual claims.  *See* Order Granting Unopposed Mot. for Voluntary Dismissal, ECF No. 56.  A plaintiff class was certified by the Court's February 12, 2018 Order.  *See* Order Granting in Part Pls.'

Mot. Class Certification, ECF No. 57.  Borum was subsequently replaced by Marita Moore as class representative.  *See* Mem. Op. Granting in Part Pls.' Mot. at 2, ECF No. 132.  Moore brought discriminatory statement claims in her individual capacity as well.  *See* Mem. Op. Granting Defs.' Mot. for Summ. J. at 3 n.2, 19 n.17, ECF No. 180.  Moore's and Borum's individual claims were later voluntarily dismissed.  *Id.* at 4, 19 n.17.  The Court also decertified the class with respect to Plaintiffs' discriminatory statements claim, leaving ONE DC as the sole plaintiff for that claim.  *Id.* at 9 n.10.  The Court therefore concludes that, for the purposes of awarding costs, the universe of potential payors includes the various named plaintiffs: Adriann Borum, Loretta Holloman, Marita Moore, and ONE DC.

Plaintiffs do not dispute Defendants are the prevailing party but argue the costs should be waived based on inability to pay.  Pls.' Opp'n Defs.' Bill of Costs at 2.  Courts may consider financial hardship when awarding costs.  *See In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 464 (3d Cir. 2000) ("[I]f a losing party is indigent or unable to pay the full measure of costs, a district court may . . . exempt the losing party from paying costs.").  Some courts have denied costs outright based on inability to pay.  *See, e.g., N.O. by Orwig v. About Women Ob/Gyn, P.C.*, 440 F. Supp. 3d 565, 567–68 (E.D. Va. 2020) (declining to award costs due to plaintiff's inability to pay and ongoing medical bills).  Courts have additionally declined to award costs if a party could pay but payment would be crippling.  *See Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079–80 (9th Cir. 1999) (remanding to district court to reconsider award where unemployed basketball coach would be rendered indigent if forced to pay).

Although "attorneys may agree to bear the risk of a costs award" in a class action, *White*, 256 F.3d at 586, that decision is ultimately between client and counsel.  The Court is not aware of any cost-paying agreement between Plaintiffs and Plaintiffs' counsel—i.e. Covington and

Burling LLP and Washington Lawyers' Committee for Civil Rights—but counsel may have agreed to cover the prevailing party's costs nonetheless. In any case, when a district court chooses to consider the unsuccessful party's financial hardship, "it should require substantial documentation of a true inability to pay." *Guevara v. Onyewu*, 943 F. Supp. 2d 192, 196 (D.D.C. 2013) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1039 (11th Cir. 2000); *see also Johnson v. Holway*, 522 F. Supp. 2d 12, 17 (D.D.C.2007) ("[U]nsubstantiated assertions of financial hardship . . . are an insufficient basis on which to deny costs.").

For their part, Plaintiffs indicate that Moore is subject to circumstances that renders her unable to maintain employment. Pls.' Opp'n Defs.' Bill of Costs at 2. Moore's sole source of income has been ███████████████████████████████████. Pls.' Opp'n Defs.' Bill of Costs at 2. However, in determining whether a losing party bears sufficient financial hardship to avoid an award of costs, courts consider not only monthly income but other assets and discretionary expenditures. *See Onyewu*, 943 F. Supp. 2d at 196 (declining to override the presumption in favor of awarding costs because plaintiff presented an incomplete financial picture and did not account for the equity in plaintiff's home); *see also Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 447 (4th Cir. 1999) (reversing district court's denial of costs because it failed to consider party's marital property and use of 401(k) distributions to buy discretionary items). In this case, Moore ██████████████████████████ ████████████████████. Pls.' Opp'n Defs.' Bill of Costs Ex. B at 2, ECF No. 194-4. ████████████████████████████████████████████████████████ ████████████████████. *Id.* Furthermore, Moore ██████████████████████ ████████████████████████████████████████████████████████ ███. *Id.* As Plaintiffs point out, Defendants are well aware of Moore's financial status, given

Defendants "serve as Ms. Moore's landlord and receive paperwork certifying her financial status

███████████████████████████."  Pls.' Opp'n Defs.' Bill of Costs at 2.

Plaintiffs have provided enough details that the Court has an accurate estimate of

Moore's net worth.  *Cf. Savage v. Price*, No. 15-cv-791, 2018 WL 8787743, at *1 (D.D.C. Nov.

7, 2018) (declining to override the presumption of awarding costs because plaintiff "failed to

provide more than unsubstantiated assertions of financial hardship").  Further financial

imposition on Moore would be financially ruinous and this Court will exercise its discretion and

exempt her from paying any costs and fees.  *See, e.g.*, *Anderson v. Columbia Cty.*, No. CV112-

031, 2015 WL 1959083, at *2–3 (S.D. Ga. May 1, 2015) (finding substantial documentation of

inability to pay based on evidence that one plaintiff was a decedent's estate with no assets and

the other an elderly woman receiving only social security benefits).  Additionally, the previous

class representative, Adriann Borum, while employed at the time of her involvement with the

litigation, has similar financial circumstances that would also make the imposition of costs

inequitable.  *See* Pls.' Opp'n Defs.' Bill of Costs Ex. C, ECF No. 194-5.  And finally, although

not all of the members of the class receive HUD Project-Based Section 8 Housing Assistance

Payments or D.C. Housing Authority tenant-based Housing Choice Vouchers—e.g., Loretta

Holloman, *see* Compl. ¶ 87—most, if not all, of the class members are low-income residents.

ECF No. 4-3 ¶ 18.  Many members of the class are subject to various extenuating circumstances

such that any costs would be unduly burdensome.  *See, e.g.*, Compl. ¶¶ 82–83; 4-6 ¶ 2; 4-8 ¶ 3;

Pls.' Mot. TRO Ex. 2 ¶ 2, ECF No. 27-2.  *See also Latson v. Clarke*, No. 1:16CV00039, 2019

WL 459713, at *2 (W.D. Va. Feb. 6, 2019) (declining to award costs due to losing party's

"disabilities and living situation"); *Cross v. Roadway Express*, No. 93 C 2584, 1994 WL 592168,

*1 (N.D. Ill. Oct. 26, 1994) (waiving costs against indigent party who was an unemployed single

parent to three children, suffered from severe mental health problems, and received $840 a month in Social Security payments).  The Court will therefore exercise its discretion and exempt all class representatives from payment.  *See, e.g.*, *Onyewu*, 943 F. Supp. 2d at 196 (stating a district court may exempt an indigent party from paying costs) (citing *In re Paoli*, 221 F.3d at 464).

However, ONE DC was also a plaintiff in this case and many of the concerns that this Court may have in imposing costs on an individual do not apply to an organization.  ONE DC brought this action on its own as well as on behalf of its members who are residents of Brookland Manor.  Compl. ¶ 109.  ONE DC, by its own account, has only two full-time staff members and an intern.  *Id.* ¶ 112.  But minutes from ONE DC's 2014 retreat indicate that the organization hoped to achieve a $1 million budget in the next five years.  Defs.' Mot. Summ. J. Sealed Attach. 1, Ex. 26 at 4, ECF No. 143-2; Defs.' Mot. Summ. J. Sealed Attach. 4, Ex. 30 at 12, ECF No. 143-5.  In 2015, ONE DC finished the year *under* budget by nearly $40,000, Defs.' Mot. Summ. J. Sealed Attach. 2, Ex. 27 at 170:21–24, ECF No. 143-3, and over the last several years, ONE DC has received numerous donations in excess of $10,000.  *Id.* at 102:11–13, 21–24; 103:9–18; 104:2–5; 106:20–24; 107:20–108:7.  Furthermore, ONE DC's financial statement ending December 31, 2016 indicates that the organization's total income for the year was over $500,000 and had total assets in excess of $600,000.  Defs.' Mot. Summ. J. Sealed Attach. 12, Ex. 45 at 4–6, ECF No. 143-13.

Sufficient evidence has been presented demonstrating ONE DC's ability to pay that imposing costs would not be unjust even though the rest of the class is exempt from payment due

to inability to pay.[6]  *See Moore v. Nat'l Ass'n of Sec. Dealers, Inc.*, 762 F.2d 1093, 1107 (D.C. Cir. 1985) ("[A]pportionment of costs is in the sound discretion of the district court").  *Cf. Aird v. Ford Motor Co.*, 86 F.3d 216, 223–24 (D.C. Cir. 1996) (apportioning costs based on involvement with the litigation); *cf. In re Paoli*, 221 F.3d at 469 ("In dividing costs among multiple parties on one side of the bar—either prevailing or non-prevailing—the court may choose to impose costs jointly and severally or to disaggregate costs and to impose them individually.").

## 2.  *Pro Hac Vice* Fees Are Not Recoverable

In this Circuit, it does not appear to be settled whether *pro hac vice* admission fees are recoverable costs.  Other Circuits are split on the issue as well.  *Compare Craftsmen Limousine, Inc. v. Ford Motor Co.*, 579 F.3d 894, 898 (8th Cir. 2009) (concluding that *pro hac vice* fees are recoverable as fees of the clerk under § 1920) *and United States v. Emergency Med. Assocs. of Ill., Inc.*, 436 F.3d 726, 730 (7th Cir. 2006) (holding that district court did not abuse its discretion in awarding *pro hac vice* fees) *with Kalitta Air L.L.C. v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013) (holding that "§ 1920 is narrow, limited, and modest in scope" and

---

[6] Plaintiffs request that if the Court finds that ONE DC is able to pay costs, while the individual plaintiffs are not, the cost of Moore's and Borum's depositions be excluded entirely as they were pursuing individual claims to which ONE DC was not a party.  Pls.' Opp'n Defs.' Bill of Costs at 15 n.17.  The Court agrees that ONE DC should not be held financially liable for another party's claims.  *See White*, 256 F.3d at 586 ("A few cases hold that costs awards should be several, rather than joint, when different groups of plaintiffs raise distinct issues that give rise to segregable costs of litigation.").  Moore, in her individual capacity, brought a discriminatory statement claim that was dismissed.  *See Mem. Op. Granting Defs.' Mot. for Summ. J. at 19 n.17.  Borum, in her individual capacity, brought a disparate impact claim that was also dismissed.  *Id.*  Accordingly, because the Court declines to impose these deposition costs on ONE DC, and it would be inequitable to impose them on Borum and Moore, the costs associated with their depositions are not recoverable.  The Court's following analysis of Defendants' Bill of Costs therefore excludes any costs, when applicable, associated with the depositions of Borum and Moore.

therefore declining to award *pro hac vice* fees) *and Eagle Ins. v. Johnson*, 162 F.3d 98 (11th Cir. 1998) (affirming district court's determination that *pro hac vice* fees are not taxable as costs because they are not authorized by federal statute).  While § 1920 refers generally to "fees of the clerk," § 1914 suggests that fees of the clerk include "additional fees only as are prescribed by the Judicial Conference of the United States."  28 U.S.C. § 1914(b).  Plaintiffs are correct in their observation that the Judicial Conference Schedule of Fees does not make any reference to *pro hac vice* admission fees.  *See Kalitta Air*, 741 F.3d at 958 ("The Judicial Conference's fee schedule does not refer to *pro hac vice* fees at all.").  The Supreme Court has further emphasized that "taxable costs are limited by statute and are modest in scope."  *Taniguchi*, 566 U.S. at 573. This Court sees no reason to find *pro hac vice* fees as taxable costs when they are neither expressly stated by statute nor mentioned by the Judicial Conference Schedule of Fees.  The Court adopts the reasoning of *Kalitta Air* and finds that § 1920 does not authorize awarding *pro hac vice* fees.[7]  Accordingly, the Court hereby declines to award $400 in *pro hac vice* fees to Defendants.

---

[7] Courts have declined to award *pro hac vice* fees on other grounds.  *See Schmitz-Werke GmbH + Co. v. Rockland Indus., Inc.*, 271 F. Supp. 2d 734, 735 (D. Md. 2003) (holding that "*pro hac vice* fee is an expense of counsel, not the client, and is thus not recoverable"); *Crossfit, Inc. v. Quinnie*, 232 F. Supp. 3d 1295, 1313 (N.D. Ga. 2017) (same); *Coach, Inc. v. Siskiyou Buckle Co.*, No. 03:11-CV-00486-HZ, 2012 WL 13055491, at *1 (D. Or. Oct. 30, 2012) (finding *pro hac vice* fees are part of the overheard of running a law firm and are therefore not recoverable).  Other jurisdictions have declined to award *pro hac vice* fees absent a showing as to the insufficiency of local counsel.  *See, e.g., Shumaker v. Comm'r of Soc. Sec.*, No. 1:11CV2801, 2013 WL 6501300, at *4 (N.D. Ohio Dec. 11, 2013) (declining to award *pro hac vice* fees as it was plaintiffs choice to use out-of-district counsel); *Lofton v. McNeil Consumer & Specialty Pharm.*, No. 3:05-CV-1531-L, 2011 WL 206165, at *1 (N.D. Tex. Jan. 4, 2011) (declining to award *pro hac vice* fees because the defendant chose "to be represented by counsel not admitted to practice in the district").  Norton Rose Fulbright US LLP, by their own account, has an established Washington, D.C. office with a "team of 92 lawyers [that] practices civil and appellate litigation at all levels."  *See* Norton Rose Fulbright, *Location: Washington, D.C.*, https://www.nortonrosefulbright.com/en-us/locations/washington-dc.  Absent any showing of

3.  Costs for Deposition Transcripts Are Recoverable in Part

Defendants request $33,744.50 in transcription costs for depositions that Defendants

claim were used in various filings.  Defs.' Bill of Costs ¶ 5.  The Local Rules allow the clerk to

tax "the costs, at the reporter's standard rate, of the original and one copy of any deposition

noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if

the deposition was used on the record, at a hearing or trial."  D.D.C. Civ. R. 54.1(d)(6).

Plaintiffs argue that § 1920 limits recovery only to "transcripts necessarily obtained for use in the

case" and additional optional costs related to a deposition are not properly taxable.  28 U.S.C. §

1920(2); Pls.' Opp'n Defs.' Bill of Costs at 5–6.  However, the necessity of obtaining a

deposition transcript is ascertained "as of the time the deposition was taken."  *Holway*, 522 F.

Supp. 2d at 18; *accord Youssef v. FBI*, 762 F. Supp. 76, 86 (D.D.C. 2011).  "Depositions are

'necessarily obtained' if they are used to prepare for future depositions, motions, pretrial

proceedings, or trial."  *Sykes v. Napolitano*, 755 F. Supp. 2d 118, 120 (D.D.C. 2010).  This also

---

why local Norton Rose Fulbright counsel was insufficient for Defendants' purposes, the Court is
further disinclined to award *pro hac vice* fees.

Defendants are specifically trying to recover the pro hac vice fees for Lisa Schapira,
Anne Rodgers, Gerry Lowry, and John Byron.  Defs.' Bill of Costs ¶ 4.  This is not the first *pro
hac vice* appearance in this district for at least one of these individuals.  Anne Rodgers, for
instance, has appeared *pro hac vice* in this district at least twice before while employed by
Norton Rose Fulbright or its predecessor Fulbright and Jaworski.  *See* Mot. Appear Pro Hac
Vice, *Grynberg v. BP P.L.C.*, 08-cv-00301 (D.D.C. Aug. 7, 2008), ECF No. 75; *Abecassis v.
Wyatt*, 669 F. Supp. 2d 130, 131 (D.D.C. 2009) (listing Anne Rodgers as counsel).  The cost for
lifetime admission to this Court is $206.  *See* U.S. District and Bankruptcy Courts for the District
of Columbia, *Application for Admission*,
https://www.dcd.uscourts.gov/sites/dcd/files/Attorney%20Application%20Admission%20-
%20Updated%202-26-20.pdf.  It would be against the interests of this Court and against the
principles of judicial economy if counsel were incentivized to repeatedly pay recoverable *pro
hac vice* fees rather than the cost of lifetime admission to practice before the Bar of this Court.
*See, e.g.*, *Brown v. Colgate-Palmolive Co.*, No. 1:04CV-0782-DFH-WTL, 2006 WL 3197455, at
*2 (S.D. Ind. May 17, 2006) (denying *pro hac vice* fees as it was "not clear why the attorneys
chose to pay the *pro hac vice* fee four times in four cases . . . [rather than] seek lifetime
admission to this court's bar").

includes depositions used in motions for summary judgment. *See Holway*, 522 F. Supp. 2d at 18 ("Local Civil Rule 54.1 makes clear that depositions used in the parties' summary judgment papers are taxable."); *see also Sykes*, 755 F. Supp. 2d at 120 (finding that depositions relied upon in the parties' summary judgment briefs are taxable). Plaintiffs do not appear to dispute the necessity of any particular deposition transcript but rather claim that Defendants have improperly included in their Bill of Costs (a) Realtime transcription services; (b) "rough" ASCII and expedited transcriptions; (c) preparation of exhibits; (d) LEF sync file preparation; and (e) shipping and handling. Pls.' Opp'n Defs.' Bill of Costs at 6.

### a. Costs for Realtime Transcription Services Are Not Recoverable

Defendants may only recover costs "for printed or electronically recorded transcripts necessarily obtained for use in the case." U.S.C. § 1920(2). Defendants have not sufficiently demonstrated that the Realtime transcription was "necessarily obtained" nor that the costs were within the bounds of the reporter's standard rate per Local Rule 54.1(d)(6). Defendants assert they "needed to incur real time [sic] costs so that their attorneys could efficiently depose and defend witnesses," but provide no specifics beyond this general claim nor point to any case law that would support their position. Defs.' Reply Supp. Bill of Costs at 8, ECF No. 195-2.

Courts that have considered the issue have awarded Realtime costs only when it was considered necessary. *See, e.g.*, *Dindinger v. Allsteel, Inc.*, 853 F.3d 414, 431 (8th Cir. 2017) (finding that district court did not abuse its discretion when awarding Realtime costs due to the complexity of the case); *Kinzenbaw v. Case LLC*, No. 05-1483, 2006 WL 1096683, at *6 (Fed. Cir. Apr. 26, 2006) (finding that district court did not abuse its discretion when awarding Realtime costs when Realtime was considered necessary for the deposition). Other courts have ruled that Realtime is never recoverable. *See, e.g.*, *Colon v. Fashion Inst. of Tech. (State Univ. of*

*N.Y.)*, No. 12-cv-7405 HB, 2014 WL 1979875, at *2 (S.D.N.Y. May 15, 2014) ("RealTime

transcription . . . are not taxable").  But beyond mere assertions, Defendants have not provided

any evidence in support of why Realtime may have been necessary in the context of this case.

*See, e.g.*, *Salem Fin., Inc. v. United States*, 134 Fed. Cl. 544, 550 (2017) (declining to award

Realtime costs absent a showing of necessity); *Allison v. Smoot Enters. Inc.*, No. 2:17-cv-01598-

SU, 2020 WL 68300, at *2 (D. Or. Jan. 7, 2020) (same).  Defendants have also not provided any

reason why Realtime may have been necessary for some depositions while not others.  *See* Defs.'

Bill of Costs Ex. B at 2, 3, 5, 17, 19, 25.  Absent a showing of necessity, the Court declines to tax

the Realtime costs incurred by Defendants.  Accordingly, Defendants' Bill of Costs is reduced by

$4,909.20.  *See id.* at 4, 6, 7, 9, 11, 13, 15, 21–24, 26, 27.

### b.  Costs for Rough ASCII and Expedited Transcription

Defendants seek to recover $5,659.50 for costs incurred in purchasing Rough ASCII

transcripts.  Defs.' Reply Supp. Bill of Costs at 6.  Plaintiffs object on the grounds that ASCII, or

"rough" deposition transcripts, are not taxable costs.  Pls.' Opp'n Defs.' Bill of Costs at 7.  This

District has expressed caution in awarding "rough" deposition costs, and this Court is similarly

disinclined to tax those costs absent a showing of necessity.  *See OAO Alfa Bank v. Ctr. for Pub.

Integrity*, No. 00-cv-2208, 2006 WL 1313309, at *4 (D.D.C. May 12, 2006) ("The parties do not

address whether court reporter fees for features requested for the convenience of counsel-

minuscript, ASCII copies, indices, and diskettes, for example-are recoverable. There is a broad

consensus that they are not."); *see also In re Greater Se. Cmty. Hosp. Corp. I*, No. 02-02250,

2012 WL 1414841, at *3 (Bankr. D.D.C. Apr. 23, 2012) ("[T]he cost of obtaining a rough draft

transcript of a deposition as a form of expedited transcript ordinarily ought to be disallowed").

Plaintiffs point out, and the Court cannot find evidence to the contrary, that none of the "rough"

deposition transcripts were ever cited in the record, further suggesting that the transcripts were not a necessity. Additionally, Defendants provide no explanation for why "rough" transcripts may have been necessary for many, but not all, of the deponents. *See, e.g.*, Defs.' Bill of Costs Ex. B at 25 (deposition where Defendants did not order "rough" transcript). Accordingly, the Court declines to tax the costs Defendants incurred with "rough" deposition transcripts and will reduce the Bill of Costs by a further $5,659.50. Defs.' Bill of Costs Ex. B at 2–7, 9, 11, 13, 15, 17, 19, 21–24, 26, 27.

Defendants also seek $5,099.65 to cover the costs of expedited deposition transcripts. [8] The D.C. Circuit has explained that the cost of expedited deposition transcripts is taxable only when expedited processing was "necessarily obtained [] for use in the case." *Sun Ship, Inc. v. Lehman*, 655 F.2d 1311, 1318 (D.C. Cir. 1981) (quoting 28 U.S.C. § 1920(2)). Expedited processing may be necessarily obtained if there are discovery disputes or dispositive motions deadlines. *See United States v. Halliburton Co.*, 954 F.3d 307, 313 (D.C. Cir. 2020) (affirming district court's holding that expedited transcript costs were justified by pending motion to compel, dispositive motions deadline, and other discovery disputes). Defendants contend here that expedited transcripts were necessary due to the compressed deposition schedule and motion deadlines. Defs.' Reply Supp. Bill of Costs at 6–7. As support, they point out that Defendants filed their motion regarding ONE DC discovery abuses on September 28, 2019, less than ten days after the deposition of ONE DC's 30(b)(6) witness and less than a week after the deposition of a ONE DC employee involved in the spoliation. *See* Defs.' Mot. Sanctions, ECF No. 94-3;

---

[8] This was calculated by reviewing the deposition transcript invoices attached to Defendants Bill of Costs. Defs.' Bill of Costs Ex. B at 2–27. For expedited invoices that did not list a line item expedition fee—i.e. *id.* at 9–14, 17, 18—the Court multiplied the number of pages by the reporter's standard rate for expediting.

Defs.' Reply Supp. Bill of Costs at 7.  But Defendants do not explain *why* they were compelled to file that motion so quickly.  *See McGovern v. George Washington Univ.*, 326 F.R.D. 354, 356 (D.D.C. 2018) (declining to tax expedited transcripts because defendants "provided no explanation for why expedited processing was necessary").  Additionally, Defendants did not expedite the deposition transcript of Yasmina Mrabet, the individual at the center of the spoliation dispute, which cuts against their argument that an expedited transcript was required to adequately litigate the issue.  Defs.' Bill of Costs Ex. B at 6.  As to the remaining transcripts (unrelated to the spoliation issue), the Court is likewise not convinced that expedition fees are recoverable.  Defs.' Bill of Costs Ex. B at 3, 4, 9–14, 17, 18.  While there were indeed pressing motion deadlines, Defendants have not demonstrated that the Court considered these dates immovable.  *See, e.g.*, *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 132 (5th Cir. 2015) (declining to award expedition fees when prevailing party could have requested an extension on a motion deadline or where the timing was not particularly crucial).  The Court granted numerous filing extensions throughout this litigation and granted several unopposed motions to modify the schedule.[9]  Absent evidence that the Court was unwilling or unable to grant an extension, Defendants have not demonstrated that the expedition fees were necessary. Furthermore, Defendants' claims of necessity are undercut by the seemingly random nature of which transcripts were expedited.  *See* Defs.' Bill of Costs Ex. B at 6–8, 15, 16, 19–27 (transcripts that were not expedited).  For example, the Court is unsure why one deposition taken on October 2, 2018 would have necessitated expedition while another taken on the same day did

---

[9] See Minute Orders either granting a party's motion for an extension of time or granting a motion to modify the schedule issued on September 2, 2016, September 24, 2016, February 1, 2017, August 9, 2017, February 22, 2018, October 12, 2018, October 26, 2018, December 3, 2018, January 7, 2019, February 22, 2019, September 24, 2019, October 25, 2019, and April 22, 2020.

not.  *Compare id.* at 6 *with id.* at 11.  Ultimately, then, the Court acknowledges that the parties engaged in a vigorous deposition and litigation schedule, but concludes Defendants have not adequately justified the taxing of these particular costs.  Accordingly, Defendants may not recover the $5,099.65 in costs incurred in expediting transcripts.

### c.  Costs for Deposition Exhibits Are Recoverable

Plaintiffs allege that Defendants improperly included $1,216.15 in costs associated with the court reporter providing copies of deposition exhibits.  Pls.' Opp'n Defs.' Bill of Costs at 10.  The Court will subtract the exhibit costs associated with the deposition of Borum and Moore and determines that $1,140.20 is the recalculated amount in dispute.[10]  However, exhibits used during a deposition are necessarily part of the transcript and are recoverable.  *See Holway*, 522 F. Supp. 2d at 19 (holding that exhibits attached to a deposition are essential to the transcript and therefore taxable as part of the cost of the deposition); *OAO Alfa Bank*, 2006 WL 1313309, at *4 ("[T]he costs of exhibits attached to the deposition are recoverable because they are essential to the deposition transcript.").  Defendants are therefore awarded $1,140.20 in costs associated with the court reporter providing copies of deposition exhibits.[11]

### d.  LEF Formatting Costs Are Not Recoverable

Defendants have included $950 in LiveNote Evidence Format ("LEF") costs.[12]  Plaintiffs claim that LEF costs are not authorized under 28 U.S.C. § 1920 and are therefore not taxable.

---

[10] The invoices for Borum and Moore's depositions indicate $63.70 and $12.25 in exhibit costs, respectively.  Defs.' Bill of Costs Ex. B at 3–4.

[11] The Court calculated the amount by summing the exhibit fee line items from the deposition transcript invoices Defendants attached to their Bill of Costs.  *See* Defs.' Bill of Costs Ex. B at 2–27.

[12] LEF is a file format enabling transcripts with the related exhibits to be scanned and hyperlinked to the text and LEF files may also contain synchronized video of the depositions. *See, e.g.*, Spectrum Reporting LLC, *What is…LiveNote Evidence Format*, https://www.spectrumreporting.com/whatis_LEF3.html.  The Court similarly calculated the LEF

Pls.' Opp'n Defs.' Bill of Costs at 12.  The Court acknowledges that LEF may be useful in some

circumstances, but it cannot determine that LEF was necessary here.  Courts that have considered

the issue have generally declined to award LEF costs.  *See, e.g.*, *Bommarito v. Nw. Mut. Life Ins.*

*Co.*, No. 2:15-CV-1187 WBS DB, 2018 WL 4657243, at *5 (E.D. Cal. Sept. 26, 2018)

(declining to award LEF costs as LEF was "provided for the convenience of . . . the attorneys

without an explanation of their necessity"); *Supernus Pharm., Inc. v. TWi Pharm., Inc.*, No. CV

15-369, 2018 WL 2175765, at *6 (D.N.J. May 11, 2018) (finding LEF costs are not recoverable

as they are "additional services"); *United States ex rel. King v. Solvay S.A.*, No. CV H-06-2662,

2016 WL 3523873, at *3 (S.D. Tex. June 28, 2016), *aff'd sub nom. United States ex rel King v.*

*Solvay Pharm., Inc.*, 871 F.3d 318 (5th Cir. 2017) (finding LEF costs not recoverable as they are

"ancillary fees that appear to be for convenience only"); *In re: Whirlpool Corp.*, No. 1:08-WP-

65000, 2015 WL 11995255, at *6 (N.D. Ohio Feb. 18, 2015) (finding that LEF was unnecessary

and "merely convenient to counsel" and therefore not taxable).  While this Circuit has not issued

any opinion on LEF, because it is merely a feature that can allow exhibits to be hyperlinked

within the transcript for the convenience of counsel, this Court deems LEF nontaxable.

Defendants have also neglected to provide any support, let alone even mention, as to why they

should be able to recover these costs.  Defs.' Bill of Costs; Defs.' Reply Supp. Bill of Costs.

Accordingly, the Court will deduct $950 for LEF from Defendants' Bill of Costs.

### e.  *Shipping and Handling Costs Are Not Recoverable*

Defendants seek to recover the costs associated with shipping copies of deposition

transcripts.  Defs.' Reply Supp. Bill of Costs at 8.  Defendants did not separate out their shipping

---

amount in dispute by summing the LEF fee line items from the deposition transcript invoices
Defendants attached to their Bill of Costs.  *See* Defs.' Bill of Costs Ex. B at 2–27.

costs from their total claimed costs, but Plaintiffs have calculated this amount to be $575.  Pls.'

Opp'n Defs.' Bill of Costs at 6, 13.  This Court is unable to verify that amount.  Plaintiffs

provide a breakdown of their calculation, *see* Pls.' Opp'n Defs.' Bill of Costs Ex. F, ECF No.

194-8, but Plaintiffs have impermissibly conflated processing fees with shipping fees.  *See, e.g.*,

Defs.' Bill of Costs Ex. B at 21 (listing separate invoice charges for "Handling, Processing &

Archiving" and "Shipping/Delivery").  The Court will therefore deduct the processing costs that

Plaintiffs have rolled into their shipping fee summation.  The transcription invoices provided by

Defendants indicate that the shipping fees total $225.  Defs.' Bill of Costs Ex. B at 2, 3, 4, 5, 6,

21, 22, 23, 24.  Accordingly, the Court determines that shipping costs in the instant dispute are

$225.

Defendants' assertion that delivery costs are recoverable is incorrect.  *See Bell v.*

*Gonzales*, No. 03-cv-163, 2006 WL 6000485, at *2 (D.D.C. Sept. 27, 2006) ("[C]osts associated

with delivery, shipping, and handling are not recoverable because they are considered part of the

cost of operating a business."); *see also Holway*, 522 F. Supp. 2d at 19 (declining to tax

deposition transcript delivery costs because "[a]dministrative fees, like delivery costs, are . . .

considered ordinary business expenses that cannot be recovered as costs" (internal quotations

marks omitted)); *OAO Alfa Bank*, 2006 WL 1313309, at *4 ("[C]osts associated with delivery,

shipping, and handling are not recoverable because they are considered part of the cost of

operating a law firm.").  Defendants do not provide sufficient explanation or reasoning to support

their assertion that these costs are recoverable.  Defs.' Reply Supp. Bill of Costs at 8.

Accordingly, Defendants' Bill of Costs will be reduced by $225 for shipping and handling fees.

To summarize, the following will be deducted from Defendants' claimed deposition

costs: (a) $4,909.20 for Realtime; (b) $5,659.50 for "rough" ASCII transcripts and $5,099.65 in

expedition fees; (c) $75.95 in exhibit costs associated with the depositions of Borum and Moore;

(d) $950 in LEF; and (e) $225 in shipping and handling.  Defendants' request of $33,744.50 for

the costs for transcripts of depositions used in filings in this case is therefore reduced by

$16,919.30.  The Court will further subtract $504 and $626.50 for the depositions of Borum and

Moore respectively.  *See* n.6, *supra*.  Accordingly, Defendants are awarded $15,694.70 in

deposition costs.

### 4.  Costs for Hearing Transcripts Are Recoverable

Defendants also claim $163.40 in transcript costs for the January 9, 2019 status

conference and the February 22, 2019 telephonic status conference.  Defs.' Bill of Costs ¶ 6.

Plaintiffs contend that costs for these hearing transcripts are not recoverable.  Pls.' Opp'n Defs.'

Bill of Costs at 14.  This Circuit has held that hearing transcript costs may be recoverable if the

transcripts were necessarily obtained for use in the case.  *Lehman*, 655 F.2d at 1318 ("The costs

of the hearing transcripts . . . appear to us plainly authorized by 28 U.S.C. s 1920(2) & (4)."); *see*

*also Osseiran v. Int'l Fin. Corp.*, 68 F. Supp. 3d 152, 159 (D.D.C. 2014) (holding the "hearing

transcripts at issue were 'necessarily obtained for use in the case,' and thus, the costs were

properly claimed").  In addition, Local Rule 54.1(d)(7) directs the Clerk to tax the cost "of the

original and one copy of the reporter's transcript of a hearing or trial if the transcript: (i) is

alleged by the prevailing party to have been necessary for the determination of an appeal within

the meaning of Fed. R. App. P. 39(e), or (ii) was required by the court to be transcribed."  D.D.C.

Civ. R. 54.1(d)(7).

For present purposes, though, neither subdivision of Local Rule 54.1(d)(7) appears to

apply.  The parties have stipulated to not appeal the Court's Order granting summary judgment

for Defendants, meaning that the Defendants, at least at this point, cannot reasonably argue the

preparation of a transcript is necessary for an appeal.  Defs.' Notice of Withdrawal ¶ 1, ECF No. 193.  Additionally, this Court did not require any hearing to be transcribed.  Defendants contend, however, that the transcripts were necessarily obtained for use in the case as demonstrated by their filings.  Defs.' Reply Supp. Bill of Costs at 8–9.  Defendants specifically cited the two status conference transcripts in their April 4, 2019 filing.  Defs.' Mot. Decertify Class at 2, 4, 11, 37, 39, 41, ECF No. 123-1.  Defendants also included the transcripts as exhibits in a separately filed declaration.  Decl. John J. Byron, ECF No. 124 ¶¶ 4, 5.  The Court finds there is sufficient evidence that the transcripts were necessarily obtained for Defendants' case.  *See United States ex rel. Barko v. Halliburton Co.*, No. 05-cv-1276, 2018 WL 6411342, at *4 (D.D.C. Dec. 6, 2018), *aff'd in part, rev'd in part on other grounds and remanded sub nom. United States v. Halliburton Co.*, 954 F.3d 307 (D.C. Cir. 2020) (awarding costs for two status hearing transcripts when prevailing party justified their necessity); *Youssef*, 762 F. Supp. 2d at 88 (denying costs when party failed to establish that it was necessary to use the transcripts); *Craig v. Robinson*, 197 F. Supp. 3d 268, 289 (D.D.C. 2016) (denying costs for hearing transcripts when party made no argument about the "necessity or required use of these transcripts").  Accordingly, the Court finds that the $163.40 Defendants spent on hearing transcripts is a taxable cost.

### 5. Costs for Copying Are Recoverable

Defendants request $300 for copying costs, the maximum amount that Defendants may recover under Local Rule 54.1(d)(9).  Defs.' Bill of Costs ¶ 7.  Plaintiffs do not dispute this amount.  Pls.' Opp'n Defs.' Bill of Costs at 15 n.18.  Accordingly, Defendants are awarded $300 in copying costs.

* * *

In conclusion, regarding Defendants' Bill of Costs, the Court finds that (1) because any costs imposed on the named individuals would likely be financially ruinous, they are exempted from payment and (2) the $400 Defendants spent on *pro hac vice* fees are not recoverable. However, Defendants may recover (1) $15,694.70 in deposition fees, (2) $163.40 in hearing transcript costs, and (3) $300 in copying costs. Accordingly, Defendants' Bill of Costs is recalculated for a total of $16,158.10.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion for reasonable attorneys' fees and costs is **GRANTED IN PART AND DENIED IN PART**; Plaintiffs' motion for reasonable attorneys' fees and expenses is **DENIED**; and Defendants' Bill of Costs is **GRANTED IN PART AND DENIED IN PART**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 4, 2020                                    RUDOLPH CONTRERAS
                                                            United States District Judge